## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH FELD**<br>**No. 1602**<br>**371 Channelside Walkway**<br>**Tampa, Florida 33602,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**FIREMAN'S FUND INSURANCE**<br>**COMPANY**<br>**777 San Marin Drive**<br>**Novato, CA 94998,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 1:12-CV-01789** |

## COMPLAINT

Plaintiff Kenneth Feld, appearing through the undersigned counsel, hereby asserts the following claims against Defendant Fireman's Fund Insurance Company ("FFIC"), and in support thereof, alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for monetary damages and declaratory relief arising out of FFIC's refusal to fully reimburse the reasonable legal fees and expenses incurred by Kenneth Feld in successfully defending a $110 million lawsuit that was brought against him in this Court (the "Underlying Action").

2.     FFIC's failure to fully reimburse the reasonable legal fees and expenses incurred by Kenneth Feld constitutes a breach by FFIC not only of its express contractual

obligation to provide Kenneth Feld a full defense in the Underlying Action but also of its implied duty to deal fairly and in good faith.

3.      Kenneth Feld seeks payment of all amounts due and owing to him by FFIC, and all other amounts recoverable under law, including, without limitation, attorneys' fees and expenses for the present action, punitive damages, pre- and post-judgment interest, and costs.  Kenneth Feld also seeks a declaratory judgment that the Underlying Action is covered by the operative policy and that FFIC is obligated to reimburse the full amount of the reasonable legal fees and expenses he incurred in successfully defending the Underlying Action.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

5.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims at issue in this action occurred in the District of Columbia.

6.      Kenneth Feld is entitled to declaratory relief because an actual controversy within the meaning of 28 U.S.C. § 2201(a) exists between the parties.

## PARTIES

7.      Kenneth Feld is a resident of the State of Florida.

8.      Upon information and belief, FFIC is a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California.

## FACTUAL ALLEGATIONS

### The Underlying Action

9.      The Underlying Action was brought against Kenneth Feld in this Court in September 2008.  The case was assigned to the Hon. Ellen S. Huvelle.  In the Underlying Action, which was contested from the start, Kenneth Feld was alleged to have hired three security guards that viciously attacked the plaintiff, his sister Karen Feld, when she was ejected from their aunt's shiva, or Jewish funeral service, held in Washington, D.C. in September 2007.  Karen Feld alleged that she suffered multiple permanent and disabling injuries as a result of this purported attack.  Karen Feld asserted claims against Kenneth Feld for assault, battery, intentional infliction of emotional distress, false imprisonment, and negligent infliction of emotional distress.  Karen Feld sought compensatory and punitive damages from Kenneth Feld exceeding $110 million.[1]

10.     Kenneth Feld hired the law firm of Fulbright & Jaworski L.L.P. ("Fulbright") to defend the Underlying Action.

11.     On May 4, 2009, Kenneth Feld filed his Answer, denied all of Karen Feld's claims, and filed a compulsory counterclaim for trespass, alleging that Karen

---

[1]  Karen Feld also sued Feld Entertainment, Inc. ("FEI"), of which Kenneth Feld is Chairman and Chief Executive Officer.  Karen Feld dismissed her claims against FEI on April 22, 2011, at the pre-trial conference.

Feld's conduct, among other things, justified her ejection from the shiva and interfered with the use and enjoyment of his property.

12.     On April 20, 2009, the district court dismissed Karen Feld's claim of negligent infliction of emotional distress upon consideration of Kenneth Feld's partial motion to dismiss.

13.     Discovery took place from June 2009 through April 2011.  Thirty-five (35) fact and expert witnesses were deposed.  Approximately 130 medical providers were identified in Karen Feld's interrogatory responses and through independent research, and approximately 100 of those medical providers were subpoenaed by Kenneth Feld for relevant medical records.

14.     The Underlying Action was exceptionally contentious.

15.     On October 22, 2010, while discovery was ongoing, the Court denied Karen Feld's motion for summary judgment on Kenneth Feld's trespass counterclaim.

16.     The case was tried to a jury from May 9 through May 23, 2011.

17.     On May 24, 2011, after hearing testimony from over thirty expert and fact witnesses, the jury reached a unanimous verdict in Kenneth Feld's favor on all of Karen Feld's claims.  The jury also denied liability on Kenneth Feld's counterclaim. Accordingly, the Court ordered a take-nothing judgment and Karen Feld recovered nothing on her $110 million claim.

18.     On June 23, 2011, Karen Feld filed a notice of appeal to the United States Court of Appeals for the D.C. Circuit, seeking review of the district court's judgment on the verdict against her and pre-trial order denying judgment as a matter of law on

Kenneth Feld's defense of justification to use force in the common areas of his condominium.  Kenneth Feld filed a notice of cross-appeal.

19.    Oral argument on the appeal was held on March 14, 2012.

20.    On July 31, 2012, the D.C. Circuit issued an order denying Karen Feld's appeal and affirming the district court's judgment.

**The Prestige Home Premier Policy**

21.    The legal fees and expenses incurred by Kenneth Feld in successfully defending the Underlying Action are covered by the terms of a "Prestige Home Premier" insurance policy issued by FFIC (the "Prestige Policy").  The operative terms of the Prestige Policy allowed Kenneth Feld to select counsel of his choice and required FFIC to "provide a defense" in the Underlying Action at its expense.

22.    FFIC issued the Prestige Policy to Kenneth and Bonnie Feld (No. NAA 344 86 19) for the period July 19, 2007 through July 19, 2008.

23.    The Prestige Policy contains a Homeowner policy (the "Primary Policy") and an Excess liability policy (the "Excess Policy").

24.    The Primary Policy contains a $500,000 per occurrence limit of liability for Coverage for Liability and Medical Payments to Others.  (Primary Policy, Personal Homeowner Policy Declarations, at 2 of 3).

25.    The Excess Policy contains a $10,000,000 per occurrence limit of liability for Personal Liability.  (Excess Policy, Prestige Excess Liability Declaration, at 1 of 2).

26.    Kenneth Feld paid the premium for the Prestige Policy in full.

27.     In the cover letter to the Prestige Policy, FFIC stated: "Your Prestige Home Premier policy is a promise to make you whole in the event of a covered loss. . . . We recognize that while we can replace or restore just about anything, the emotional expense involved in experiencing a loss can take a far greater toll on you."  (Prestige Policy, Cover Letter).

28.     Both the Primary and Excess Policy required that FFIC provide a defense to Kenneth Feld if a suit was brought against him for "damages" caused by an "occurrence."  (Primary Policy, at 16 of 21; Excess Policy, at 5 of 11).  While the Primary Policy states that FFIC will "[p]rovide a defense at our expense by counsel of our choice" (Primary Policy, at 16 of 21), the Excess Policy states that FFIC "will provide a defense at our expense by counsel of your choice, from our list of approved counsel" (Excess Policy, at 5 of 11).

29.     The Primary Policy states:

**Personal Liability**

If a claim is made or a suit is brought against an **insured**, anywhere in the world, for damages because of **bodily injury, personal injury**, or **property damage** caused by an **occurrence** we will:

1.      Pay on behalf of the **insured** up to the limit of insurance shown on the Declarations for damages for which the **insured** is legally liable.  Damages include prejudgment interest awarded against the **insured**; and

2.      Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of insurance.

(Primary Policy, at 16 of 21).

30.    The Excess Policy states:

    1.    Personal Liability

        Subject to the other provisions of this policy, we will pay the **net loss** above the **retained limit** that any **insured** is legally obligated to pay for as **damages** caused by an **occurrence**.  Our payment will not exceed the limit of liability shown on the Declarations page.

    2.    Additional Coverages

        In addition to our limit of liability, we will pay:

        A.    Defense and **Private Counsel** Coverage

        (1)    If a suit is brought against any **insured** for **damages** caused by an **occurrence** to which this policy applies, we will provide a defense at our expense by counsel of your choice, from our list of approved counsel.  . . . .

(Excess Policy, at 5 of 11).

31.    The Primary Policy, in pertinent part, defines an "Occurrence" as:

    (1)    Accidental loss of or damage to, including continuous or repeated exposure to the same or similar harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**; or

    (2)    An act or series of acts of the same or similar nature that occurs during the policy period and which results in **personal injury**.

(Primary Policy, at 4 of 21).

32.    Similarly, the Excess Policy defines an "Occurrence" as:

    A.    accidental loss of or damage to, including continuous or

repeated exposure to the same or similar harmful conditions, that first results, during the policy period, in **bodily injury** or **property damage**; or

B.    an act, or series of acts of the same or similar nature, that occurs during the policy period and which results in **personal injury**.  (Excess Policy, at 4 of 11).

33.    "Personal injury," under both the Primary Policy and Excess Policy, means "physical or mental harm arising out of" certain specified acts, including but not limited to "false arrest, detention, or imprisonment."  (Primary Policy, at 4 of 21; Excess Policy, at 4 of 11).

34.    With respect to intentional acts, the Primary Policy states that it does not apply to "damages resulting from **bodily injury**, **personal injury**, or **property damage** arising out of:  (1) any criminal, willful, malicious or other act or omission that is reasonably expected or intended by any **insured** to cause damage."  (Primary Policy, at 18 of 21).  However, the Primary Policy also states:  "We do provide coverage if the act arose from the use of reasonable force to protect people or property."  (*Id.*).

35.    Similarly, with respect to intentional acts, the Excess Policy states that FFIC does not provide coverage for any "criminal, willful, malicious or other act or omission that is reasonably expected or intended by any **insured** to cause **damages**."  (Excess Policy, at 9 of 11).  However, the Excess Policy also states:  "We do provide coverage if the act was not fraudulent, criminal, or malicious, and it arose:  (2) from the use of reasonable force to protect people or property…."  (*Id.*).

36.    On or about July 19, 2010, FFIC cancelled the Primary and Excess Policy. This cancellation did not terminate, or otherwise affect, FFIC's obligation to pay the full

amount of all reasonable and necessary defense costs incurred by Kenneth Feld in defending the Underlying Action.

**The Underlying Action is Covered By The Prestige Policy**

37.    The Underlying Action, on its face, is covered by the Prestige Policy because, <u>inter alia</u>, the allegations in the Complaint arose from a September 2007 incident involving an alleged "false arrest, detention, or imprisonment" and "the use of reasonable force to protect people or property."

38.    In addition, Kenneth Feld proved at trial in the Underlying Action that he did not engage in any act or omission – criminal, willful, malicious, reasonably expected, intended or otherwise – that caused damage to Karen Feld.

**Reasonable Legal Fees and Expenses Incurred by Kenneth Feld**

39.    Kenneth Feld incurred $4,539,042.78 in legal fees and expenses in successfully defending the Underlying Action.  All of these defenses costs were reasonable given the circumstances of the Underlying Action, including but not limited to the following:

A.    The damages claimed by Karen Feld in the Underlying Action exceeded $110 million.  Further, FFIC denied coverage to Kenneth Feld in its initial coverage letter.  This meant that, according to FFIC, Kenneth Feld was responsible for paying the entire amount of any judgment obtained by Karen Feld against him.  At a minimum, even if FFIC's denial of coverage was overturned, Kenneth Feld still would have been liable for the amount of any judgment obtained by Karen Feld in excess of the $10 million combined limit of the

Prestige Policy.  The $110 million in damages claimed in the Underlying Action, combined with FFIC's denial of coverage, created therefore a tremendous amount of monetary exposure for Kenneth Feld.  This alone required that he retain premium defense counsel to maximize his chances of success.

B.      The Underlying Action was premier, high-stakes, bet-your-reputation litigation.  It was not a standard insurance defense case.  Kenneth Feld is the owner, Chairman and Chief Executive of FEI, the largest provider of family entertainment in the world.  FEI's productions include but are not limited to the Ringling Bros. and Barnum & Bailey Circus.  To successfully defend the case and therefore protect Kenneth Feld's reputation, it was reasonable and necessary that his defense counsel completely disprove the allegations and claims made by Karen Feld in the Underlying Action.

C.      Karen Feld also put her reputation at stake in the litigation and committed substantial resources to the prosecution of her claims.  Karen Feld has been a fixture on the Washington, D.C. social scene for decades.  She alleged that the intentional torts committed by Kenneth Feld were motivated by a long-standing animus against her that arose from a complicated family history.

D.      The Underlying Action presented a difficult, complex set of facts.  Karen Feld alleged that she, an elderly woman, was forcibly ejected from a family funeral event by private security guards hired by Kenneth Feld, her brother.  She alleged that extreme violence was used during the ejection, including being beaten, punched, kicked, and dragged.  She alleged that she was sexually

assaulted during the ejection.  As a result of these alleged attacks, she claimed to have suffered numerous, severe injuries including neck and back strains, contusions from fingers having been pressed forcibly into her right and upper arm and ribs, pain in her upper arms, lateral neck and lumbar tenderness, cuts and scratches, a torn right earlobe, fractured ribs, fractured elbow, injury to her knee, damage to her vision, and traumatic brain injury.  She also alleged that as a result of her forcible ejection she began to experience loss of vision, increased incidences of uncontrollable speech, headaches, nausea, balance problems, and frequent seizure-like episodes, and that she required brain surgery.

E.      Karen Feld produced voluminous medical records that documented she was receiving treatment from multiple medical providers for multiple injuries after being ejected from the September 2007 shiva.  Disproving Karen Feld's allegations that this medical treatment and her purported underlying injuries were caused by her ejection from the shiva, or any action by Kenneth Feld, was highly contested and required an in-depth examination of Karen Feld's long and complicated medical history, including the issuance of over one hundred (100) subpoenas for medical records and the depositions of multiple medical professionals.

F.      In total, over thirty-five (35) witnesses had to be deposed in the Underlying Action – both fact and expert.

G.      Karen Feld hired three medical doctors to offer expert testimony that her ejection from the shiva caused her extensive neurological and physical

damage – Dr. Steven Macedo, Dr. Daniel Brown, and Dr. Anthony Unger.  The first two testified at trial, were admitted as experts in their fields, and stated that the alleged events in the case caused Karen Feld substantial damage.  Rebutting these experts required substantial legal fees and expense, including but not limited to the hiring by Kenneth Feld of his own expert witnesses.

> H.     Karen Feld was uncooperative and difficult to deal with throughout the litigation.  For example, it took more than six (6) instances over ten months, and multiple court orders, just to get her to sit for and complete her deposition.

> I.     There was extensive, substantive motions practice throughout the pre-trial phase.  Karen Feld filed multiple motions for summary judgment.  She also filed a companion case against Kenneth Feld.  The legal fees and expenses incurred by Kenneth Feld in defending the companion case, although related to the defense of the Underlying Action, were not charged to FFIC.

> J.     Kenneth Feld, along with his counsel, devoted extensive efforts to attempting to settle the Underlying Action through mediation, both court-ordered and voluntary.

> K.     Karen Feld hired numerous lawyers to advance her claims.  Her first lead counsel – William McDaniel – graduated *magna cum laude* from Harvard College, served as the editor-in-chief of the law review at the University of Virginia, and clerked for the United States Court of Appeals for the Third Circuit and then the United States Supreme Court.  Before he started his own firm

in 1984, he practiced law at the D.C. law firm of Williams & Connolly L.L.P.
Mr. McDaniel also had co-counsel, Steven Gremminger.

L.      Karen Feld's next lead counsel – Steven Oster – has been a
practicing trial lawyer since 1984, and before starting his own firm was a partner
at the law firms of Willkie Farr & Gallagher L.L.P. and Bingham McCutchen
L.L.P.

M.      Two lawyers from the D.C. law firm of Bonner Kiernan Trebach &
Crociata – Christopher Hassell and Nimi Amirthalingam – also represented Karen
Feld in the Underlying Action.  Both of these lawyers were actively involved in
the case through discovery, trial, and appeal.

N.      For expert discovery and trial, Karen Feld hired another lawyer –
Steven Frankel – who also is a licensed clinical psychologist.  Mr. Frankel
actively participated in discovery and at trial.

O.      The trial lasted over two weeks and received national media
attention.  The Associated Press covered it in television and print – before, during,
and after the trial.  The Washington Post covered it on a daily basis.  Other local
news outlets, both print and television, also reported on it.  The media arranged a
press conference on the courthouse steps the day of the jury's verdict.  The media
also covered the Underlying Action at various times during the pre-trial phase,
including television and print interviews of Karen Feld.

P.      FFIC considered the trial of such importance that its representative,
Charles Kirk, attended all but the final day to monitor the case.

- 13 -

       Q.     After losing at trial, Karen Feld appealed to the D.C. Circuit. Appellate specialists were required to assist in defending the trial court victory.

       40.     Although it turned out after almost four years of hard-fought, complex, contentious litigation that Kenneth Feld was able to successfully defeat Karen Feld's $110 million claims in their entirety, and obtain a judgment in which neither he nor FFIC was required to pay a penny, to obtain this result it was reasonable for Kenneth Feld to incur $4,539,042.78 in legal fees and expenses.

**Breach of Contract – The Defense Costs FFIC Refuses To Reimburse**

       41.     Kenneth Feld has demanded that FFIC reimburse the full amount of the defense costs he incurred in defending the Underlying Action.  FFIC has refused, and made only partial reimbursement.  The total amount of defense costs that FFIC has refused to reimburse is $2,418,816.39.

       42.     FFIC uses CounselLink, a web-based billing tool operated by LexisNexis Examen, Inc., for invoice submission.  FFIC accepts invoices submitted through CounselLink via the website: www.counsellink.net.  Upon review of those invoices, FFIC declines to pay or seeks reductions and/or refunds with respect to charges that it deems to be noncompliant with its billing guidelines.

       43.     After FFIC has reviewed and/or made adjustments to submitted invoices, CounselLink sends a notification to the claimant via e-mail detailing the adjustments, stating that the adjustments may be appealed, and providing a deadline for appeals. Appeals are submitted through CounselLink via "appeal notes," which are limited to 255 characters.  Upon review of the appeal notes, CounselLink sends "invoice appeal results"

to the claimant via e-mail detailing any additional adjustments made by FFIC.  The entire process, from submission of the invoice to receipt of the invoice appeal results, can take several months.

44.     To date, ten (10) invoices submitted by Kenneth Feld to FFIC are in dispute.  Two (2) of those invoices, detailing the expenses Kenneth Feld incurred in the Underlying Action through December 31, 2009, were not submitted through CounselLink.  These invoices were sent via e-mail to FFIC representative Charles Kirk on August 3, 2010, and resulted in a partial reimbursement by FFIC on October 11, 2010 (the "October 2010 Reimbursement").  Thereafter, all invoices were submitted via CounselLink.  The eight (8) invoices submitted through CounselLink are identified by CounselLink Invoice ID Nos. 3643385, 3646619, 3646687, 3693899, 3947516, 4049204, 4255035, and 4605797.  The two invoices submitted outside of CounselLink are referred to herein as the "October 2010 Invoices."

45.     The invoices submitted by Kenneth Feld to FFIC, to date, are listed in the table below, along with the dates of submission, amounts presented for payment by Kenneth Feld, amounts initially denied by FFIC, amounts appealed by Kenneth Feld, any additional amounts approved after appeal, and amounts currently in dispute:

| INVOICE | SUBMIT DATE | CLAIMED | DENIED | APPEALED | ADD'L APPROVED | TOTAL IN DISPUTE |
|---------|-------------|---------|--------|----------|----------------|------------------|
| 3643385 | 7/13/11 | $985,052.67 | $513,847.96 | $513,821.84 | $74,956.79 | $438,865.05 |
| 3646619 | 7/14/11 | $1,855,294.80 | $1,208,248.39 | $1,208,004.30 | $136,231.37 | $1,071,772.93 |
| 3646687 | 7/15/11 | $415,183.49 | $256,438.59 | $256,416.09 | $49,928.58 | $206,487.51 |
| 3693899 | 8/4/11 | $97,066.68 | $57,128.23 | $56,927.02 | $863.29 | $56,063.73 |
| 3947516 | 11/22/11 | $103,531.48 | $68,805.64 | $68,805.64 | $25 | $68,780.64 |
| 4049204 | 1/5/12 | $112,547.27 | $63,807.37 | $63,807.37 | $0 | $63,807.37 |
| 4255035 | 3/20/12 | $120,634.14 | $70,230.80 | $70,230.80 | $300 | $69,930.80 |
| 4605797 | 6/29/12 | $62,942.44 | $36,761.37 | $36,761.37 | $145.84 | $36,615.53 |
| October 2010 | 8/3/10 | $786,789.81 | $406,492.82 | - | - | $406,492.82 |
| (Total) | | $4,539,042.78 | $2,681,761.17 | $2,274,774.43 | $262,450.86 | $2,418,816.39 |

46.     Of the total amount that FFIC has refused to reimburse, the most significant portion ($2,224,121.61) arises from FFIC's refusal to reimburse the full billing rates of the attorneys that successfully defended the Underlying Action.  Instead, FFIC has, to date, agreed to reimburse only the following rates for the entire duration of the Underlying Action:  $250/hour for partners, $225/hour for associates, and $100/hour for paralegals (the "FFIC Rates").  The details, on an invoice-by-invoice basis, are set forth in the following table:

| INVOICE | TOTAL IN DISPUTE | TOTAL IN DISPUTE RELATED TO BILLING RATES |
|---------|------------------|-------------------------------------------|
| 3643385 | $438,865.05 | $403,379.29 |
| 3646619 | $1,071,772.93 | $961,542 |
| 3646687 | $206,487.51 | $197,836 |
| 3693899 | $56,063.73 | $51,280 |
| 3947516 | $68,780.64 | $53,205.50 |
| 4049204 | $63,807.37 | $54,615.50 |
| 4255035 | $69,930.80 | $62,613 |
| 4605797 | $36,615.53 | $33,157.50 |
| October 2010 | $406,492.82 | $406,492.82 |
| (Total) | $2,418,816.39 | $2,224,121.61 |

47.     The FFIC Rates ($250/hour for partners, $225/hour for associates, and $100/hour for paralegals) do not satisfy FFIC's contractual obligation under the Prestige

Policy to reimburse all reasonable legal fees and expenses incurred by Mr. Feld in defending the Underlying Action.

48.     The hourly rates charged by Fulbright to defend the Underlying Action are reasonable.

49.     Regardless of a particular hourly rate, the total fees and expenses incurred by Kenneth Feld to successfully defend the Underlying Action were reasonable given the circumstances of the Underlying Action.

50.     FFIC also has refused to pay for certain other fees and expenses incurred by Kenneth Feld in defending the Underlying Action.  These include, but are not limited to:  online legal research expenses; internal photocopying charges billed at $0.15 per page (FFIC has paid $0.10 per page); charges billed by law firm timekeepers for tasks which FFIC deems as administrative or overhead; charges for tasks that FFIC deems to be temporary clerical or administrative help; charges for tasks that FFIC deems to be customarily performed by paralegals in insurance defense work; attendance by certain attorneys at Court conferences, depositions, and witness interviews; local travel expenses for attendance at Court conferences, depositions, and witness interviews; and attorney time incurred in order to comply with FFIC's billing and appeal procedures.  The total amount of these defense costs is $194,694.78.  FFIC's refusal to reimburse these fees and expenses, along with its refusal to reimburse the full amount of the hourly rates incurred by Kenneth Feld in defending the Underlying Action, constitutes a breach of its contractual obligations under the Prestige Policy.

**FFIC's Refusal to Fully Reimburse Kenneth Feld's Reasonable Legal Fees and Expenses Constitutes a Breach of Its Implied Duty of Good Faith and Fair Dealing**

51.     During the period from August to December 2009, FFIC and Fulbright exchanged correspondence regarding the terms and conditions of the operative insurance policies.

52.     FFIC's initial coverage letter dated August 11, 2009, written by Charles Kirk, Technical Director for FFIC, confirmed that the operative policies were the Primary Policy and the Excess Policy.  However, even though both policies provided coverage for claims arising from "false arrest, detention, or imprisonment" and "the use of reasonable force to protect people or property," and this was the basis for the allegations in the Underlying Action, FFIC denied coverage to Kenneth Feld and took the position that claims in the Underlying Action were not covered "occurrences."  According to FFIC, therefore, Kenneth Feld was responsible for paying the entire amount of any judgment obtained by Karen Feld in the $110 million Underlying Action.  Despite the fact that FFIC denied coverage, it also stated in its initial coverage letter that, subject to its complete reservation of rights, it agreed to defend Kenneth Feld in the Underlying Action:

> By virtue of the above, FFIC agrees to defend Kenneth Feld in the Underlying Action subject to a full and complete reservation of rights.  All of the claims of the Complaint allege intentional conduct by Kenneth Feld. Specifically, the remaining allegations in the Complaint are:  assault, battery, intentional infliction of emotional distress, and false imprisonment.  These claims are not covered by the Policy by virtue of the above cited provisions.

> The Policy's definition of 'occurrence' requires an 'accidental loss.' Assault, battery, intentional infliction of emotional distress, and false

imprisonment are not accidents.  As such, the claims in the Underlying Action do not satisfy the definition of 'occurrence.'

Further, the Policy's expected or intended exclusion serve[s] to preclude coverage for all claims contained in the Underlying Action.

As such, by virtue of the Policy provisions cited above, FFIC has concluded that the Complaint fails to state any claim for which the FFIC Policy is required to indemnify Kenneth Feld and Mr. Feld faces personal liability to the extent held liable.

(Letter from Charles Kirk to Kenneth Feld, Aug. 11, 2009, at 9-10).

53.    FFIC's initial coverage letter confirmed that Kenneth Feld had the right to choose his own counsel to defend the Underlying Action:

Subject to its reservations of rights, you may elect to choose your own counsel to defend you in this matter; otherwise we can appoint counsel for you.  (*Id.* at 10).

54.    However, FFIC attempted to modify the terms of the Prestige Policy by conditioning its obligation to pay all reasonable defense costs on FFIC having to agree on the hourly rates of Kenneth Feld's chosen defense counsel:

FFIC agrees to pay, <u>at an agreed hourly rate</u>, the reasonable and necessary legal fees and Court costs incurred by counsel to defend you subsequent to the date this matter was tendered to FFIC under a full reservation of rights, and in accordance with the terms and conditions of the subject Policy and those contained herein."  (*Id.*) (emphasis added).

55.    The terms of the Prestige Policy do not require an agreement between Kenneth Feld and FFIC on hourly rates; rather, they require that FFIC pay Kenneth Feld's defense costs.  The terms of the Prestige Policy also do not give FFIC the authority to unilaterally set an "agreed hourly rate" for such defense costs or require Kenneth Feld to agree to any such FFIC hourly rates as a condition of receiving reimbursement of his defense costs.

56.     Throughout its initial coverage letter, FFIC then reiterated its complete

reservation of rights:

> Please be advised that FFIC's decision to defend Kenneth Feld in the
> Underlying Action is subject to a full and complete reservation of all of
> FFIC's rights to deny coverage, in whole or in part, under all of the terms,
> conditions, provisions, endorsements, definitions and exclusions of the
> Primary Policy and the Excess Policy, …. (*Id.*);

> FFIC also reserves the right to withdraw from the defense of Kenneth Feld
> in the Underlying Action and to deny coverage when and if further
> investigation reveals that there is no coverage existing under the Policy, . .
> . . (*Id.*);

> FFIC's defense of Kenneth Feld in the Underlying Action, or any other
> action by FFIC, does not constitute a waiver of any of its rights under the
> Primary Policy and the Excess Policy or otherwise. (*Id.* at 11); and

> This letter is not intended to be an exhaustive listing of the coverage issues
> that may be involved in this matter, and FFIC reserves its right to rely
> upon additional terms, conditions and exclusions to deny coverage.  FFIC
> reserves the right to supplement and/or to update our position. (*Id.*).

57.     FFIC also specifically reserved the right to demand that Kenneth Feld pay

back any reimbursement of his defense costs:

> FFIC also reserves the right to seek contribution and/or reimbursement
> from Kenneth Feld for any and all defense costs and/or other monies paid,
> for which it is determined that there is no coverage. (*Id.* at 10).

58.     This meant that if Kenneth Feld lost the Underlying Action, FFIC's

position was that not only did Kenneth Feld have to pay the entire amount of any

judgment but also that FFIC could demand that Kenneth Feld repay any defense costs

advanced by FFIC to that date.

59.     FFIC's initial coverage letter attempted to put Kenneth Feld in an

impossible position.  On one hand FFIC improperly denied coverage on the Underlying

Action, thus exposing Kenneth Feld to the full $110 million claimed.  On the other hand,

FFIC attempted to modify the terms of the Prestige Policy by conditioning its existing obligation to reimburse reasonable defense costs on it agreeing to the hourly rates of Kenneth Feld's chosen defense counsel.  And, FFIC made all of this contingent on its reserved right to change its position at any time and, among other things, demand repayment of any defense costs it paid to Kenneth Feld in the event that he did not prevail in the Underlying Action.

60.     Given FFIC's actions, Kenneth Feld fully reserved his own rights with respect to FFIC's obligation to fully reimburse his defense costs and proceeded, in the interim, to accept partial reimbursement from FFIC until the Underlying Action was resolved.  These details are set forth in the following paragraphs.

61.     Between August 11, 2009, when FFIC sent its initial coverage letter, and October 4, 2009, FFIC representative Charles Kirk and Fulbright attorney Caroline Mew had a limited number of brief telephone conversations related to FFIC's stated coverage position.  At no point in any of these conversations were attorney billing rates negotiated or agreed.  In one of these telephone calls, Mr. Kirk unilaterally stated the rates that FFIC might be willing to pay.  At no point were any such rates ever agreed to by Fulbright or Kenneth Feld.

62.     On October 4, 2009, Mr. Kirk sent an e-mail to Ms. Mew purporting to confirm these conversations.  Therein he repeated FFIC's position, specifically, that FFIC "will agree to pay a rate not to exceed $250/hour for partners; $225/hour for associates; and $100/hour for paralegals."  (E-mail from Charles Kirk to Caroline Mew, Oct. 4, 2009).  This confirms that these simply were the rates that FFIC unilaterally stated it

would pay.  At no time did Fulbright or Kenneth Feld ever agree to these rates or that payment of these rates satisfied FFIC's contractual obligations to pay all reasonable fees and expenses in defending the Underlying Action.

63.     On October 28, 2009, Fulbright responded to FFIC's request for a budget by providing a spreadsheet that applied FFIC's unilaterally stated rates against a preliminary estimate of the number of hours required to litigate the case.  In its cover letter, Fulbright stated that it did "not consider this to be a binding representation of the fees and expenses that actually will be incurred in this matter."  (Letter from Caroline Mew to Charles Kirk, Oct. 28, 2009).  Fulbright's cover letter did not state that FFIC's rates had been agreed to by Fulbright or Kenneth Feld.  FFIC never agreed to this budget.

64.     On November 18, 2009, FFIC's outside counsel, Rivkin Radler L.L.P., sent a letter to Fulbright.  The letter stated again that FFIC agreed to pay, at an agreed hourly rate, "the reasonable and necessary legal fees and Court costs incurred by counsel . . . under a full reservation of rights and subject to FFIC's billing guidelines."  (Letter from Erik Lindemann of Rivkin Radler to Caroline Mew, Nov. 18, 2009, at 1).  The letter also incorrectly stated that "FFIC and Fulbright have agreed on specific hourly rates for the defense of Feld."  (*Id.* at 2).  In fact, Fulbright never agreed to the rates stated by FFIC.

65.     On December 8, 2009, Fulbright responded in writing and confirmed that the assertions in Rivkin Radler's November 18, 2009 letter were incorrect.  As to any partial reimbursement by FFIC of the legal fees and expenses incurred by Kenneth Feld in defending the Underlying Action, Fulbright expressly stated:

> FFIC may presume that the Firm and Mr. Feld contest <u>any and all amounts</u> unpaid by FFIC on any bills presented by the Firm to FFIC for payment unless FFIC is notified otherwise.

(Letter from Lisa Joiner of Fulbright to Erik Lindemann, Dec. 8, 2009, at 2) (emphasis added).  Fulbright's letter further stated, "FFIC is <u>currently</u> paying only a fraction of the Firm's hourly rates with the remaining amounts being charged to Mr. Feld notwithstanding the insurance he has purchased from FFIC."  (*Id.*) (emphasis added).  In closing, Fulbright again reserved all of Kenneth Feld's rights, stating: "This letter does not constitute a waiver of any of Mr. Feld's rights under the FFIC policy or otherwise." (*Id.* at 4).

66.     On  December 15, 2009, Rivkin Radler responded by letter and again reserved all of FFIC's rights.  (Letter from Erik Lindemann to Lisa Joiner, Dec. 15, 2009, at 2).  Rivkin Radler did not object to Fulbright's December 8, 2009 reservation of Kenneth Feld's rights as to "any and all amounts unpaid by FFIC on any bills presented by the Firm to FFIC for payment…."  (Letter from Lisa Joiner to Erik Lindemann, Dec. 8, 2009, at 2).

67.     During the Underlying Action, Kenneth Feld always sought reimbursement from FFIC for the full amounts of the rates he incurred.  Specifically, each invoice presented by Fulbright for payment to FFIC used the full hourly rates incurred by Kenneth Feld in defending the Underlying Action, not the FFIC unilaterally stated rates.

68.     When FFIC denied full payment of Fulbright's hourly rates based on the incorrect claim that FFIC's unilateral rates had been agreed to Kenneth Feld, Fulbright

submitted appeals in the CounselLink system stating as follows (limited to CounselLink's

255 characters):

> The stated hourly rates were not agreed and are unreasonably low given
> the amount of exposure ($110 million), the difficult, unique nature of the
> case, and the number and quality of opposing counsel hired by Plaintiff.

69.     During the Underlying Action, Kenneth Feld accepted partial payment

from FFIC based on its unilaterally stated rates subject to his own reservation of rights as

to "any and all amounts" submitted to FFIC for payment that were not reimbursed.

70.     At no time in any communication with FFIC, did Fulbright ever state to

FFIC that Kenneth Feld had agreed to the hourly rates FFIC unilaterally stated on

October 4, 2009.

71.     At no time did Fulbright or any other representative of Kenneth Feld ever

state to FFIC that its unilateral rates satisfied FFIC's obligation under the Prestige Policy

to pay for all of Kenneth Feld's reasonable defense costs in the Underlying Action.

72.     At no time did Kenneth Feld, Fulbright or any other representative of

Kenneth Feld agree that FFIC, as a condition of fulfilling its contractual obligations under

the Policy, was entitled to unilaterally set hourly rates for Kenneth Feld's defense costs or

require agreement by Kenneth Feld to such hourly rates.

73.     At no time did Kenneth Feld, Fulbright or any other representative of

Kenneth Feld waive Kenneth Feld's right to seek full reimbursement of the reasonable

defense costs in the Underlying Action.

74.     FFIC unilaterally put its hourly rates in place in October 2009, subject to

its extensive reservation of rights.  FFIC's purpose in putting its rates in place was to

provide Kenneth Feld partial reimbursement of his defense costs pending the outcome of the Underlying Action.  Had Kenneth Feld lost the Underlying Action at trial, FFIC, as stated in its initial coverage letter, would have attempted to recoup all partial payments made to Kenneth Feld.

75.     After prevailing at trial in the Underlying Action, Kenneth Feld has again demanded that FFIC reimburse all of his reasonable defense costs.  FFIC has refused.

76.     With Kenneth Feld having prevailed in the Underlying Action, FFIC no longer has any plausible basis on which to reserve its rights or refuse to pay all reasonable defense costs incurred by Kenneth Feld in the Underlying Action.  Absent any plausible basis, FFIC's present refusal to reimburse the full amount of Kenneth Feld's defense costs demonstrates FFIC's breach of its implied duty of good faith and fair dealing under the Prestige Policy.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

77.     Kenneth Feld incorporates and realleges the foregoing allegations as if set forth fully herein.

78.     Under the Prestige Policy, FFIC has a contractual duty to defend Kenneth Feld and make him whole in the event of a covered occurrence.

79.     The alleged acts from which the Underlying Action arose constitute an occurrence within the coverage of the Prestige Policy.

80.     FFIC's duty to defend is coterminous with its duty to fully reimburse the reasonable defense costs – both legal fees and expenses – Kenneth Feld incurred in defending the Underlying Action.

81.     FFIC breached its obligations under the Prestige Policy by failing to fully reimburse the reasonable defense costs – both legal fees and expenses – Kenneth Feld incurred in defending the Underlying Action.

82.     As a direct and proximate result of FFIC's breach, Kenneth Feld has been deprived of the full benefit of his liability insurance coverage for which substantial premiums were paid, and has been forced to incur defense costs that are FFIC's obligation.

83.     As a direct and proximate result of FFIC's breach, Kenneth Feld has been forced to incur and will continue to incur additional, reasonably foreseeable, consequential damages, including, but not limited to, the cost of attorneys' fees and other expenses in prosecuting this action, and interest on the amounts wrongfully withheld by FFIC.

84.     Kenneth Feld has complied with all conditions precedent to payment and has fully performed all of his obligations under the Prestige Policy, except to the extent waived, excused, or prevented.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

85.     Kenneth Feld incorporates and realleges the foregoing allegations as if set forth fully herein.

86.     The Prestige Policy establishes a contractual relationship between Kenneth Feld and FFIC, and contains an implied duty of good faith and fair dealing, which requires FFIC to refrain from destroying or injuring Kenneth Feld's right to receive the fruits of the Prestige Policy.

87.     FFIC has a duty to exercise good faith and deal fairly with Kenneth Feld in the performance of its contractual obligations to defend, and by extension to pay for the defense of, Kenneth Feld with respect to claims made against him which are covered under the Prestige Policy.

88.     FFIC breached its duty of good faith and fair dealing by refusing to pay the full amount of Kenneth Feld's defense costs in the Underlying Action after Kenneth Feld prevailed in the Underlying Action both at trial and on appeal.

89.     FFIC's breach has had the direct and proximate result of destroying and/or injuring Kenneth Feld's right to receive the fruits of the Prestige Policy.

90.     FFIC lacked a reasonable basis for refusing to pay the full amount of Kenneth Feld's defense costs in the Underlying Action, and FFIC knew and recklessly disregarded its lack of a reasonable basis.

91.     FFIC knowingly, willfully, and intentionally acted in a manner that evaded the spirit of the Prestige Policy, conflicted with the interests of Kenneth Feld, and improperly elevated its own interests above the interests of Kenneth Feld.

92.     As a direct and proximate result of FFIC's breach, Kenneth Feld has been deprived of the full benefit of his liability insurance coverage for which substantial premiums were paid and has been forced to incur defense costs he would not otherwise have incurred.

93.     As a direct and proximate result of FFIC's breach, Kenneth Feld has been forced to incur and will continue to incur additional, reasonably foreseeable, consequential damages, including, but not limited to, the cost of attorneys' fees and other

expenses necessary to bring this action to enforce his legal rights, and interest on the amounts wrongfully withheld by FFIC.

94.     Because FFIC's breach merges with and assumes the character of a willful tort, Kenneth Feld is entitled to receive punitive damages, in addition to all other damages recoverable under law.

**COUNT III**
**DECLARATORY JUDGMENT**

95.     Kenneth Feld incorporates and realleges the foregoing allegations as if set forth fully herein.

96.     Under the Prestige Policy, FFIC has a duty to defend Kenneth Feld where a suit is brought against him for damages caused by a covered occurrence.

97.     FFIC has denied coverage in the Underlying Action.

98.     FFIC also has refused to pay the full amount of the reasonable legal fees and expenses incurred by Kenneth Feld in defending the Underlying Action.

99.     Kenneth Feld is entitled to a declaration that the Underlying Action is covered by the Prestige Policy and that FFIC has a duty to pay the full amount of the reasonable legal fees and expenses incurred by Kenneth Feld in defending the Underlying Action.

100.     An actual and justiciable controversy exists between Kenneth Feld and FFIC concerning the scope and extent of coverage available or potentially available to Kenneth Feld under the Prestige Policy with respect to the claims in the Underlying Action.

101.    The issuance of declaratory relief, pursuant to 28 U.S.C. § 2201, will terminate some or all of the existing controversy between the parties.

## PRAYER FOR RELIEF

WHEREFORE, Kenneth Feld requests that the Court enter judgment in his favor as follows:

        A.    Awarding compensatory damages in an amount equal to the full amount of the reasonable legal fees and expenses Kenneth Feld incurred in successfully defending the Underlying Action, less any amounts already paid by FFIC;

        B.    Awarding pre- and post-judgment interest on the unpaid amounts;

        C.    Awarding attorneys' fees and costs incurred in the instant action for FFIC's breach of its implied covenant of good faith and fair dealing;

        D.    Awarding punitive damages for FFIC's breach of its implied covenant of good faith and fair dealing;

        E.    Declaring that the Underlying Action is covered by the Prestige Policy and that FFIC is obligated to pay Kenneth Feld the full amount of the reasonable legal fees and expenses he incurred in defending the Underlying Action; and

        F.    Awarding such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Kenneth Feld hereby demands a trial by jury as to all issues triable herein.

Dated: November 2, 2012                    Respectfully submitted,


                                           /s/ Matthew H. Kirtland
                                           Matthew H. Kirtland
                                           D.C. Bar # 456006
                                           mkirtland@fulbright.com
                                           Kimberly H. Caine
                                           D.C. Bar # 974926
                                           kcaine@fulbright.com
                                           FULBRIGHT & JAWORSKI L.L.P.
                                           801 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20004-2623
                                           Telephone:     (202) 662-0200
                                           Facsimile:     (202) 662-4643

                                           Counsel for Plaintiff Kenneth Feld