## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH FELD,

      Plaintiff,

      v.                               Civil Action No.  12-1789 (JDB)

FIREMAN'S FUND INSURANCE
COMPANY,

      Defendant.

### MEMORANDUM OPINION

This action arises out of defendant Fireman's Fund Insurance Company's ("FFIC") refusal to fully reimburse plaintiff Kenneth Feld for more than $4.5 million in legal fees and expenses that Feld claims to have incurred in a prior, protracted legal battle in this district.  Currently before the Court is FFIC's motion to compel discovery.  For the reasons set forth below, the motion will be granted in part and denied in part.

### BACKGROUND

In September 2008, Karen Feld filed a lawsuit (the "Underlying Action") against Kenneth Feld,[1] Karen's brother and the plaintiff here, based on events that allegedly took place in September 2007.  Compl. [ECF 1] ¶ 9.  Karen asserted claims of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and false

---

[1] In this opinion, the Court refers to Karen Feld by her first name and to Kenneth Feld as "Feld."

imprisonment; she sought damages of more than $110 million.  Id.[2]  Feld filed a counterclaim for trespass.  Id. ¶ 11.

At the time of the events alleged in Karen's complaint, Feld had personal liability insurance coverage under a "Prestige Home Premier" policy (the "Policy") issued by FFIC.  Id. ¶ 22.  The Policy provided that FFIC would defend Feld against covered claims or suits against him.  It had two components, a primary homeowner's policy and an excess liability policy.  Id. ¶ 23.  Under the primary policy, FFIC had a duty to "[p]rovide a defense at [its] expense by counsel of [its] choice"; under the excess policy, FFIC had a duty to "provide a defense at [its] expense by counsel of [Feld's] choice, from [FFIC's] list of approved vendors."  Id. ¶¶ 28-30. The Policy did not specify hourly rates at which defense counsel would be paid.

On June 12, 2009, Feld notified FFIC of the Underlying Action and of his claim for coverage under the Policy.  See Def.'s Mot. to Compel [ECF 14], Ex. 1, Letter from Charles Kirk to Kenneth Feld 1, 4 (Aug. 11, 2009) ("8/11/09 Kirk Letter").  FFIC agreed to defend Feld in the Underlying Action "subject to a full and complete reservation of rights."  See id. at 9. Specifically, FFIC stated that the claims in the Underlying Action alleged intentional conduct and hence were "not covered by the Policy."  Id.  FFIC nevertheless agreed to provide a defense because Feld had denied the allegations and said that he acted in self-defense.  Id. at 10.  FFIC told Feld:

> Subject to [FFIC's] reservation of rights, you may elect to choose your own
> counsel to defend you in this matter; otherwise we can appoint counsel for you.
> FFIC agrees to pay, at an agreed hourly rate, the reasonable and necessary legal

---

[2] Karen also sued Feld Entertainment, Inc., of which Kenneth Feld is Chairman and Chief Executive Officer.  She dismissed her claims against Feld Entertainment before trial.  Compl. 1 n.1.

fees and Court costs incurred by counsel to defend you subsequent to the date this matter is tendered to FFIC under a full reservation of rights, and in accordance with the terms and conditions of the subject Policy and those contained herein. Payment by FFIC for any legal expenses incurred on your behalf will not act as a waiver of any rights FFIC may have to adjust, allocate or assert that there is no coverage for any payment made.

Id.

Feld retained counsel from the law firm of Fulbright & Jaworski L.L.P. to represent him in the Underlying Action.  Feld asserts that between August and October of 2009 FFIC Technical Director Charles Kirk and Fulbright attorney Caroline Mew had "a limited number of brief telephone conversations related to FFIC's stated coverage position."  Compl. ¶ 61.  Feld further asserts that, in one of these conversations, Kirk "unilaterally stated the rates that FFIC might be willing to pay," but that "[a]t no point were any such rates ever agreed to by Fulbright or Kenneth Feld."  Id.  In October 2009, Kirk sent an email to Mew attempting to "confirm [their] recent conversations."  Def.'s Mot. to Compel, Ex. 2, Email from Charles Kirk to Caroline Mew (Oct. 4, 2009).  Kirk stated: "As insured selected counsel, we will agree to pay a rate not to exceed $250/hour for partners; $225/hour for associates; and $100/hour for paralegals.  Any amount in excess of those rates would continue to be the insured's responsibility."  Id.  FFIC requested a budget from Fulbright, and in response, Mew sent Kirk a proposed budget which reflected the billing rates proposed by Kirk: $250/hour for partners, $225/hour for senior counsel and senior associates (a rate that, though not stated in Kirk's prior email, was consistent with the other rates stated therein), $200/hour for associates, and $100/hour for paralegals.  See Def.'s Mot. to Compel, Ex. 4, Letter from Caroline Mew to Charles Kirk (Oct. 28, 2009) ("10/28/09 Mew Letter").  Mew provided the proposed budget as "a good faith estimate of the amount of time and expenses [Fulbright] anticipate[d] expending in [the Underlying Action]," but noted, "We do not

consider this to be a binding representation of the fees and expenses that actually will be incurred in this matter."  Id.

In a December 2009 letter to FFIC's outside counsel, Fulbright stated that it had "complied in good faith with FFIC's request for a case budget" and that the firm believed that the proposed budget – of about $1.7 million – was reasonable.  See Pl.'s Opp'n to Def.'s Mot. to Compel [ECF 15] ("Pl.'s Opp'n"), Ex. 1, Letter from Lisa Joiner to Erik Lindemann 2-3 (Dec. 8, 2009) ("12/8/09 Joiner Letter"); see also 10/28/09 Mew Letter (proposed budget of about $1.4 million in fees and about $278,000 in expenses).  Fulbright urged against further attempts by FFIC "to restrict the type of work done or to reduce the hours worked," stressing that FFIC was "currently paying only a fraction of the Firm's hourly rates with the remaining amounts being charged to Mr. Feld notwithstanding the insurance he ha[d] purchased from FFIC."  12/8/09 Joiner Letter 2-3.  Fulbright agreed to submit periodic invoices to FFIC but refused to accept FFIC's proposed condition that Fulbright have only 30 days to appeal any "deductions or declinations" by FFIC.  Id. at 2.  Accordingly, Fulbright stated: "To simplify matters, FFIC may presume that [Fulbright] and Mr. Feld contest any and all amounts unpaid by FFIC on any bills presented by [Fulbright] to FFIC for payment unless FFIC is notified otherwise."  Id.

Beginning in August 2010, Fulbright submitted a series of invoices to FFIC.  The hourly rates in the invoices exceeded the rates set forth in Kirk's October 2009 email and Fulbright's proposed budget.  See Def.'s Mot. to Compel, Ex. 5, Letter from Charles Kirk to Matthew Kirtland (Oct. 11, 2010).  FFIC adjusted the rates and sent checks to Fulbright based on the rates FFIC had agreed to pay.  See id.  In addition to its refusal to pay the full hourly rates charged by Fulbright, FFIC refused to pay certain other fees and expenses for various reasons.  Compl. ¶ 50.

4

Feld successfully defended the Underlying Action.  The district court dismissed the negligent infliction of emotional distress claim on Feld's motion for partial summary judgment, and, following a two-week jury trial, the jury reached a verdict in Feld's favor on the remaining claims against him, though it did not find liability on his counterclaim for trespass.  See Compl. ¶¶ 12, 17.  The D.C. Circuit affirmed the judgment on appeal.  See Feld v. Feld, 688 F.3d 779 (D.C. Cir. 2012).

Feld sought payment from FFIC for $4,539,042.78 in legal fees and expenses incurred during the Underlying Action.  Compl. ¶ 39.  FFIC reimbursed Feld for more than $2.1 million but has refused to reimburse $2,418,816.39 of the amount claimed.  Id. ¶¶ 45-46.

Feld has filed this action against FFIC to recover the $2.4 million not paid by FFIC, alleging breach of contract and breach of the implied covenant of good faith and fair dealing.  Most of the amount in dispute – about $2.2 million – stems from the parties' disagreement over Fulbright's billing rates.  Id. ¶ 46.  The parties' dispute over the remaining amount – less than $200,000 – relates to the reasonableness and necessity of the underlying charges.  See Def.'s Mot. to Compel 5-6.

Discovery has commenced, and a discovery dispute has arisen regarding several of FFIC's interrogatories and requests for production.  FFIC has filed a motion to compel the production of documents and information.  Specifically, FFIC seeks an order compelling Feld to produce all documents responsive to FFIC's Requests for Production ("Requests") Nos. 1-5, 7-10, 12-13, 15, 18, and 22-24, and to respond in full to FFIC's Interrogatories Nos. 3-4 and 14-15.

According to FFIC, the documents and information sought fall into three categories: (1) those Feld has agreed to produce but has not; (2) those reflecting or relating to Feld's

understanding of his agreement with FFIC regarding the payment of defense costs; and (3) those

going to the reasonableness and necessity of expending defense costs of $4.5 million in the

Underlying Action.  Def.'s Mot. to Compel 1.

Feld has filed an opposition to FFIC's motion to compel.  He states that he has already

"produced or agreed to produce all discoverable materials" and that the materials he has not

produced are privileged, not relevant, or otherwise protected from disclosure.  Pl.'s Opp'n 12-13,

18-19.  FFIC argues that the materials sought are discoverable and that Feld may not assert a

privilege to prevent their disclosure because he either has not established, or has waived, any

privilege that might otherwise exist.  See Def.'s Mot. to Compel 14.  The Court will first discuss

the permissible scope of discovery in this case and then turn to the privilege and waiver issues

raised by the parties.

## DISCUSSION

### I.    Scope of Discovery

"The Federal Rules of Civil Procedure encourage the exchange of information through

broad discovery."  In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004).  Rule 26(b)(1) provides

that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense."  To be relevant for discovery purposes, "information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."  Fed. R. Civ. P. 26(b)(1).

According to FFIC, Feld has thus far produced only "invoices, pleadings, written

discovery and appellate proceedings filed in the Underlying Litigation."  Def.'s Mot. to Compel

17.  Apparently, Feld has agreed to produce all non-privileged documents responsive to Requests

Nos. 1, 9-10, 15, and 22-23.  See Def.'s Mot. to Compel 7; Pl.'s Opp'n 8, 10-11.  To the extent he

has not already done so, Feld should produce all such documents forthwith.  Feld's privilege

objections, to Requests Nos. 2-5, 12-13, and 24 and Interrogatories Nos. 4 and 14,[3] will be

discussed below.  Feld's remaining objections, based on relevance, are the following.

First, Feld argues that Requests Nos. 2-5, 12, and 24 and Interrogatories Nos. 3-4 and 14,

which seek communications, documents, and information regarding "the matters alleged in the

Complaint" and "the fees, costs and invoices" related to the Underlying Action, seek materials

that are not relevant.  See Pl.'s Opp'n 18.  Feld argues that only materials bearing on "the three

main issues in dispute" – whether there was an agreement regarding hourly rates, the

reasonableness of the fees and expenses billed, and whether FFIC dealt fairly and in good faith

with Feld – are relevant, and that not every email or document that "even marginally references a

fee or expense relating to the Underlying Action" is relevant.  See Pl.'s Opp'n 18-19.

Although it is likely true that not every email or document referencing a fee or expense

incurred in the Underlying Action will be of significance to the parties' claims or defenses, many

such emails or documents will be relevant because they reflect on the reasonableness of the

particular fees or expenses referenced.  Hence, the requests and interrogatory (Requests Nos. 2, 4,

and 24 and Interrogatory No. 4) regarding the fees, costs, and invoices in the Underlying Action

appear reasonably calculated to lead to the discovery of admissible evidence.  The same is true of

the requests and interrogatories (Requests Nos. 3 and 5 and Interrogatories Nos. 4 and 14)

regarding the matters alleged in Feld's complaint, as materials bearing on the allegations and

---

[3] See Pl.'s Opp'n 13.  FFIC states that Feld has also objected to Requests No. 1 and 7-8 on privilege grounds, see Def.'s Mot. to Compel 8, but the Court accepts Feld's representation of his own objections.

claims in this case logically may lead to (or be) admissible evidence.  The requested discovery thus is not irrelevant.

The requests and interrogatories in question are, however, quite broad.  The burden on Feld of locating and producing every single communication relating in any way, however slightly, to "the matters alleged in the Complaint" or any fee, cost, or invoice in the Underlying Action probably outweighs the benefit.  Therefore at this time, the Court will narrow the scope of Requests Nos. 2-5 and 24 and Interrogatories Nos. 4 and 14 to materials that both parties agree are discoverable: Feld must produce all non-privileged materials that are responsive to these requests and interrogatories and that either (a) reflect or relate to any discussion of or agreement on hourly rates or (b) relate to the reasonableness of the fees and expenses submitted to FFIC for reimbursement.  See Fed. R. Civ. P. 26(b)(2)(C); Def.'s Mot. to Compel 1; Pl.'s Opp'n 19.[4]  Such materials would include, but would not be limited to: any communications regarding Feld's or Fulbright's understanding of FFIC's obligations under the Policy; any communications regarding the hourly rate caps set by FFIC, including what Feld was told about FFIC's position on rates and how he responded; and any documents bearing on the reasonableness and necessity of the fees and expenses charged to FFIC in the Underlying Action.

Request No. 12 seeks: "All documents which refer to the Underlying Litigation, including but not limited to the exposure therein; the defense costs generated and who would pay those costs; and evaluation of Karen Feld's claims."  A request for "[a]ll" documents referring to the

---

[4] Feld has specifically objected to Request No. 5 because it asks for all communications between Feld and "any person" that relate to matters alleged in the complaint.  See Pl.'s Opp'n 19. By narrowing the scope of the required production as set forth above, the Court has addressed this specific objection as well as Feld's more general objection that the requests and interrogatories seek too much.

Underlying Action is overly broad.  Hence, the Court will narrow the scope based on the specific categories of documents listed in the request.  Documents concerning the defense costs generated and who would pay them are relevant to the reasonableness of the costs submitted for reimbursement and to Feld's understanding of FFIC's obligations under the Policy (i.e., Feld may have understood that he would have to pay a portion of his own legal expenses notwithstanding the insurance he had purchased from FFIC).  See, e.g., 12/8/09 Joiner Letter 2.  And because Feld seeks to justify the expenditure of $4.5 million in fees and expenses based on "the circumstances of the Underlying Action," his exposure and the evaluation of the claims against him are also relevant.  See Compl. ¶ 39 (citing, among other things, amount of damages claimed, complexity of facts, and quality of opposing counsel as reasons for high costs incurred).  Non-privileged documents concerning each of the subjects specified in Request No. 12 should be produced.

Interrogatory No. 3 states: "Identify and describe with particularity all communications between you and FFIC from June 1, 2007 to the present.  Include in your description the date(s) and the substance of the communications and identify all persons who participated in those communications."  Feld must respond to this interrogatory to the extent that the communications have any relation to Feld's coverage or claims under the Policy and the Underlying Action.

Feld next argues that draft invoices, as requested in Requests Nos. 7-8, are not relevant. See Pl.'s Opp'n 19.  FFIC's response is that the production of draft invoices is reasonably calculated to lead to the discovery of admissible evidence about the reasonableness of the final invoices.  See Def.'s Mot. to Compel 11.  Notwithstanding Feld's arguments that only the final invoices are relevant, the Court concludes that draft invoices are relevant for discovery purposes, as they may show charges that Fulbright added or subtracted for one reason or another before

submitting the final invoices to FFIC, and the propriety of such changes may bear on reasonableness.  It is also possible that early draft invoices incorporated the billing rates agreed to by FFIC and used in Fulbright's proposed budget; if so, they would certainly be relevant to the parties' claims and defenses.  Hence, Feld must produce any drafts of the final invoices submitted to FFIC.

Feld objects to Request No. 13 because it seeks documents reflecting evaluations of coverage under the FFIC Policy "or any other insurance policy."  See Pl.'s Opp'n 20.  Feld states that he did not submit claims to FFIC that were covered by any other insurance policy.  Id. Accepting this, evaluations of Feld's coverage under other insurance policies have no apparent relevance.  Although FFIC asserts that it had no obligation under the Policy to pay for defense costs that were covered by other insurance – for example, insurance held by Feld Entertainment – FFIC has not identified any particular fees or expenses for which Feld may have had other insurance coverage, nor has it counterclaimed to recover reimbursed amounts on that basis.  If FFIC can point to evidence suggesting that the charges actually billed to it were covered by another insurance policy, then discovery on insurance matters might be appropriate.  But the present dispute is limited to the parties' agreement on hourly rates and the reasonableness of the roughly $200,000 FFIC has refused to pay for reasons other than rates.  Because Feld's other insurance coverage has nothing to do with either of these issues, Feld's production in response to Request No. 13 should include documents reflecting evaluations of coverage only under the FFIC Policy.

Similarly, unless FFIC was billed for work done on matters beyond the Underlying Action, it is not entitled to all documents responsive to Request No. 18, which seeks "[a]ll

documents which relate to payment by any person related to any work" that Fulbright did for Feld between September 1, 2007 and the present.  Feld is only required to produce responsive documents that pertain to work done relating to the Underlying Action.

Finally, Feld asserts that he has adequately responded to Interrogatory No. 15, which asks him to "identify all contracts, agreements, and/or any other document(s) upon which you base your claims in this matter, including but not limited to any fee agreements between you and Fulbright & Jaworski, LLP."  Pl.'s Opp'n 20.  Any fee agreement between Feld and Fulbright in the Underlying Action is potentially relevant to this action and should be produced because it might reflect Feld's obligations to Fulbright notwithstanding (or in addition to) FFIC's payments under the Policy.[5]

## II.   Privilege

Feld asserts that a substantial portion of the materials sought by FFIC are privileged and that he has not waived the privilege by putting the materials in issue.  Because Feld has not provided a privilege log, the Court does not know what documents are assertedly privileged.  But based on the current record and applicable principles of privilege law, the Court can narrow the discovery dispute before it.

A.    Applicable Law

---

[5] Feld states in his opposition that he "is not aware of any written fee agreements related to the Underlying Action."  Pl.'s Opp'n 20.  In his response to Interrogatory No. 15, he stated that "his fee agreement with [Fulbright] for the Underlying Litigation was that he would be invoiced at the prior year's rates."  Id., Ex. 5, Pl.'s Resps. to Def.'s Interrogs. 11.  If that or any other agreement was in fact reduced to writing, it must be produced.

Because this is a diversity case in which District of Columbia law applies,[6] that law also governs the scope of the privilege and waiver.  See Fed. R. Evid. 501; Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d 130, 134 (D.D.C. 2009) .  The attorney-client privilege is "the oldest of the established privileges for confidential communications."  Jones v. United States, 828 A.2d 169, 174 (D.C. 2003).  Its primary purpose is "to encourage full and frank communication between attorneys and their clients."  Id.; accord Wender v. United Servs. Auto. Ass'n, 434 A.2d 1372, 1374 (D.C. 1981) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  "But the privilege should be narrowly construed to protect only the purposes which it serves."  Adams v. Franklin, 924 A.2d 993, 998 (D.C. 2007).

The party asserting the privilege bears the burden of proving that the communications at issue are protected.  Jones, 828 A.2d at 174.  Under District of Columbia law, the attorney-client privilege applies only as follows:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Id. at 175 (quoting 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961)); accord Adams, 924 A.2d at 999.

The privilege is not absolute, and may be waived where its application "'would not serve the purpose for which it is intended.'"  See Adams, 924 A.2d at 999 (quoting Wender, 434 A.2d at 1374).  A client may impliedly waive the privilege by "plac[ing] otherwise privileged matters

---

[6] The Court assumes that District of Columbia law governs the parties' contract dispute, as they have cited District of Columbia contract law, see Pl.'s Opp'n 2; Def.'s Reply 3, and nothing in the record indicates that any other state's law should apply.

in controversy." See Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co., 129 F.3d 143, 151 (D.C. Cir. 1997) (applying D.C. law); see also Berliner, 662 F. Supp. 2d at 135 ("[C]lients are deemed to waive the privilege when they place privileged information at issue through some affirmative act for their own benefit.") (applying D.C. law).

B.       Feld's Assertion of the Privilege

In this case, it is Feld's burden to prove that the privilege applies to any items that he refuses to disclose on privilege grounds.  He asserts that FFIC's Requests Nos. 2-5, 12-13, and 24, and Interrogatories Nos. 4 and 14, ask for privileged documents and communications.  Pl.'s Opp'n 13.  To date, however, Feld has not produced a privilege log or otherwise identified specific materials (or even categories of materials) as privileged.  See Def.'s Reply in Supp. of Mot. to Compel [ECF 16] ("Def.'s Reply") 8 n.6.  As a result, the Court is unable at this time to determine the applicability of the privilege on an item-by-item basis.

It is worth noting, however, that in responding to FFIC's discovery requests pursuant to the Court's decision today, Feld must "clearly show" that each assertedly privileged item meets all the elements of the attorney-client privilege. See Jones, 828 A.2d at 175.  The privilege protects only communications between a client and his attorney that relate to legal advice and are intended to be confidential at the time they are made.  See Adams, 924 A.2d at 999-1000; In re Pub. Defender Serv., 831 A.2d 890, 902 (D.C. 2003); see also In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (attorney-to-client communications shielded only if based on confidential information from client).  And it does not generally protect communications relating solely to the payment and amount of attorneys' fees.  See Berliner, 662 F. Supp. 2d at 134; see also, e.g., Montgomery Cnty. v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client

13

privilege does not shield fee arrangements."); Hickey v. Scott, 738 F. Supp. 2d 55, 67 (D.D.C. 2010) (citing Berliner); 1 McCormick on Evidence § 90 (7th ed. 2013).

So, for example, the following categories of communications are not shielded from disclosure by the privilege: communications from Fulbright to Feld about FFIC's position that did not rest on any confidential information obtained from Feld, see In re Sealed Case, 737 F.2d at 99; information on rates relayed by Feld to Fulbright with the intent that it then be conveyed to FFIC, see Adams, 924 A.2d at 999-1000; and communications regarding "fees, costs and invoices," including any fee arrangement between Feld and Fulbright, that do not reveal litigation strategy or other confidences about the Underlying Action,[7] see Berliner, 662 F. Supp. 2d at 134; Def.'s Mot. to Compel, Exs. 6-7, Def.'s Reqs. for Produc. & Interrogs.

Feld will be required to produce any relevant, non-privileged materials responsive to FFIC's discovery requests (as limited by this opinion) and a privilege log describing in detail any materials withheld on the basis of privilege.

C.     Implied Waiver

FFIC argues that, even if some of the materials it seeks to discover might otherwise be privileged, Feld has waived the privilege by putting these materials "at issue" in this litigation. See Def.'s Mot. to Compel 13-17.  There are two categories of communications that FFIC claims have been put at issue: first, communications going to the reasonableness and necessity of the fees and expenses incurred by Feld in the Underlying Action; and second, communications going to the parties' agreement – or lack thereof – as to the hourly rates to be paid by FFIC under the

---

[7] Of course, to the extent that Feld has waived the privilege as to billing communications that do reveal otherwise confidential information, those communications, too, must be produced.

Policy.

          1.      Reasonableness and necessity

Regarding the first category of communications, the law is clear: by claiming indemnification of his defense costs from FFIC, Feld waived the attorney-client privilege as to the invoices itemizing the fees and expenses incurred, all supporting documentation, and "any other communications going to the reasonableness of the amount of the [fees and expenses]." See Ideal, 129 F.3d at 152.  Although only about $200,000 of the $2.4 million sought by Feld in this action is disputed based on the reasonableness and necessity of the charges, the reasonableness of any portion of the total amount claimed can only be determined by examining the entirety of the billing records pertaining to Feld's defense in the Underlying Action.  See id. at 151.  Hence, Feld has put at issue the reasonableness of the total amount submitted for reimbursement, and FFIC is entitled to discover otherwise privileged information necessary to defend against Feld's claim for the disputed $200,000.  See id.

Feld does not seriously contest that the reasonableness and necessity of his defense costs in the Underlying Action are at issue in this litigation.  Nor can he, as he states that one of the "only three issues in this case" is "whether the defense costs incurred by Mr. Feld in the Underlying Action were reasonable and necessary."  See Pl.'s Opp'n 2.  Feld's position appears to be that he has already given FFIC "all the information [it] needs to test the reasonableness of any incurred fee or expense."  Id. at 4.  Feld has told FFIC that he already reproduced the invoices from the Underlying Action, that the invoices "incorporate time sheets" and that "[t]here are no separate time sheets," and that the backup documentation for "most of the invoices" was submitted to FFIC but can be "reproduced at FFIC's cost."  Id. at 10; id., Ex. 7, Letter from

Matthew Kirtland to Thomas Schaufelberger 3 (Mar. 22, 2013).

It is unclear to the Court just what documents FFIC is seeking that it does not already have.  FFIC asserts, correctly, that the presumption under the Federal Rules of Civil Procedure is that the responding party will bear the expense of complying with discovery requests.  See Simms v. Ctr. for Corr. Health & Policy Studies, 272 F.R.D. 36, 40 (D.D.C. 2011) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)).  Hence, Feld must produce, at his own expense, any time sheets (if they exist and contain information not included in the invoices) or backup documentation pertinent to the invoices submitted that he has not already produced.  To the extent that FFIC is asking for documents that it already has in its possession, it may be unnecessary for Feld to reproduce those documents.  Cf. Simms, 272 F.R.D. at 40 (court has discretion to shift cost of production to requesting party to protect responding party from "undue burden").  On this record, however, the Court cannot say that it would be unnecessary or an undue burden on Feld to produce the time sheets, itemized entries, and other backup documentation associated with the invoices in the Underlying Action.  The parties should work between themselves to ensure that FFIC has at least one copy of all such materials.

        2.      Rates

Whether Feld has placed "at issue" privileged communications about the hourly rates to be paid by FFIC is a closer question.  FFIC contends that, by filing a complaint in this action and alleging that the parties never agreed upon the hourly rates proposed by FFIC, Feld waived the privilege as to any communications regarding rates "by making [them] relevant to the case."  See Def.'s Mot. to Compel 15; see also Compl. ¶¶ 61, 72.  Feld counters that "advice is not put at issue merely because it may be relevant" and stresses that he is not seeking to use any attorney-

client communications affirmatively in this case.  See Pl.'s Opp'n 14-17.

Courts differ in their approaches to the subject of implied or "at issue" waiver.  It most often arises in legal malpractice actions, or suits by an attorney against a former client for legal fees, or where advice of counsel is raised as a defense.  See Minebea Co. v. Papst, 355 F. Supp. 2d 518, 522 (D.D.C. 2005).  Because none of those situations is presented here, it is not obvious that there has been a waiver by Feld.  A frequently cited case on the subject of determining implied waiver is Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975).  See United States v. Exxon Corp., 94 F.R.D. 246, 248 (D.D.C. 1981) (calling Hearn "perhaps the most exhaustive treatment of this subject").  The court in Hearn identified three factors that would support a finding of implied waiver:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Hearn, 68 F.R.D. at 581.  The D.C. Court of Appeals has cited to Hearn and stated that fairness is an important consideration in the assessment of waiver.  See Wender, 434 A.2d at 1374; see also Adams, 924 A.2d at 999.  But that court has not addressed implied or "at issue" waiver in a context like that here, where the party asserting the privilege does not rely on advice of counsel or any particular attorney-client communication to support its claim or defense.

To support its position, FFIC cites the D.C. Circuit's decision in Ideal, as well as several cases from this district.  In Ideal, the court held that by seeking indemnification of attorney's fees and offering billing statements to support its claim, the plaintiff had waived the privilege as to communications going to the reasonableness of the fee award.  See 129 F.3d at 152.  Similarly, in

17

Potomac Electric Power Co. v. California Union Insurance Co., 136 F.R.D. 1, 4 (D.D.C. 1990),

the court held that by suing its insurer to recover costs incurred in underlying criminal and civil

proceedings, the plaintiff had placed at issue its own and its counsel's conduct in the underlying

proceedings, and that the defendants could inspect documents pertaining to the investigation,

defense, and settlement of those proceedings, "regardless of whether [the documents] contain[ed]

attorney work product or communications normally protected by the attorney-client privilege."

Although both Ideal and Potomac support the conclusion the Court has already reached – that by

seeking indemnification of his defense costs in the Underlying Action Feld has placed at issue

Fulbright's handling of his defense in that action – neither case sheds light directly on the

question whether Feld has also placed at issue attorney-client communications regarding hourly

rates, even though Feld need not rely on such communications to prove his claim.[8]

     Of greater relevance to this question are United States v. Exxon Corp. and Minebea Co.

v. Papst.  In Exxon, the defendant had raised the affirmative defense of good faith reliance on the

government's regulations and representations.  See 94 F.R.D. at 247, 249.  The court, after

discussing Hearn v. Rhay and other cases adopting its reasoning, concluded that the defendant

had waived its attorney-client privilege by raising the good faith reliance defense, stating: "These

defenses do not solely relate to the 'objective' representations of [the government] but directly

concern Exxon's subjective interpretation and understanding of those representations; i.e.,

---

[8] FFIC appears to suggest that waiver as to all communications going to the reasonableness of fees extends to communications about hourly rates.  See Def.'s Reply 4-5 & n.3.  Although that might be true in a case where the reasonableness of hourly rates is disputed based on the nature of the work done, that is not so here, where the issue is not the reasonableness of the hourly rates charged by Fulbright attorneys but whether there was an agreement as to the hourly rates FFIC would pay.

Exxon's corporate state of mind." Id. at 248-49.  In Minebea, a case involving a dispute between

a patent licensee and licensor, the licensee claimed that it justifiably relied on the representations

of the licensor and its counsel regarding legal matters such as the scope of the patents and the

licensee's rights under the licenses.  See 355 F. Supp. 2d at 524.  The licensee asserted the

privilege with respect to the advice it had received from its own attorneys on these issues,

arguing that its complaint had placed at issue only its reliance on the representations of the

licensor and its counsel.  Id. at 523-24.  The court rejected the licensee's argument and concluded

that it had waived the privilege by putting its reliance in issue.  Id. at 524 ("By putting reliance on

Papst's statements in issue, Minebea has opened the door to exploration by Papst of what other

persons, documents and information Minebea relied on other than Papst." (discussing Hearn and

Exxon)).

       Here, it is not Feld's reliance, but his knowledge and understanding of FFIC's

representations, that have been placed squarely at issue.  After he sought coverage under the

Policy, Feld was apprised of FFIC's position that it would pay his legal fees "at an agreed hourly

rate."  See 8/11/09 Kirk Letter 10.  FFIC thereafter repeatedly informed Fulbright of its position

that it would agree to pay hourly rates not to exceed $250/hour for partners, $225/hour for

associates, and $100/hour for paralegals.  See Compl. ¶¶ 61-62, 64.  Although Feld claims that

"at no point were any such rates ever agreed to by Fulbright or Feld," he nevertheless proceeded

to employ Fulbright as his counsel and to seek reimbursement of his defense costs from FFIC.

See id. ¶¶ 61, 67.

       Feld's claim for the large majority of the damages sought in this action – $2.2 million of

the $2.4 million total – is based on his assertion that he never agreed to any hourly rates.  FFIC is

thus correct that Feld has placed at issue his understanding of FFIC's position on rates and the circumstances under which he could continue to employ Fulbright as his counsel, and whether he expressly or impliedly agreed to or acquiesced in the rates set by FFIC.  See Def.'s Mot. to Compel 5.  In the ordinary case, a party's injecting such matters into a lawsuit would not necessarily place attorney-client communications at issue.  But here, aside from FFIC's August 2009 letter to Feld in response to his initial claim for coverage, all information exchanged between Feld and FFIC on the subject of hourly rates appears to have gone through Fulbright. By filing this action and alleging that neither he nor Fulbright agreed to rates, see Compl. ¶¶ 61-62, Feld has placed his attorney-client communications at issue.  FFIC is entitled to explore what Fulbright told Feld about FFIC's position on rates, how Feld interpreted FFIC's position and his rights under the Policy, and how Feld directed his attorneys to act.  See Minebea, 355 F. Supp. 2d at 524.  Significantly, FFIC is entitled to information about Feld's role, if any, in the proposed budget submitted to FFIC by Caroline Mew, which reflected FFIC's proposed billing rates, or in Fulbright's letter stating that FFIC was "currently paying only a fraction of the Firm's hourly rates with the remaining amounts being charged to Mr. Feld notwithstanding the insurance he ha[d] purchased from FFIC."  See 12/8/09 Joiner Letter 2; 10/28/09 Mew Letter.[9]  Denying FFIC access to such information, which is "vital to [its] defense," would be inequitable under these circumstances.  See Hearn, 68 F.R.D. at 581.

Feld insists that the relevance of legal advice does not put it "in issue" and that the privilege is waived only if the content of the advice given is "integral" to the outcome of the

---

[9] As FFIC notes, a possible reading of the December 2009 letter is that Fulbright was objecting not to the rate caps but to attempts by FFIC to restrict the type of work done or the number of hours worked.  See Def.'s Reply 3 & n.1 (citing 12/8/09 Joiner Letter 2-3).

claims in the case.  See Pl.'s Opp'n 14.  He cites a case from this district rejecting the Hearn v. Rhay approach and discussing other cases that have done the same.  See Trs. of Elec. Workers Local No. 26 Pension Trust Fund v. Trs. Fund Advisors, Inc., 266 F.R.D. 1, 11-13 (D.D.C. 2010); see also, e.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.").  This Court agrees that relevance cannot be the sole benchmark for determining implied waiver.  But it is not just relevance that counsels a finding of implied waiver here.  Although Feld has not, as in other implied waiver cases, disclosed the content of a particular attorney-client communication, see Rhone-Poulenc, 32 F.3d at 863, he is essentially claiming that no communications of a particular type – those demonstrating that he and/or Fulbright did in fact agree to FFIC's proposed rates – ever took place.  In this way, Feld has made certain attorney-client communications integral to the outcome of his claims.  Fairness requires that the privilege give way to FFIC's right to access the communications at issue to defend against Feld's claims.  See Wender, 434 A.2d at 1374; see also Ideal, 129 F.3d at 151 ("'Implied waiver deals with an abuse of a privilege . . . .  Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process.'" (omission in original) (quoting In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982))).

        In short, Feld has brought a lawsuit that, at its core, is premised on the absence of any agreement as to rates on his part or Fulbright's.  He may not affirmatively disclaim agreement and

yet use the privilege to shield materials that might show otherwise.  Hence, the Court concludes

that Feld has waived the attorney-client privilege with respect to communications that relate to

Feld's or Fulbright's understanding of and actions regarding FFIC's position on hourly rates, or

that otherwise bear on the parties' agreement or lack thereof.[10]

### CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part FFIC's motion to

compel discovery.  A separate order accompanies this memorandum opinion.


_____
/s/
JOHN D.  BATES
United States District Judge

Date: <u>July 3, 2013</u>

---

[10] Although Feld has also raised objections to FFIC's requests and interrogatories based on the work product doctrine, <u>see</u> Pl.'s Opp'n 13, that doctrine is distinct from the attorney-client privilege and is not the subject of FFIC's motion to compel or this opinion.  Accordingly, Feld should provide specific support for any claims of work product protection in his privilege log.