# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH FELD,

     Plaintiff,

       v.

FIREMAN'S FUND INSURANCE
COMPANY,

     Defendant.

Civil Action No. 12-1789 (JDB)

## MEMORANDUM OPINION

This action arises out of defendant Fireman's Fund Insurance Company's ("FFIC") refusal to fully reimburse plaintiff Kenneth Feld for more than $4.5 million in legal fees and costs that Feld claims to have incurred in a separate, protracted legal battle in this district. Before the Court is [24] FFIC's motion to compel discovery—FFIC's second motion to compel since discovery began in this case approximately one year ago. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

The factual background of this case was summarized at length in the Court's previous opinion. See July 3, 2013 Mem. Op. ("July 2013 Op.") [ECF No. 19] at 1-6. The Court will not repeat all of those factual and procedural details again here, except as necessary for the resolution of this motion. The origin of this dispute lies with another case from this district: Feld v. Feld, Civil Action No. 08-cv-1557-ESH. That case was a highly contentious personal injury suit brought by Karen Feld (a non-party to the proceedings in this Court) against her older brother, Kenneth Feld (the plaintiff in this action). That litigation—culminating in a lengthy and

highly publicized trial, followed by an appeal to the D.C. Circuit—not only generated much ill will amongst the Feld family, it also generated a legal bill for Kenneth Feld in excess of $4.5 million. Feld's insurer (the defendant in this action, FFIC) reimbursed Feld for a little over $2 million of those fees. Feld filed this lawsuit to recover the rest, arguing that FFIC breached their insurance contracts and the implied covenant of good faith and fair dealing by refusing to cover the rest of his legal fees from the personal injury litigation ("the underlying litigation"). The primary dispute between the parties is focused on two issues: (1) whether the legal fees generated by Feld's counsel in the underlying litigation were "reasonable," and (2) whether the parties came to an agreement regarding the hourly rates to be charged by Feld's counsel.

About six months into discovery in this case, the parties notified the Court that they had reached an impasse on a discovery dispute. FFIC had requested production of certain documents generated during the underlying litigation. Feld refused, primarily on the grounds that such documents were protected from disclosure by the attorney-client privilege. Feld also made objections based on relevance and burdensomeness. FFIC then filed its first motion to compel, arguing that Feld waived the attorney-client privilege by filing this lawsuit seeking reimbursement of legal fees, because, by doing so, Feld put his attorney-client communications from the underlying litigation "at issue."

The Court granted the motion in part and denied it in part—but in doing so, granted nearly all of the relief that FFIC was seeking, and held that Feld had waived the attorney-client privilege with respect to most of the documents in question by filing a lawsuit in which his attorney-client communications were necessarily "at issue." The Court also narrowed some of FFIC's document requests (in response to Feld's relevance and burdensomeness objections), and

ordered Feld to produce a privilege log to describe the content of any outstanding documents and any remaining privilege objections that survived the Court's waiver holding.

Feld produced a privilege log, but not much else: he produced almost none of the documents FFIC thought it had won by prevailing on its motion to compel. Instead, Feld claimed that these documents were covered by the attorney work-product privilege. In response, FFIC filed a second motion to compel, seeking disclosure of more or less the same documents it had sought the first time around, arguing that the documents in question are not attorney work product, and that, even if they were, any work-product protection has been waived for the same reasons that the attorney-client privilege has been waived.

## LEGAL STANDARD

The attorney work-product doctrine, "recognized by the Supreme Court in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'" <u>United States v. Williams Cos., Inc.</u>, 562 F.3d 387, 393 (D.C. Cir. 2009) (quoting <u>Hickman</u>, 329 U.S. at 510). The work-product protection extends to "written materials that lawyers prepare 'in anticipation of litigation,' ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials." <u>Id.</u> (internal quotation marks omitted). The D.C. Circuit "appl[ies] the 'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." <u>United States v. Deloitte LLP</u>, 610 F.3d 129, 137 (D.C. Cir. 2010) (internal quotation marks omitted). Originally a creature of the common law, Federal Civil Rule 26(b)(3) now "codifies the work-product doctrine." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 398 (1981). Accordingly, "[u]nlike the attorney client privilege, the

work product privilege is governed, even in diversity cases, by a uniform federal standard." United Coal Cos. v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988). That standard provides for "two levels of protection, one for 'fact' work product which is subject to discovery upon a showing of need and hardship," and "a more absolute protection for 'opinion' work product," which "is subject to discovery only upon a showing of extraordinary justification." Hager v. Bluefield Reg'l Med. Ctr., Inc., 170 F.R.D. 70, 76 (D.D.C. 1997).

But the protection "derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." United States v. Nobles, 422 U.S. 225, 239 (1975). For example, the work-product privilege is "waived when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege." United States v. W. Elec. Co., 132 F.R.D. 1, 3 (D.D.C. 1990). As a general matter, the work-product doctrine will not be recognized when doing so "is not required to maintain a healthy adversary system." In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982).

## DISCUSSION

FFIC moves to compel discovery with respect to two of the five categories of documents on Feld's privilege log: the so-called "yellow" and "purple" categories. According to Feld, the purple documents are not implicated by the Court's previous decision finding a waiver of the attorney-client privilege. The yellow documents are "potentially" covered by that previous holding, but Feld continues to withhold them on other grounds. For all of the documents in question, the parties' dispute boils down to the same two questions: (1) whether the documents are covered by the attorney work-product privilege, and (2) if so, whether that privilege has been waived. The Court holds that all of the documents in question qualify as attorney work product,

but that this privilege has been partially waived as a result of Feld's decision to put attorney work product "at issue" in this litigation.

## I.     The Documents In Question Qualify As Attorney Work Product.

FFIC argues that none of the yellow and purple documents qualify as attorney work product. It tries two approaches. First, FFIC takes issue with Feld's privilege log entries, calling them "generalized statements" that "fail to provide [FFIC] with any basis to assess [Feld's] claims of protection." Def.'s Mot. to Compel ("MTC") [ECF No. 24] at 11. Next, FFIC points to a small handful of specific entries that it claims fail to meet the legal standard for work-product protection, in order to demonstrate that Feld has been overly aggressive in his privilege assertions. Id. at 9-10. Both arguments fail.

### A.  Feld's Privilege Log Is Sufficiently Detailed.

FFIC is correct that "the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." In re Subpoena Duces Tecum Issued to CFTC, 439 F.3d 740, 750 (D.C. Cir. 2006). Frequently, the proponent carries this burden by means of a privilege log. See Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring the proponent of a privilege to "expressly make the claim," and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). This is what Feld has done here, as directed by the Court's July 3, 2013 Order.[1]

---

[1]  FFIC asserts that Feld "chooses to defy this Court's Order," MTC at 6, by failing to produce all of the documents FFIC is seeking. This Court's Order called for the production of "all non-privileged materials responsive to" FFIC's document requests and "a privilege log describing any materials withheld on grounds of attorney-client privilege or work product protection." July 3, 2013 Order [ECF No. 20]. The parties disagree about which documents qualify as "non-privileged," but Feld's decision to claim work-product protection over these

Feld's privilege log meets the requirements of the Federal Rules. It is a lengthy spreadsheet listing every document, in chronological order, over which Feld claims privilege. The log includes the following information about each document: date, title (typically, the subject line of an email), type of document (that is, email, attachment, or standalone computer file), document identification number, from, to, and carbon copy recipients, the privilege type (that is, attorney-client privilege, attorney work product, or both), any additional notes, and the "privilege basis." The "privilege basis" column includes detailed descriptions of each individual document. A few representative examples:

> Email between Fulbright attorneys attaching draft letter to C. Kirk, dated 10/27/09, addressing FFIC questions re: potential conflicts of interest and splitting defense costs, and seeking attorney impressions and conclusions re: same. WP in anticipation of potential litigation with FFIC.

Privilege Log, Ex. 1 to MTC ("Priv. Log") [ECF No. 24-1] at 3 (Document #23).

> Email from Fulbright attorneys to client attaching for review draft litigation budget requested by FFIC, describing process used to create same and rates FFIC 'willing to pay.' WP in anticipation of potential litigation with FFIC.

Id. at 7 (Document #56).

> Email from Fulbright attorneys to client re: status of Underlying Action, including discovery conference with Magistrate Judge Kay, settlement proposal, depositions, and remaining fact discovery, attaching 1/22/11 letter to Judge Kay and 1/24/11 order re: discovery issues. WP re: Underlying Action.

Id. at 22 (Document #195).

These are specific, individualized descriptions. The Court is hard-pressed to see how Feld could have provided more detail about these documents "without revealing information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A)(ii). FFIC's fervent and frequent objections to Feld's privilege log entries sound as if they were describing a different privilege

_____

documents and produce a privilege log describing the nature of his claims is consistent with the Court's order.

log.  See, e.g., MTC at 6 ("Plaintiff includes only a brief, generalized description of each document being withheld."); id. ("Plaintiff . . . has not provided Defendant with enough information to assess and properly respond to his work product allegations."); id. at 7 ("Plaintiff has not provided the Defendant, or this Court, with enough information to meet Plaintiff's burden . . . ."); id. at 11 ("[T]he only 'specific support' Plaintiff offers to support his assertion of work product protection is the repeated use of boilerplate language.").

What is more, Feld's privilege log offers a clear and helpful color-coding scheme: yellow documents are responsive to FFIC's discovery requests, and fall within the Court's previous order finding a partial waiver of the attorney-client privilege; green documents are non-privileged attachments; purple documents are responsive to FFIC's discovery requests but (according to Feld) do not fall within the Court's previous waiver order; light blue documents have already been produced; and red documents are duplicates of documents that have already been produced. Priv. Log at 1.  All of this information is very helpful to FFIC and to the Court, and may even go beyond Feld's obligations under the Federal Rules.  In short, FFIC's objections to the level of detail in Feld's privilege log are not just unpersuasive, they are puzzling.

The entries also provide substantive support for Feld's assertion that the documents "can fairly be said to have been prepared or obtained because of the prospect of litigation."  Deloitte, 610 F.3d at 137.  A critical fact in resolving this dispute is that, although Feld and FFIC had the same interest in defeating Karen Feld's claims in the underlying litigation, they also had an adverse and antagonistic relationship with respect to the issue of attorney's fees from the outset. In its initial coverage letter in August 2009, FFIC told Feld (1) that he was on the hook for the full amount of any adverse judgment (Karen Feld sought over $100 million in damages), (2) that FFIC would partially reimburse Feld's defense costs only "at an agreed hourly rate," and (3) that

FFIC's offer was "subject to a full and complete reservation of all of FFIC's rights to deny coverage, in whole or in part," under the terms of their insurance agreement. Compl. ¶¶ 52-56. This quickly led to a contentious series of telephone calls and letters between Feld's counsel and FFIC, in which the parties vigorously disputed FFIC's reimbursement obligations. Ultimately, Feld's counsel told FFIC that they "may presume that the Firm and Mr. Feld contest any and all amounts unpaid by FFIC on any bills presented by the Firm to FFIC for payment unless FFIC is notified otherwise." Id. ¶ 65; see also id. ("FFIC is currently paying only a fraction of the Firm's hourly rates with the remaining amounts being charged to Mr. Feld notwithstanding the insurance he has purchased from FFIC."). Just as FFIC had done, Feld's counsel confirmed that "[t]his letter does not constitute a waiver of any of Mr. Feld's rights under the FFIC policy or otherwise." Id.

This correspondence makes clear that FFIC's argument—that the documents were created not for litigation, but solely for business purposes and "because of defense counsel's relationship with the insurer," MTC at 10—does not tell the whole story. At least as to the issue of insurance coverage, Feld is correct that the parties "were adverse from the very beginning," Pl.'s Opp'n at 15. This much is demonstrated by the tense letter-writing campaign, which had all the hallmarks of a pre-litigation dispute, including thinly veiled threats to sue in the form of the "reservations of rights" clauses at the end of each letter. The D.C. Circuit has held that "a document can contain work-product material even if it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation." Deloitte, 610 F.3d at 138. That holding controls here. Feld's privilege log, when considered in the surrounding context of the parties' insurance-coverage dispute, provides enough information for the Court to be confident

that the withheld documents were prepared with an eye toward the possibility of litigation. Hence, they are attorney work product.[2]

**B. FFIC's Example Documents Do Not Change The Analysis.**

In its attempt to lead the Court to the opposite conclusion, FFIC has elected to take issue with a small handful of the several hundred documents on Feld's privilege log, and to explain why FFIC believes those documents are not protected by the work-product doctrine. The Court disagrees—both with the propriety of FFIC's tactical decision to address only a few cherry-picked documents, and with the substantive arguments it offers for not recognizing the privilege.

FFIC seeks an order from this Court compelling production of several hundred documents over which Feld claims work-product protection. FFIC claims that <u>none</u> of these documents are protected by the work-product privilege. But to support that argument, it simply offers a small handful of allegedly problematic examples, and asks the Court to draw the inference that, because a few documents are not covered by the work-product privilege, none of them are. <u>See</u> MTC at 10 ("Plaintiff's failure to satisfy the 'because of' test is easily illustrated by examining a few of the over 400 documents listed on the Second Amended Privilege Log."). But FFIC has not provided any basis to infer that its exemplars are representative of the whole. Instead, it appears that FFIC simply proffered documents on the privilege log that come closest to the protected-unprotected line, in an attempt to convince the Court that the entire log was improper. <u>See</u> Pl.'s Opp'n at 15 ("Tellingly, none of FFIC's selected 'example' documents [are] dated after the trial in the Underlying Litigation.").

---

[2] For similar reasons, FFIC's argument that Feld's privilege log "includes entries dating back to August 2009, well before Plaintiff's Complaint was filed" falls flat: it is a basic principle of the work-product privilege that its protections extend to documents created not only during litigation, but also "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).

In any event, even if this were a defensible tactic, it would still fail here: none of FFIC's examples are sufficiently troublesome to call into question Feld's assertion of work-product protection over those documents—let alone over the rest of the documents on the privilege log. Documents 37 and 42 both relate to the preparation of a litigation budget, the final version of which was ultimately sent to FFIC. While it may be the rare litigation budget that is prepared, drafted, and discussed by lawyers "in anticipation of litigation," Feld has a plausible basis here to assert the work-product privilege: the ongoing dispute over whether FFIC would reimburse Feld for his litigation expenses. These documents were created in late October 2009, well after the parties had exchanged testy letters regarding their respective positions on the requirements of Feld's insurance policies. For this reason, the Court is willing to accept Feld's claim that an "[e]mail between Fulbright attorneys discussing preparation of draft litigation budget" qualifies as attorney work product. The same goes for documents 126, 127, 129, and 130, which all relate to draft "Status Update" letters that Feld and his attorneys prepared for FFIC to keep it apprised of the underlying litigation. While drafts and internal discussions of a status update for an insurance company may, in the typical case, fail to qualify as attorney work product, it takes little imagination to see how such documents could be carefully crafted "in anticipation of litigation" in this instance, during an ongoing dispute involving millions of dollars between an insurer and an insured.[3]

To be sure, as the proponent of the privilege, Feld bears the burden of demonstrating that each document is properly withheld. But with Feld having produced a detailed privilege log, which carefully describes why each individual document is protected by the work-product

---

[3] The Court has primarily analyzed FFIC's arguments through the lens of documents that Feld claims to be work product in anticipation of litigation with FFIC, rather than those that are allegedly work product in anticipation of the underlying litigation. This is because FFIC directs nearly all of its arguments at such documents.

doctrine, FFIC cannot obtain an order from this Court compelling discovery absent a much stronger showing[4] than it has made—at least not on the basis that <u>none</u> of the documents on the privilege log are actually attorney work product.[5]

## II.    The Attorney Work-Product Privilege Has Been Partially Waived.

FFIC offers an alternative argument: any work-product protection that may have once protected these documents has been waived.  Specifically, Feld waived the privilege, says FFIC, by putting attorney work product "at issue" in bringing a lawsuit seeking reimbursement for attorney's fees.  Just a few months ago, the Court granted (in large part) FFIC's first motion to compel on a very similar theory, but with respect to the attorney-client privilege.  Helpful case law (let alone binding authority from the D.C. Circuit or the Supreme Court) addressing waiver of the attorney work-product privilege is rare, and the parties' briefs provided little assistance— FFIC analyzed an incorrect legal standard, and Feld never addressed the question of what standard the Court should apply.  The Court finds that the better view is that Feld has waived the work-product protection as to many of the documents in question.  The Court comes to this conclusion for similar—but not identical—reasons as its earlier conclusion that Feld waived the attorney-client privilege with respect to the underlying litigation.

### A.  Legal Standard For "At-Issue" Waiver Of Work-Product Protection

"[T]he work-product doctrine is not absolute.  Like other qualified privileges, it may be waived."  <u>United States v. Nobles</u>, 422 U.S. 225, 239 (1975).  But the question here is <u>when</u>,

---

[4] For similar reasons, FFIC has not shown a "substantial need" that would overcome the work-product privilege with respect to any individual document, or category of documents.

[5] FFIC appears to argue in a footnote that because the underlying litigation has concluded, the work-product privilege no longer applies to documents generated by that litigation.  FFIC cites no authority for this argument.  In fact, "attorney work-product immunity survives beyond the particular litigation giving rise to it."  <u>Clark-Cowlitz Joint Operating Agency v. FERC</u>, 798 F.2d 499, 503 (D.C. Cir. 1986); <u>see also</u> <u>FTC v. Grolier Inc.</u>, 462 U.S. 19, 26 (1983) (noting unanimity of the courts of appeals to have considered the question).

exactly, is the work-product privilege waived? D.C. Circuit authority suggests that a court should find waiver when recognizing the privilege "is not required to maintain a healthy adversary system." Sealed Case, 676 F.2d at 818. Unsurprisingly, that general statement alone provides limited assistance for resolving this motion. The same is true for the (relatively more robust) case law analyzing the question of when work-product protection is waived based on disclosure to a third party. See, e.g. United States v. Williams Cos., Inc., 562 F.3d 387, 394 (D.C. Cir. 2009) (applying a three-part test to determine when disclosure to a third party waives the work-product privilege).

FFIC initially offers a theory that is attractive in its simplicity, suggesting that the standards for waiver of the work-product doctrine and the attorney-client privilege are identical. FFIC argues that "[t]here is no reason that this Court's analysis of work product waiver should differ from its previous attorney-client privilege ruling." Def.'s Reply [ECF No. 27] at 2-3. If only it were that easy. But unfortunately for FFIC, this approach is squarely foreclosed by a long line of D.C. Circuit precedent that appears nowhere in the parties' briefing: it is well-settled that it is more difficult to waive the attorney work-product privilege than it is to waive the attorney-client privilege. See, e.g., Sealed Case, 676 F.2d at 814 n.83 (rejecting the theory "that the work product privilege would be waived for all material as to which the attorney-client privilege had also been waived"); Permian Corp. v. United States, 665 F.2d 1214, 1219 (D.C. Cir. 1981) (contrasting "the strict standard of waiver in the attorney-client privilege context" with "the more liberal standard applicable to the work product privilege"); United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("We do not consider the strict standard of waiver in the attorney-client privilege context . . . to be appropriate for work product cases."); cf. Deloitte, 610 F.3d at 139 ("While voluntary disclosure waives the attorney-client privilege, it does not necessarily

12

waive work product protection.").  In light of this case law, the Court cannot grant FFIC's motion to compel based solely on the Court's prior holding that the attorney-client privilege had been waived.

Left without much guidance about what it takes to waive the attorney work-product privilege when placing attorney work product "at issue," the Court must turn to general principles regarding waiver of the work-product protection.  The D.C. Circuit has suggested that the work-product privilege is waived when the proponent takes action that would "undercut the adversary process." Deloitte, 610 F.3d at 329.  Put differently, because "the work-product doctrine is designed to promote the adversary system by safeguarding the fruits of an attorney's trial preparation," Williams, 562 F.3d at 394, assertions of work-product protection that are inconsistent with a fair adversarial process need not be protected.  See, e.g., Sealed Case, 676 F.2d at 809 (the work-product doctrine is about protecting "the vitality of the adversary system rather than simply seeking to preserve confidentiality").

Based on these general principles, the Court finds that recognizing the attorney work-product privilege "is not required to maintain a healthy adversary system," Sealed Case, 676 F.2d at 818, when the proponent of the privilege has placed prior attorney work product squarely "at issue" in the case.  Indeed, allowing the privilege to shield documents at the heart of the proponent's case would undermine the adversary system, and would let the work-product privilege "be used as a tool for manipulation of the truth-seeking process." Id. at 807.  Hence, the Court finds that Feld has waived the work-product privilege with respect to materials in the underlying litigation by placing attorney work-product at issue, by bringing this indemnification lawsuit seeking reimbursement of attorney's fees.

The vast majority of federal courts to have considered this question have come to the

same (or a similar) conclusion.  See, e.g., In re EchoStar Comm'cns Corp., 448 F.3d 1294, 1302-03 (Fed. Cir. 2006) (finding partial waiver of work-product privilege because litigant placed work product at issue by raising an "advice of counsel" defense); Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002) ("[T]his Court holds that Pamida impliedly waived the work product privilege by bringing the indemnification action in which the information allegedly protected is crucial and unavailable by other means."); Trs. of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 16 (D.D.C. 2010) (denying motion to compel, but expressing the view that the D.C. Circuit would likely find work-product waiver "when the contents of work-product are the premise of a claim or defense"); Simmons, Inc. v. Bombardier, Inc., 221 F.R.D. 4, 9-10 (D.D.C. 2004) (finding waiver of attorney work-product privilege with respect to documents critical to resolving "advice of counsel" defense); Hager v. Bluefield Reg'l Med. Ctr., Inc., 170 F.R.D. 70, 78 (D.D.C. 1997) ("[W]hen the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product.'") (internal citation omitted); Weiss v. Mentor Corp., No. 92-0203, 1992 WL 235889, at *3 (D.D.C. July 10, 1992) (finding work-product waiver because the proponent of the privilege "expressed an intent to raise issues concerning" an audit performed by their attorneys); United States v. W. Elec. Co., 132 F.R.D. 1, 3 (D.D.C. 1990) (finding work-product waiver because the proponent "placed its counsel's actions at issue").

Moreover, this is not the first time the doctrine of at-issue waiver of the work-product privilege has been considered in the context of a lawsuit seeking indemnification for attorney's fees.  The weight of authority supports finding waiver in this context.  See, e.g., Grand Elec., LLC v. Int'l Bhd. of Elec. Workers Local 265,  No. 09-3160, 2011 WL 6740408, at *4 (D. Neb.

Dec. 22, 2011) (finding that "neither the attorney-client privilege nor the work-product privilege may be invoked" by a party that "ma[de] a request for attorney's fees," because they "placed the[ir] billing statement[s] at issue"); Liberty Mut. Ins. Co. v. Tedford, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (finding, in a dispute over defense costs arising out of an insurance contract, that the "protections afforded by the work product doctrine are waived" because "a party put[] in issue an attorney's opinion or work product"); Abbott Labs. v. Alpha Therapeutic Corp., 200 F.R.D. 401, 410 (N.D. Ill. 2001) ("Alpha has waived attorney work product protection with respect to the document categories listed in Abbott's request by placing the subject matter of the documents at issue in this subsequent indemnification suit."); Charlotte Motor Speedway, Inc. v. Int'l Ins. Co., 125 F.R.D. 127, 131 (M.D.N.C. 1989) (recognizing a "narrow exception to Rule 26(b)(3)" in an indemnification suit between an insurer and an insured, for discovery requests in which "the information for which protection is sought is directly in issue").

For these reasons, the Court is confident that placing attorney work product "at issue" justifies a finding of waiver. At this point in the analysis, the Court is tempted to proceed to the next logical questions: whether Feld has placed attorney work product at issue in this case, and if so, what is the precise scope of the resulting waiver. But before the Court can turn to those questions, it must acknowledge a surprising concession from FFIC's motion to compel. FFIC— the party seeking discovery—suggests that even if the proponent of the work-product privilege waives the protections of the doctrine, the documents in question remain protected unless the party seeking discovery also "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." See Fed. R. Civ. P. 26(b)(3)(A)(ii); see also MTC at 18 ("For work product to be discoverable

under an at issue waiver, the party seeking the otherwise protected material must still meet the general standard for work product discovery of Rule 26(b)(3)(A).").

The Court is hesitant to take this concession too seriously, given that it is wholly inconsistent with FFIC's suggestions elsewhere in their briefing that the standard for work-product waiver is identical to the standard for attorney-client privilege waiver. But even if it were clear that FFIC intended to "concede" the applicability of an incorrect legal standard, the Court will not allow FFIC to do so. And that is what grafting the "substantial need" exception from Rule 26(b)(3) onto the separate legal question of waiver would do. Rule 26(b)(3) offers an exception to the general principle that, "[o]rdinarily, a party may not discover" attorney work product. See AT&T, 642 F.2d at 1302 ("[T]he work product privilege is a qualified privilege which may be overridden by a showing of substantial need by the requesting party."). But the "substantial need" exception has no applicability where the attorney work-product privilege has already been waived. Put differently, waiver is a threshold question. The "substantial need" inquiry provides an escape hatch for a party seeking discovery of otherwise-protected attorney work product. But if the work-product protection has been waived, the moving party is entitled to discovery of such work product, even without showing substantial need.

This is not just a more logical reading of the Federal Rules, it is also implied by a close reading of the D.C. Circuit and the Supreme Court work-product waiver cases. For example, in United States v. Nobles, the Supreme Court found that a litigant had waived the work-product privilege by putting forth testimony from an investigator. 422 U.S. at 239. Under FFIC's understanding of the rule, the Supreme Court would then—even after finding waiver—have asked whether the opposing party could show a "substantial need" for the protected information. But it did no such thing; it simply held that the information was discoverable. See id.; see also

Sealed Case, 676 F.2d at 811 ("Since the government has not yet attempted to make the extraordinary showing of necessity that would be required to remove the work product privilege . . . , the eight documents need not be produced unless the exception or implied waiver doctrines apply.") (emphasis added). The D.C. Circuit, and other courts in this district, have generally followed suit.[6] See, e.g., Sealed Case, 676 F.2d at 825; Western Electric, 132 F.R.D. at 3.

The Court has some sympathy for Feld in this circumstance, who seems to have briefed the issue on the assumption that the key question before the Court, in light of FFIC's "concession," was whether FFIC could show "substantial need." See Pl.'s Opp'n at 20 n.4 ("FFIC engages in a long analysis of waiver of the work product doctrine but concedes that this analysis duplicate[s] the substantial need analysis. It is, therefore, not addressed herein."). But Feld could have argued in the alternative and, ultimately, a litigant adopts an incorrect interpretation of the law (or ignores a central issue before the court) at his own peril—even when that incorrect interpretation is favorable to his position, and adopted by his opponent.

---

[6] One case from this district supports the proposition that the party seeking discovery must also satisfy the "substantial need" test before obtaining documents otherwise protected by the work-product doctrine, even when the privilege has been waived. See The Navajo Nation v. Peabody Holding Co., 255 F.R.D. 37, 49 n.6 (D.D.C. 2009) ("To find a waiver of work product protection through issue-injection, the party seeking the privileged material must also show that: (1) the material sought is relevant to the instant litigation; (2) the party has a substantial need for the materials to prepare its case; and (3) the party cannot, without undue hardship, obtain their substantial equivalent by other means."). The court in Navajo Nation held that the privilege was not waived at all, however, so any discussion of how to analyze a privilege claim once waiver has been found was dictum. In any event, the Court finds the Navajo Nation formulation unpersuasive. Any discovery must be relevant, and protected fact work product can always be obtained on a showing of substantial need, so under this version of the standard, the doctrine of at-issue waiver would have no independent significance, at least with respect to fact work product.

**B. Feld Waived The Work-Product Privilege By Putting Attorney Work Product At Issue.**

By filing a lawsuit seeking indemnification for attorney's fees, Feld necessarily placed the work of his attorneys directly at issue. He has done so with respect to two key issues in the case: (1) "the reasonableness and necessity of the fees and expenses incurred by Feld in the Underlying Action," and (2) "the parties' agreement—or lack thereof—as to the hourly rates to be paid by FFIC" under the relevant insurance policies. July 2013 Op. at 14-15. In other words, this case cannot be resolved without determining whether the legal fees generated by Feld were reasonable, or without determining whether the parties came to an agreement regarding hourly rates. The Court held as much just a few months ago. For this reason, to the extent Feld has withheld documents relevant to these issues based on the attorney work-product privilege that would otherwise have been responsive to FFIC's discovery requests, they must be produced.

**C. The Scope Of The Waiver**

The Court "retains broad discretion in deciding the appropriate scope of a waiver." In re United Mine Workers of Am. Emp. Benefit Plans Litig., 159 F.R.D. 307, 309 (D.D.C. 1994) (citing Pierce v. Underwood, 487 U.S. 552 (1988)). In an effort to forestall any further disputes between the parties, the Court will offer some additional guidance and clarity as to the scope of its two waiver holdings.

Not all privilege claims regarding the underlying litigation have been waived: only those that would shield communications and documents bearing on the central issues in this case have been waived. Specifically, both the attorney-client privilege and the attorney work-product privilege have been waived with respect to documents relating to one or both of the following two issues: (1) the reasonableness of the legal fees generated by Feld in the underlying litigation, or (2) the nature of the agreement, if any, between the parties regarding hourly rates.

Feld has tried to draw a distinction between "yellow" and "purple" documents. As he concedes, the yellow documents were all subject to the Court's previous waiver order. Thus, a significant number of them will be subject to this waiver order and will need to be produced.[7] Feld claims, on the other hand, that all of the purple documents escaped the prior waiver order. But Feld should not adopt an overly-cramped interpretation of either of the Court's waiver opinions. To clarify: <u>all</u> attorney-client and work-product protection from the underlying litigation has been waived for documents relating either to reasonableness of fees expended or to any potential agreement regarding hourly rates. As an example, the Court expects that many of the documents relating to the so-called "fee-splitting" issue (that is, the process by which Fulbright may or may not have allocated defense costs between Feld and the corporate entity Feld Entertainment, Inc.) will be relevant to the reasonableness of the total amount of fees for which Feld seeks reimbursement. Such documents are no longer privileged, and should be produced if responsive to FFIC's discovery requests. Similarly, Feld cannot withhold documents on the basis of his unilateral assessment that certain categories of documents "are of limited evidentiary value." Pl.'s Opp'n at 20. In light of the waiver found here, FFIC is permitted to take discovery of documents that have limited evidentiary value. Finally, the fact that the parties' dispute over the reasonableness of the fees charged "has been waived by FFIC, except with respect to a few costs," <u>id.</u>, is irrelevant for these purposes—documents relating to reasonableness are not privileged, even if they have the potential to affect only approximately $200,000 of the over two million dollars at issue here.

---

[7] It is possible that some of these documents can escape production on other grounds. For example, some of them may be composed solely of work product prepared in anticipation of <u>this</u> litigation, rather than in anticipation of the underlying litigation. Such documents remain privileged, as discussed in further detail below.

The parties made passing references in their briefing to the distinction between "fact" work product (typically discoverable after a showing of "substantial need") and "opinion" work product (rarely discoverable under any circumstances). The Court's waiver holding extends both to fact work product and opinion work product. To be sure, it seems much less likely that an attorney's mental impressions or legal conclusions will bear on the critical issues in this case: the reasonableness of fees and the presence of an agreement on hourly rates. But to the extent they do, they are subject to waiver for all the reasons explained above. Courts that have analyzed at-issue waiver of the work-product privilege have generally (though not uniformly) taken this view. See, e.g., Hager, 170 F.R.D. at 78 ("[T]he near absolute protection given by the courts to opinion work product must give way when a litigant puts his attorney's opinions into direct issue . . . ."); Cincinnati Ins. Co. v. Zurich Ins. Co., 198 F.R.D. 81, 86 (W.D.N.C. 2000) ("Cincinnati has placed Mr. Sumner's testimony squarely at issue in this case and has therefore impliedly waived work product protection for both the facts and opinions that underlie his testimony."); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 933 (N.D. Cal. 1976) ("[A]n attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling."); but cf. Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994) ("[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege.").

Finally, a significant number of the documents on Feld's privilege log actually reflect attorney work product generated in anticipation of this litigation, rather than in anticipation of the underlying litigation. See, e.g., Pl.'s Opp'n at 14 (explaining that 36 documents on the privilege log were created "after Feld won the trial in the Underlying Litigation and concern Feld's present efforts, on threat of litigation . . . , to obtain full reimbursement of the hourly rates

incurred by his attorneys as well as the $200,000 denied by FFIC for other reasons"). This is most likely true for documents created after the underlying litigation was over—though is not necessarily limited to those documents. FFIC's brief comes close to conceding that it is not entitled to discovery of these documents. See Def.'s Reply at 17 n.5. To be clear: both waiver holdings apply only to documents and communications generated in connection with the underlying personal injury litigation for which Feld seeks reimbursement of attorney's fees. The reason is simple: Feld has not put the work of his attorneys on this litigation at issue in this case, so any privilege claims over those documents and communications remain valid—even assuming such documents were otherwise within the scope of permissible discovery, and responsive to FFIC's discovery requests. To the extent individual documents (or portions thereof) were generated in anticipation of both cases, producing documents in redacted form may be required. Cf. Deloitte, 610 F.3d at 138 ("[A] document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation.").

*    *    *

It will be the responsibility of the parties—and Feld, in the first instance—to comply with these directives in good faith. See, e.g., Hildebrandt v. Vilsack, 287 F.R.D. 88, 94 (D.D.C. 2012) ("Courts may impose a range of sanctions, including dismissal, where a party fails to comply with a discovery order."). Accordingly, the Court instructs Feld's counsel to review the yellow and purple documents again, and to do so with an open mind, in good faith. For each document, Feld's counsel should ask the following questions: (1) whether the document was prepared "because of" the underlying litigation with Karen Feld, and (2) whether it relates either to the reasonableness of fees or to a potential agreement regarding hourly rates. If the answer to both

questions is "yes," and it is otherwise responsive to FFIC's discovery requests, then it must be produced, even if it was once protected as attorney work product. Based on a review of Feld's privilege log, the Court expects that a large number of documents that have been withheld will need to be produced, including (but not necessarily limited to) virtually all of the documents that are marked as work product in anticipation of the underlying litigation. Inevitably, judgment calls will be made, and the parties may not agree—at least initially—with respect to every single document. But such disputes are typically and appropriately resolved between the parties, proceeding in good faith. The Court is confident that the parties will work together to implement this order faithfully and promptly. Further intervention from this Court should not be necessary.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part FFIC's motion to compel. A separate order accompanies this memorandum opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: <u>December 23, 2013</u>