UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KENNETH FELD,**

    Plaintiff,

    v.

**FIREMAN'S FUND INSURANCE COMPANY,**

    Defendant.

Civil Action No. 12-1789 (JDB)

## MEMORANDUM OPINION

Although the circus—the Feld's family business—has closed its doors, the show goes on in the courts. In September 2016, this Court granted partial summary judgment to Fireman's Fund Insurance Company in a long-running dispute over the insurer's obligation to pay Kenneth Feld's $4.5 million legal fees and costs resulting from a separate lawsuit. The Court determined that the insurer was only obligated to pay approximately $2 million. Now, Feld asks for reconsideration of that decision. The Court will deny Feld's motion.

## BACKGROUND

The facts of this case are summarized at length in two of this Court's prior opinions, and are therefore only briefly reiterated here. See Feld v. Fireman's Fund Ins. Co., 206 F. Supp. 3d 378, 380–81 (D.D.C. 2016); Feld v. Fireman's Fund Ins. Co., 292 F.R.D. 129, 132–34 (D.D.C. 2013). Kenneth Feld was sued by his sister, Karen Feld (who is not a party to this action), for personal injury claims, which resulted in a protracted, high-profile, legal battle between the two siblings. See Feld v. Feld, 688 F.3d 779 (D.C. Cir. 2012). During that suit, Kenneth had a personal liability insurance policy under Prestige Home Premier (the "Policy"), issued by Fireman's Fund

1

Insurance Company ("FFIC").  The Policy required FFIC to defend Feld against covered claims.
See Feld, 292 F.R.D. at 132.

Toward the beginning of the litigation between Feld and his sister ("the underlying action"), Feld notified FFIC of the suit.  Id.  FFIC agreed to defend him, subject to a reservation of rights: some of the claims in the underlying action alleged intentional conduct, which was not covered by the policy, but Feld denied those allegations and said he acted in self-defense.  Id. at 132–33.  The coverage letter from FFIC to Feld states:

> Subject to [FFIC's] reservation of rights, you may elect to choose your own counsel to defend you in this matter; otherwise, we can appoint counsel for you.  FFIC agrees to pay, at an agreed hourly rate, the reasonable and necessary legal fees and Court costs incurred by counsel[.]

Coverage Letter, Ex. 4 to Kirtland Decl. [ECF No. 72-4] at 11.  Feld hired Fulbright & Jaworski L.L.P. to represent him in the underlying action.  That extended and bitter litigation left Feld with a legal bill of $4.5 million.  FFIC reimbursed him for just over $2 million.  Feld, 292 F.R.D. at 133–34.  Feld then filed this suit to recover the remainder of the legal fees and costs, claiming that FFIC breached the Policy by refusing to pay the full amount.  See generally Compl. [ECF No. 1].

After nearly three years of discovery and legal fighting in this action, both Feld and FFIC filed motions for summary judgment.  See Def's Mot. for Summ. J. [ECF No. 68]; Pl.'s Mot. for Summ. J. [ECF No. 69].  The core of their dispute is whether Feld (through his attorneys at Fulbright) agreed to an hourly rate with FFIC.  In its summary judgment motion, FFIC claimed that they reached an agreement to pay a certain rate and the $2 million that it paid satisfies all that it owes pursuant to that agreement.  Feld, on the other hand, asserted that there was no rate agreement and therefore FFIC owed the full legal bill.  In a September 12, 2016 Memorandum Opinion, this Court concluded that Fulbright reached an agreement with FFIC regarding their hourly rates, and therefore FFIC was only obligated to pay approximately $2 million.  See Feld,

206 F. Supp. 3d at 384–90.  The Court therefore granted summary judgment to FFIC on this claim. Id. at 393.  The Court also granted summary judgment to FFIC on Feld's claim for a breach of the implied duty of good faith and fair dealing.  Id. at 392–93.  The Court denied summary judgment as to both parties on a claim regarding approximately $200,000 in other legal costs.  Id. at 390–92.

Now, Feld has filed a motion for reconsideration of the Court's September 2016 ruling under Federal Rule of Civil Procedure 54(b).  See Pl.'s Mot. for Recons. [ECF No. 93]. Specifically, he challenges the Court's determination that Fulbright and FFIC agreed to hourly rates for attorney's fees.  He does not contest the Court's prior decision on his other claims.  He argues that the Court improperly resolved disputed factual issues on summary judgment, rather than allowing them to proceed to a jury.  He also asserts that the Court misunderstood or failed to consider relevant evidence that showed that the facts regarding whether a contract was formed are contested.  He maintains that he cannot be bound by any agreement his attorneys made with FFIC. Finally, he argues that even if there was an agreement between Fulbright and FFIC, it was not enforceable due to a lack of consideration.  All of his arguments, however, rest on a misunderstanding of both the law and what the Court actually decided, and he fails to present new facts or law that would merit reconsideration.  The Court will therefore deny Feld's motion for reconsideration.

## LEGAL STANDARD

A court may revise its own interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015) (Rule 54(b) is the proper vehicle for reconsideration of an order "while a case is still ongoing in district court").  Under Rule 54(b), a court may grant relief "as justice requires."  Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217,

227 (D.C. Cir. 2011) (internal quotation marks omitted).  Such instances include where a court has "patently misunderstood a party, . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."  Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (alteration in original) (internal quotation marks omitted).  Whether to reconsider an order is at a court's discretion, and a court need not consider arguments that it has already rejected on the merits.  See Capitol Sprinkler Inspection, 630 F.3d at 225, 227.  The party seeking reconsideration has the burden of demonstrating that injustice "would flow from a denial of reconsideration." Hamilton v. Geithner, 616 F. Supp. 2d 49, 54 (D.D.C. 2009) (internal quotation marks omitted).

## ANALYSIS

Feld presents three reasons why, in his view, the Court's prior opinion requires reconsideration: (1) the Court misapplied the summary judgment standard by resolving disputed factual issues and drawing inferences in favor of the moving party; (2) the Court incorrectly determined that he was bound by an agreement between Fulbright and FFIC; and (3) the Court misapplied the law regarding whether FFIC was required to allow Feld to select his own counsel in the underlying action.  The Court takes each of these in turn.

### I. Whether A Contract Was Formed

Feld's primary argument is that the Court improperly applied the standard for summary judgment when determining whether a contract was formed between FFIC and Fulbright regarding attorney's fees.  Pl.'s Mot. for Recons. at 3–6.  But Feld's arguments on this point rely on a misunderstanding of factual disputes versus legal conclusions based on uncontested facts.

As this Court explained in its prior decision, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine

4

whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, a court must view the facts in the light most favorable to the non-movant and draw all justifiable inferences in his favor. Id. at 255.

Separate from the standard that this Court applies when determining whether summary judgment is appropriate is the substantive legal standard for whether Fulbright (representing Kenneth Feld) and FFIC formed a contract regarding the hourly rate for attorney's fees. D.C. law, which governs the question whether Fulbright and FFIC reached an agreement on the rates, applies "an objective standard" on the question of contract formation.[1] See Vector Realty Grp., Inc. v. 711 Fourteenth St., Inc., 659 A.2d 230, 233 n.7 (D.C. 1994); Northland Capital Corp. v. Silver, 735 F.2d 1421, 1426–27 n.7 (D.C. Cir. 1984) ("The principle that objective manifestation of intent is controlling in contract formation is very well established."). An enforceable agreement requires "both agreement as to all material terms[] and intention of the parties to be bound." Duk Hea Oh v. Nat'l Capital Revitalization Corp., 7 A.3d 997, 1013 (D.C. 2010) (internal quotation marks omitted). The parties' intention to form a contract can be deduced from written or oral statements and from the parties' actions. Duffy v. Duffy, 881 A.2d 630, 636–37 (D.C. 2005). And, most important for present purposes, "[t]he determination whether an enforceable contract exists," whether a written or oral contract, "is a question of law." Rosenthal v. Nat'l Produce Co., 573 A.2d 365, 369 n.9 (D.C. 1990).

Feld repeatedly asserts that because the facts contained in each party's statement of undisputed facts are susceptible to multiple interpretations as to whether a contract was formed,

---

[1] This Court has held that D.C. law applies to this question because there was no conflict between D.C. and Maryland law. See Feld, 206 F. Supp. 3d at 384 n.1 (quoting Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP, 68 A.3d 697, 714 (D.C. 2013) ("The absence of true conflict compels the application of District of Columbia law by default.")). No party asks for reconsideration of this issue here. Regardless, Maryland law regarding contract formation also embraces the objective standard. See Nat'l Fire Ins. Co. of Hartford v. Tongue, Brooks & Co., 486 A.2d 212, 216 (Md. 1985).

5

then there must be disputed issues of fact that therefore need to be resolved by a jury. This argument confuses the concepts of factual determinations and legal conclusions.

The Court previously identified the undisputed evidence regarding whether a contract was formed. The "[m]ost relevant" evidence is a "series of communications between FFIC Technical Director Charles Kirk and Fulbright attorney Caroline Mew." Feld, 206 F. Supp. 3d at 385. As that earlier opinion explains in more detail, Kirk and Mew held a phone call on September 16, 2009, where Kirk communicated that FFIC could only pay a rate of $250/hour for partners, $200/hour for associates, and $95/hour for paralegals. Id. The two spoke again on October 4, when Mew asked if FFIC could increase its rates, and Kirk responded that FFIC could increase its rates for associates and paralegals to $225/hour and $100/hour, respectively. Id. Kirk then sent Mew an email summarizing that conversation, noting "we [FFIC] will agree to pay a rate not to exceed $250/hour for partners; $225/hour for associates; and $100/hour for paralegals." Id. at 386. Then, on October 28, Mew provided a budget report to FFIC using these same rates. Id.

Based on this evidence (and more, as discussed in depth in the September 12, 2016 opinion) the Court determined that, as a matter of law, Fulbright and FFIC had formed an enforceable contract regarding the hourly rates that FFIC was obligated to pay. Feld, however, now contends that the Court's determination required resolving disputed matters of fact, and therefore was inappropriate at the summary judgment stage (although he, too, previously argued that there were no genuine issues of material fact and that he was entitled to summary judgment).

But the fact that Feld wishes that the Court had drawn different legal conclusions from the evidence at hand does not mean that there were genuine factual disputes. He cites various cases holding that "the existence and terms of an oral contract, when in dispute, are for the trier of facts to determine." Globe Home Improvement Co. v. McCarty, 105 A.2d 216, 218 (Md. 1954). For

example, he cites Rosenthal v. National Produce Co. for the proposition that summary judgment is inappropriate when the determination whether a contract was formed relies on an "assessment of the credibility of witnesses." Rosenthal, 573 A.2d at 369 n.9; see also Arnold Developer, Inc. v. Collins, 567 A.2d 949, 952 (Md. 1990) (similar). He also cites an opinion from the Fourth Circuit explaining that while interpreting the content of a contract is normally a question of law, if the term is ambiguous and therefore a court looks to extrinsic evidence, the court should not grant summary judgment if the "extrinsic evidence . . . leaves genuine issues of fact" in dispute. Wash. Metro. Transit Auth. v. Potomac Inv. Prop., Inc., 476 F.3d 231, 235 (4th Cir. 2007).

Feld skips over the crucial first step in his argument: he has not demonstrated that there are any genuine issues of material fact. Instead, he has identified other facts that are not relevant at all, or that are relevant but do not contradict the facts mentioned above. He incorrectly asserts that the Court did not consider each of these facts. The Court will not respond to every one of Feld's assertions; a handful will suffice to show the failings in his argument.

For example, Feld points to a statement by Mew in her deposition where she implies that she did not believe that she and Kirk had reached an agreement regarding rates based on their phone calls and emails. See Pl.'s Mot. for Recons. at 6–7. But nothing in Mew's deposition testimony actually contests the undisputed account of Kirk and Mew's phone calls, emails, and (later) the budget they exchanged. It just provides additional information about her subjective beliefs regarding those events. The Court considered this evidence in its prior opinion, and concluded there—as it does here—that Mew's subjective beliefs are not what governs whether a contract was formed. See Feld, 206 F. Supp. 3d at 385–86. In reaching that conclusion, the Court did not weigh her credibility as a witness. Rather, it simply disregarded her subjective statements

7

because they are not relevant to the objective interpretation that a court is required to undertake. See Northland Capital Corp., 735 F.2d at 1426–27 n.7.

As another example, Feld points out that the October 4, 2009 email from Kirk to Mew summarizing their conversation reiterates the rates they discussed, but does not describe that agreement as a contract. See Pl.'s Mot. for Recons. at 10. Fair enough. But again, Feld does not dispute the content of the October 4 email—he instead asks the Court to reach certain legal conclusions based on his characterization of what that email meant. That question—whether the undisputed text of an email demonstrates agreement as to material terms and an intent to be bound, and hence a contract—is a question of law, not of fact. See Rosenthal, 573 A.2d 369 n.9.

Feld also points to sentences in the prior opinion acknowledging that certain pieces of evidence, if viewed in isolation, could support multiple legal interpretations—although the opinion concluded that when the evidence is viewed as a whole, an enforceable contract was undoubtedly formed. Feld takes these statements out of context to argue that the opinion itself acknowledged that the facts are in dispute. This once again confuses legal disputes (which can be resolved on summary judgment) with factual ones (which cannot be) and, moreover, misrepresents the Court's prior opinion. Feld references the Court's statement that an exchange of invoices between Fulbright and FFIC is a "mixed bag." Fulbright presented FFIC with an invoice billing for its attorneys at their normal rates (approximately twice the rates purportedly agreed to by FFIC), and FFIC responded with a check for a much lower amount, reflecting the agreed-upon rates. Feld, 206 F. Supp. 3d at 388. While this Court's prior opinion did state that the "import of this dealing is a mixed bag," it continued in the next paragraph to explain that regardless of the invoice, "there was an intent to be bound on rates as of October 28, at the latest." Id. The Court's conclusion was

clear and was based on undisputed evidence, and did not indicate that there were any genuine disputes as to material facts.

None of Feld's other arguments along this line are any more successful. For example, he notes that the Court acknowledges that Kirk's October 4 email, without more, left "room for a different interpretation" as to whether Kirk and Mew reached a contract in their phone conversations. See id. at 386. But once again, the Court explained in the next few paragraphs that, when Kirk's email is viewed in conjunction with the other evidence, "[t]he undisputed facts establish that at the time of Feld's budget submission—at the latest—the parties had agreed to the reduced rates." Id. at 387. Again, Feld takes individual sentences from the Court's prior opinion out of context. Nothing in the Court's prior opinion noted any genuine issues of material fact, or resolved any factual disputes.

Feld's contention that the Court improperly resolved factual disputes at summary judgment is in reality a belief that the Court drew the wrong legal conclusions from the undisputed facts. These are arguments that this Court has "already rejected on the merits" and therefore are not appropriate for a motion to reconsider. See Capitol Sprinkler Inspection, 630 F.3d at 227. Feld may raise them to the court of appeals, but he cannot have a second bite at the apple in this Court. Feld's arguments that cherry pick certain language from the Court's prior opinion and present it as evidence that there were disputed facts are even less persuasive. His dispute is with the linguistic choices the Court made in explaining its prior opinion, not with the substance of that decision. Such arguments do not convince the Court that he is entitled to the relief he seeks.

## II. Whether Feld Was Bound By His Counsel's Agreement

In one paragraph, Feld argues that he cannot be bound by an agreement between Kirk and Mew because he was not party to any such agreement. In support, he argues that Kirk "did not

himself understand that in dealing with Fulbright he was dealing with Mr. Feld." Pl.'s Mot. for Recons. at 15. The Court rejected this argument in its prior opinion. There, the Court explained "the general rule that a client is bound by his lawyer's acts." Feld, 206 F. Supp. 3d at 389. Whether or not Kirk believed that his agreement bound Feld is beside the point. See id. (citing Piedmont Resolution, LLC v. Johnston, Rivlin & Foley, 999 F. Supp. 34, 39 (D.D.C. 1998) ("[A]n undisclosed principal may sue and be sued on a contract made by his agent." (internal quotation marks omitted)). Feld's very brief argument in the instant motion does not cite any authority to the contrary (or indeed, any authority at all). The Court therefore sees no reason to reconsider its decision on this point.

### III.  Choice of Counsel

Feld argues that no enforceable contract could have been formed between Fulbright and FFIC because there was no consideration, given that FFIC was obligated to pay for Feld's defense under the Policy. The Court considered and rejected this argument as well in its September 2016 opinion, id., and therefore need not consider it again, see Capitol Sprinkler Inspection, 630 F.3d at 227. As the Court explained, FFIC did not consider itself bound to pay for Feld's defense in the underlying lawsuit (because it believed that Karen Feld's claims were not covered by the Policy), and therefore its decision to do so is sufficient consideration. Feld, 206 F. Supp. 3d at 389 (quoting Coverage Letter, Ex. 4 to Kirtland Decl. at 9). Moreover, "courts are strongly cautioned against relying on this 'preexisting duty rule' in formulating their decisions since the rule has fallen out of favor in modern times." Id. (quoting Johnson v. Seacor Marine Corp., 404 F.3d 871, 875 (5th Cir. 2005)). And, the prior opinion explains, FFIC did provide consideration by allowing Feld to choose his own counsel, rather than choose one from a limited list of FFIC-approved attorneys or simply be assigned an attorney by FFIC. Id.

It is that last justification that Feld attacks in his motion for reconsideration. He argues that FFIC was obligated to allow Feld to select his own independent counsel because of the conflict of interest created by FFIC's belief that Karen's claims were not covered by the Policy. Pl.'s Mot. for Recons. at 18. But again, the Court considered and rejected this very argument in its prior opinion. See Feld, 206 F. Supp. 3d at 389 n.2. As the Court has previously explained, when an insurer asserts a reservation of rights, that does not necessarily create a conflict of interest. See Driggs Corp. v. Pa. Mfrs. Ass'n Ins. Co., No. 98-2140, 1999 WL 305044, at *6 (4th Cir. May 14, 1999) (per curiam).

Feld relies on Brohawn v. Transamerica Ins. Co., 347 A.2d 842, 850–51 (Md. 1975), for the proposition that an actual conflict of interest is created when an insurer defends an insured against claims for both unintentional tort (which is covered) and intentional tort (which is not). That case does acknowledge that the parties' interests can diverge in such an instance: while both the insurer and the insured would prefer that the insured is found not liable at all, if the insured is found liable, then the insurer would prefer that it be based on intentional conduct, while the insured would prefer the opposite. Id. As this Court explained in its prior opinion, however, that common conflict-of-interest scenario is not applicable to the litigation between the Felds. See Feld, 206 F. Supp. 3d at 389 n.2. If Feld had prevailed on his self-defense claim, then neither Feld nor FFIC would owe anything to Karen; if Karen had defeated Feld's self-defense claim, then Feld would owe Karen, but FFIC would not. Although Kenneth would be less happy with the latter outcome than with the former while FFIC might be indifferent between the two, there is no outcome where FFIC and Feld would have interests that are "diametrically opposed" such that "the insurer must allow the insured to choose independent counsel." See Roussos v. Allstate Ins. Co., 655 A.2d 40, 44 (Md. Ct. Spec. App. 1995). Unlike the parties in Brohawn, then, there is no situation where

11

Feld would prefer to win on one theory of liability and lose on another, while FFIC would prefer the opposite. There was no actual conflict of interest between FFIC and Feld that required FFIC to provide him with an independent attorney, and therefore FFIC's willingness to do so was consideration for agreement on rates.

Feld's primary argument to the contrary is to point to Kirk's deposition testimony that Feld believes shows that Kirk understood FFIC to be obligated to pay for the reasonable costs of an independent attorney. See Pl.'s Mot. for Recons. at 19–20. But while Kirk's views regarding FFIC's contractual obligations might be relevant to determining whether there was consideration if the Court had relied on the "preexisting duty rule," they are not relevant to whether FFIC had a conflict of interest that would legally require it to pay for Feld's independent attorney. That is the argument the Court rejected in its September 2016 decision, and that Feld repeats here. Once again, Feld's disagreements with the Court's conclusions in its prior opinion—without pointing to any new law or facts—do not convince the Court that reconsideration is appropriate.

## CONCLUSION

Feld's arguments for reconsideration all rely on mischaracterizations of the Court's prior opinion, or on arguments that the Court previously considered and rejected on the merits. Hence, none of Feld's contentions convince the Court that reconsideration is appropriate. The Court will therefore deny Feld's motion for reconsideration. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: June 26, 2017