# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH FELD** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **FIREMAN'S FUND INSURANCE** ) | **Civil Action No. 12-1789 (JDB)** |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## POST-TRIAL BRIEF IN SUPPORT OF PLAINTIFF KENNETH FELD'S
## <u>REASONABLE ATTORNEYS' FEES AND EXPENSES</u>

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    Kenneth Feld is Entitled to $2,224,121.61 in Attorneys' Fees in the Shiva
      Litigation ..................................................................................................................... 2

      A.    The Shiva Litigation was Complex and Required the Time and Labor
            Incurred, and the Skill and Experience of Retained Counsel ................................ 5

            1.    The Time Spent on the Shiva Litigation Has Already Been
                  Determined by FFIC to Be Reasonable ...................................................... 5

            2.    The Shiva Litigation was Complex Federal Litigation ............................... 7

      B.    Counsel Would Likely Have Been Fully Engaged in Similarly
            Compensated Work ............................................................................................. 12

      C.    The Firm's Rates are Customary of the Rates Charged in Washington,
            D.C. for Similar Legal Services .......................................................................... 13

      D.    Karen Feld Sought $110 Million Dollars and Counsel for Kenneth Feld
            Obtained a Take-Nothing Defense Verdict ......................................................... 20

      E.    Kenneth Feld is a Long-Term Firm Client .......................................................... 21

      F.    Counsel Ranged in Experience and Ability and were Staffed to Tasks
            Appropriately ..................................................................................................... 22

II.   Kenneth Feld is Entitled to Prejudgment Interest on the Unpaid Attorneys' Fees in
      the Shiva Litigation .................................................................................................. 23

      A.    Maryland Law Governs the Application of Prejudgment Interest ........................ 23

      B.    Kenneth Feld is Entitled to Prejudgment Interest as a Matter of Right ............... 23

III.  Kenneth Feld is Entitled to an Award of $2,482,895.59 in Attorneys' Fees and
      Expenses in this Rate Agreement Litigation .............................................................. 25

      A.    Under Maryland Law, Kenneth Feld is Entitled to Reasonable Attorneys'
            Fees and Expenses in this Litigation ................................................................... 25

B.     Kenneth Feld is Entitled to an Award of $2,367,112.03 in Attorneys' Fees ........ 28

     1.     The Rate Agreement Litigation was Complex and Required the Time and Labor Incurred, and the Skill and Experience of Retained Counsel .................................................................................. 28

     2.     Counsel Would Likely Have Been Fully Engaged in Similarly Compensated Work ...................................................................... 37

     3.     The Firm's Rates are Customary of the Rates Charged in Washington, D.C. for Similar Legal Services............................ 38

     4.     Kenneth Feld Sought Substantial Damages and Obtained a Jury Verdict in his Favor .................................................. 42

     5.     Kenneth Feld is a Long-Term Firm Client ................................ 43

     6.     Counsel Ranged in Experience and Ability and Were Staffed to Tasks Appropriately.................................................. 43

C.     Kenneth Feld is Entitled to $115,783.56 in Litigation Expenses ........................ 44

CONCLUSION..................................................................................................... 45

## TABLE OF AUTHORITIES

*Adolph Coors, Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93 (D.D.C. 2005). ............................... 19

*Alt. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460 (Md. 2004) ............................ 4

*Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 2016 WL 1321205 (Md. Ct. Spec. App. Apr. 5, 2016), *aff'd*, 454 Md. 475, 164 A.3d 978 (Md. 2017) .................................................................................................................... 29, 43

*Baker's Exp., LLC v. Arrowpoint Capital Corp.*, 2012 WL 4370265 (D. Md. Sept. 20, 2012) ... 27

*Bankers & Shippers Ins. Co. v. Electro Enterprises, Inc.*, 415 A.2d 278 (1980) ........................ 26

*Bd. of Trustees, Cmty. College of Baltimore Cnty. v. Patient First Corp.,* 120 A.3d 124 (Md. 2015) ........................................................................................................................................ 4

*Beck v. Sullivan*, 2013 WL 5531389 (D. Md. Oct. 4, 2013) ........................................................ 45

*Beckman Instruments Inc. v. LKB Produkter AB*, No. R-85-3133, 1990 WL 10072480 (D. Md. Aug. 9, 1990), *aff'd*, 930 F.2d 37 (Fed. Cir. 1991) .................................................................. 45

*Bird Realty Ltd. P'ship v. Jiffy Lube Int'l*, No. 12-cv-1104, 2013 WL 4525266 (D. Md. Aug. 23, 2013) ................................................................................................................................ 4, 21, 43

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 13

*Brethren Mut. Ins. Co. v. Filsinger,* 458 A.2d 880 (Md. Ct. Spec. App. 1983) .......................... 24

*Buxton v. Buxton,* 770 A.2d 152 (Md. 2001) .............................................................................. 24

*Camenisch v. Martens,* No. Civ. A. 93–0322 (AER), 1995 WL 461928 (D.D.C. July 7, 1995) ... 3

*Canopius US Ins., Inc. v. RN'G Const., Inc.*, 2016 WL 4076091 (Md. Ct. Spec. App. Aug. 1, 2016) ...................................................................................................................................... 26

*City of Milwaukee v. Cement Div., Nat. Gypsum Co.,* 515 U.S. 189 (1995) ............................... 23

*Cohen v. Am. Home Assur. Co.*, 255 Md. 334 (Md. 1969). .......................................................... 27

*Collier v. MD-Individual Practice Ass'n, Inc.*, 607 A.2d 537 (Md. 1992) ................................... 26

*Comm. Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167 (Md. Ct. Spec. App. 1997).4, 26, 44

*DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019) .......................................................................... 14, 17

*Elec. Transaction Sys. Corp. v. Prodigy Partners Ltd., Inc.*, No. CIV. A. 08-1610 (RWR), 2009 WL 3273920 (D.D.C. Oct. 9, 2009) ........................................................................................ 19

*Embassy of Fed. Rep. of Nigeria v. Ugquonye,* 945 F. Supp. 2d 81 (D.D.C. 2016)..................... 23

*George's Radio Television Co., Inc. v. Ins. Co. of North Am.*, 536 F. Supp. 681 (D. Md. 1982) 25

*Gov. Emps. Ins. Co. v. Taylor*, 310 A.2d 49 (Md. 1973)............................................................ 26

*Griaznov v. J-K Tech., LLC,* Civil Action No. ELH-16-2522, 2019 WL 2142529 (D. Md. May 16, 2019) ........................................................................................................................ 4, 13

*Harris v. Mickel,* 15 F.3d 428 (5th Cir. 1994) ........................................................................... 23

*Hartford Mut. Ins. Co. v. Jacobson*, 536 A.2d 120, 121-22 (Md. Ct. Spec. App. 1988) *rev'd on other grounds*, 610 A.2d 286 (Md. 1992)............................................................................ 27

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ................................................................................. 6

*Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 102 A.3d 387 (Conn. App. Ct. 2014) ................................................................................................................................. 43

*Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274 (D.C. Cir. 1993) ........................... 13

*Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)............................................................... 23

*Mazengo v. Mzengi*, No. CIV.A. 07-756, 2007 WL 8026882 (D.D.C. Dec. 20, 2007)................. 3

*McLaughlin v. Huhra Homes, LLC,* 2019 WL 2763144 (Md. Ct. Spec. App. July 1, 2019) ......... 4

*Merrick v. Mercantile-Safe Deposit & Trust Co.,* 855 F.2d 1095 (4th Cir. 1988) ...................... 24

*Monmouth Meadows v. Hamilton*, 7 A.3d at 1 (Md. 2010) ............................................................ 4

*Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168 (4th Cir. 1999) ........................... 13

*Nolt v. U.S.F. & G.*, 617 A.2d 578 (Md. 1993). .................................................................. 25, 44

*Ochse v. Henry,* 88 A.3d 773 (Md. Ct. Spec. App. 2014) ........................................................... 21

*Rauch v. McCall*, 761 A.2d 76 (Md. Ct. Spec. App. 2000) .......................................................... 4

*Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, No. CIV.A. 10-3226, 2011 WL 6444980 (D. Md. Dec. 20, 2011) ....................................................................................... 13

*Romero v. ITW Food Equip. Gr. LLC,* 118 F. Supp. 3d 349 (D.D.C. 2015) ................................ 23

*Royal Inv. Group, LLC v Wang*, No. 271754, 2008 WL 3996244 (Md. Cir. Ct. Feb. 08, 2008) . 29

*Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665 (Md. Ct. Spec. App. 2008).......................... 4, 21, 43

*Sun Trust Bank v. Goldman*, 29 A.3d (Md. Ct. Spec. App. 2011)................................................. 4

*Tenax Corp. v. Tensar Corp.*, 1992 WL 516089 (D. Md. Oct. 22, 1992) .................................... 45

*Thornhill v. Donnkenny, Inc.,* 823 F.2d 782 (4th Cir. 1987). ........................................................ 23

*Turkmani v. Rep. of Bolivia,* 273 F. Supp. 2d 45 (D.D.C. 2002)................................................... 23

*United States v. One Parcel of Prop. Located at 414 Kings Highway*, No. 5:91-CV-158, 1999
    WL 301704 (D.D.C. May 11, 1999)................................................................................................. 3

*US Foods, Inc. v. Crittenden*, 2019 WL 2476669 (D. Md. June 13, 2019) ................................... 45

*Wash. Hosp. Ctr. Nat. Rehab. Hosp. v. Collier*, 947 F.2d 1498 (D.C. Cir. 1991)....................... 26

*Weichert Co. of Md., Inc. v. Faust*, 191 Md. App. 1 (Md. 2010) ........................................... 21, 29

*Woodland v. Viacom Inc.*, 255 F.R.D. 278 (D.D.C. 2008) ................................................. 13, 17, 18

## INTRODUCTION

Pursuant to the Court's July 30, 2019 Minute Order, Plaintiff Kenneth Feld sets forth herein his position on the attorneys' fees and expenses to which he is entitled, both in the underlying litigation and in the present litigation.

This action arose out of the refusal of Defendant Fireman's Fund Insurance Company ("Defendant" or "FFIC") to fully reimburse the legal fees and expenses incurred by Kenneth Feld in successfully defending a $110 million lawsuit that was brought against him in this Court (the "Shiva Litigation"). Under the Prestige Home Premier insurance policy purchased by Kenneth Feld (the "Policy") and applicable law, FFIC was obligated to reimburse all reasonable and necessary fees and expenses incurred in the Shiva Litigation. FFIC refused to reimburse $2,224,121.61 of these attorneys' fees based solely on its assertion that the parties formed a "rate agreement" in 2009 that limited FFIC's reimbursement obligation to hourly rates that it had stated, i.e., $250/hour for partners, $225/hour for associates and $100/hour for paralegals. Kenneth Feld informed FFIC repeatedly, before filing and throughout the present litigation, that this alleged "rate agreement" did not exist and that FFIC was required to reimburse all of his reasonable fees. FFIC, however, was implacable, and refused to even discuss reimbursement at hourly rates other than those in the alleged "rate agreement." This forced Kenneth Feld to file and prosecute the present litigation ("Rate Agreement Litigation") to vindicate his rights under the Policy. Now, after more than seven years of hard-fought, complex litigation, a jury has confirmed what Kenneth Feld has always maintained – the "rate agreement" alleged by FFIC never existed.

Under Maryland law, which the Court has held governs the Policy, Kenneth Feld is therefore entitled to recover the full amount of his reasonable attorneys' fees and expenses in the Shiva Litigation and in this Rate Agreement Litigation. Accordingly, Kenneth Feld respectfully

requests that the Court award him: (1) his remaining, unpaid attorneys' fees in the Shiva Litigation ($2,224,121.61); (2) pre-judgment interest on that amount calculated through the date of entry of judgment ($1,082,433.66 through today's date); (3) his reasonable attorneys' fees in this Rate Agreement Litigation ($2,367,112.03); (4) his reasonable expenses in this litigation ($115,783.56); and (5) post-judgment interest pursuant to 28 U.S.C. § 1961. A proposed order is attached.

## ARGUMENT

### I.    Kenneth Feld is Entitled to $2,224,121.61 in Attorneys' Fees in the Shiva Litigation

The attorneys' fees claimed by Kenneth Feld are the product of two factors: (1) the number of hours spent by the various timekeepers who worked on the Shiva Litigation multiplied by (2) the specified hourly billing rate for such timekeepers. The first factor is not in dispute. FFIC, before the present litigation was filed, conducted a detailed line-by-line review of the relevant invoices and determined that all of the hours at issue were reasonable and necessary to Kenneth Feld's defense in the Shiva Litigation.[1] Accordingly, the sole issue for the Court's determination is whether the hourly rates incurred in the Shiva Litigation were reasonable.[2]

This Court has already held that Maryland law "governs the contractual dispute concerning the obligations owed to Feld under his Policy." *See* Sept. 12, 2016 Mem. Op. [ECF

---

[1] FFIC determined that 98% of the claimed hours were reasonable and necessary. The remaining 2%, which FFIC claimed were not reasonable and necessary, were amalgamated with certain expenses on which FFIC also denied payment, the total of which was $194,694.78. The parties have settled that amount and it is not at issue.

[2] FFIC's decision to deny coverage and reserve its rights entitled Kenneth Feld to select his counsel. Aug. 11, 2009 Letter [ECF No. 72-4] at 9-10; Kirk Dep. (Kirtland Decl. Ex. 2) at 101:25–103:2; *see also Brohawn v. Transamerica Ins. Co.,* 347 A.2d 842, 853-54 (Md. 1975). Kenneth Feld selected Fulbright & Jaworksi to represent him in the Shiva Litigation. (In 2013, Fulbright & Jaworski LLP became Norton Rose Fulbright US LLP. For convenience, it is referred to herein as the "Firm"). Having never objected to Fulbright's qualifications or suitability to defend the Shiva Litigation, Kirk Dep. (Kirtland Decl. Ex. 2) at 103:7-11, FFIC cannot now properly contest Fulbright's rates given that they are reasonable, for all the reasons set out below.

No. 92] at 7. In a case such as this predicated on diversity jurisdiction, a federal court follows the applicable state law in measuring attorneys' fees. *See Mazengo v. Mzengi*, No. CIV.A. 07-756, 2007 WL 8026882, at *8 (D.D.C. Dec. 20, 2007) (applying Maryland attorneys' fee law where the underlying claim was governed by Maryland law); *United States v. One Parcel of Prop. Located at 414 Kings Highway*, No. 5:91-CV-158, 1999 WL 301704, at *4-5 (D.D.C. May 11, 1999) (applying Connecticut's attorneys' fee law where the contract dispute was governed by Connecticut law). Thus, Maryland law governs Kenneth Feld's entitlement to attorneys' fees and expenses in the Shiva Litigation, as well as in this Rate Agreement Litigation.

Under Maryland law, when – as here – a claim for attorneys' fees arises from a contract (*e.g.*, an insurance policy), Maryland courts have directed that attorneys' fees be calculated according to the Maryland Lawyer's Rules of Professional Conduct 19-301.5 (formerly known as Rule 1.5(a)) factors: [3]

> (1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>
> (3)    the fee customarily charged in the locality for similar legal services;
>
> (4)    the amount involved and the results obtained;
>
> (5)    the time limitations imposed by the client or by the circumstances;
>
> (6)    the nature and length of the professional relationship with the client;
>
> (7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8)    whether the fee is fixed or contingent.

---

[3] There is no material difference between Maryland Lawyer's Rules of Professional Conduct 19-301.5 and the equivalent District of Columbia Rule of Professional Conduct 1.5(a), which sets out identical factors, to determine the reasonableness of attorneys' fees. *See, e.g.*, *Camenisch v. Martens,* No. Civ. A. 93–0322 (AER), 1995 WL 461928 (D.D.C. July 7, 1995).

*See, e.g.*, *Monmouth Meadows v. Hamilton*, 7 A.3d at 1, 8 (Md. 2010); *Bd. of Trustees, Cmty. Coll. of Baltimore Cty. v. Patient First Corp.*, 120 A.3d 124, 143 (2015); *McLaughlin v. Huhra Homes, LLC,* 2019 WL 2763144, at *11 (Md. Ct. Spec. App. July 1, 2019); *Griaznov v. J-K Tech., LLC,* Civil Action No. ELH-16-2522, 2019 WL 2142529, at *3 (D. Md. May 16, 2019) (applying Maryland law). "In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *Bird Realty Ltd. P'ship v. Jiffy Lube Int'l*, No. 12-cv-1104, 2013 WL 4525266, at *8 (D. Md. Aug. 23, 2013) (quoting *Sun Trust Bank v. Goldman*, 29 A.3d 724, 730 (Md. Ct. Spec. App. 2011)). All that is required is that a court "utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows*, 7 A.3d at 10 n. 13.

The burden is on the party seeking recovery of attorneys' fees to provide the evidence necessary for the fact finder to evaluate the reasonableness of fees. *Bird Realty*, 2013 WL 4525266, at *8 (citing *Alt. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 478 (Md. 2004)). To meet this burden, that party must provide detailed records that specify the services performed, by whom they were performed, the time expended on these services, and the hourly rates at which it is seeking reimbursement. *Id.* (citing *Rauch v. McCall*, 761 A.2d 76, 84 (Md. Ct. Spec. App. 2000)); *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 696 (Md. Ct. Spec. App. 2008). Thus, a party seeking a fee award must prove its fees with the same certainty and standards ordinarily required for proving contractual damages. *Bd. of Trustees, Cmty. College of Baltimore Cnty. v. Patient First Corp.,* 120 A.3d 124, 143 (Md. 2015); *Comm. Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1214 (Md. Ct. Spec. App. 1997). The sufficiency of the evidence as to attorneys' fees "must be more than simply the number of hours worked, but less than a line by line analysis of services rendered." *Charter Oak Fire Co.,* 2017 WL 3315306, at *23.

Kenneth Feld has satisfied this burden. In support of his request for a determination that the unpaid fees in the Shiva Litigation were reasonable, he submits as evidence the following: (1) the Expert Report of William H. Jeffress on the reasonableness of the Firm's hourly rates ("Jeffress Report") (Kirtland Decl. Ex. 4), (2) the Declaration of John M. Simpson and exhibits thereto setting out in detail all the information necessary to apply the Rule 1.5(a) factors, describing Kenneth Feld's engagement of the Firm, staffing of the Shiva Litigation, the qualifications and general responsibilities of the relevant Firm attorneys, and the Firm's rates for the relevant period [ECF No. 71], (3) the LSI *Laffey* Matrix, (4) comparable fee awards, and (5) National Law Journal Billing Surveys. This evidence demonstrates that the claimed fees are reasonable.

### A.    The Shiva Litigation was Complex and Required the Time and Labor Incurred, and the Skill and Experience of Retained Counsel

The first factor under Maryland Rules of Professional Conduct 19-301.5(a), the "time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[,]" weighs in favor of the reasonableness of the Firm's fees.

### 1.    The Time Spent on the Shiva Litigation Has Already Been Determined by FFIC to Be Reasonable

The attorney hours giving rise to the $2,224,121.61 in unpaid legal fees are not in dispute given that FFIC has already reviewed such hours, found them to be reasonable and necessary for the defense of the Shiva Litigation and reimbursed Kenneth Feld for such hours (but only at the rates FFIC incorrectly claimed in the non-existent "rate agreement.")

FFIC made this determination after reviewing the detailed invoices presented by Kenneth Feld for reimbursement during the course of Shiva Litigation. These invoices specified the services performed by his attorneys, by whom they were performed, the time expended on these

services, and the hourly rates charged.[4] The invoices aggregated the time entries into a single document known as "proforma" reflecting the time entries for all "timekeepers"[5] working on the matter for a particular period. Simpson Decl. [ECF No. 71] ¶ 80. Timekeepers were expected to enter time in six or fifteen minute increments[6] on a daily basis, and no later than the Monday following the end of the week in which the work was performed.[7] Time entries were finalized for a particular month on the first business day of the following month. *Id.* at ¶¶ 73-79.

FFIC's review of these invoices was conducted by its Senior Auditor, Bruce Bryson. As set forth in his deposition testimony, Mr. Bryson conducted a "line-by-line review" of the invoices to determine if any fees and expenses did not meet the reasonable and necessary standard. Bryson Dep. (Kirtland Decl. Ex. 3) at 191:20–191:16. Mr. Bryson's review took approximately two weeks and included his review of pleadings and materials from the Shiva Litigation <u>and his communications with the FFIC representative assigned to the case, Mr. Charles Kirk</u>. Bryson Dep. (Kirtland Decl. Ex. 3) at 56:2–60:11; 192:1–193:24. Upon completion of this exhaustive review, FFIC approved 98% of the hours claimed, concluding they were reasonable and necessary to the defense of the Shiva Litigation. Jeffress Report (Kirtland

---

[4] On FFIC's demand, these invoices were re-produced to FFIC during discovery in this case. Simpson Decl. [ECF No. 71] Ex. 6.

[5] Timekeepers are attorneys, paralegals and other professional personnel who made contemporaneous records describing the work that was performed for the client and stating the amount of time that was expended on the work performed.

[6] From October 2005 – October 2009, timekeepers recorded their time in fifteen minute increments. Beginning in November 2009, as an accommodation to FFIC, through the end of the Shiva Litigation, timekeepers recorded time in increments of six minutes. Both of these increments are considered reasonable. Simpson Decl. [ECF No. 71] ¶¶ 74-79; *see also Hensley v. Eckerhart,* 461 U.S. 424, 457 n. 12 (1983) ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.").

[7] Prior to November 2009, timekeepers aggregated the time spent working on all activities for a given day into a single total amount of time, with a single narrative. Simpson Decl. [ECF No. 71] ¶ 75. Thereafter, from November 2009 to the conclusion of the Shiva Litigation, timekeepers recorded each task performed on the Shiva Litigation on a given day separately. *Id.*

Decl. Ex. 4) at 9. The only amounts that FFIC asserted were not reasonable and necessary were small amounts of attorney time (2%) for tasks that FFIC claimed to be duplicative and/or administrative, and certain expenses. Bryson Dep. (Kirtland Decl. Ex. 3) at 153:17-21; 154:22–156:13. FFIC also performed a "global adjustment on hourly rates" based on the non-existent rate agreement. *Id.* at 107:15–20. The downward adjustment was "totally independent" from and had no impact on the line-by-line "reasonable and necessary" analysis. *Id.* at 112:3-18.

### 2.      The Shiva Litigation was Complex Federal Litigation

The Shiva Litigation involved novel and difficult questions, and the proceedings, which were complex, contentious and created a high degree of risk for Kenneth Feld, required experienced and skilled counsel. Karen Feld sought $110 million in damages and asserted five causes of action: 1) assault; 2) battery; 3) intentional infliction of emotional distress; 4) negligent infliction of emotional distress; and 5) false imprisonment, creating a tremendous amount of exposure for Kenneth Feld, particularly in light of FFIC's denial of coverage. Aug. 11, 2009 Letter [ECF No. 72-4].

FFIC summarized the Shiva Litigation in its August 11, 2009 coverage letter. As stated therein, Karen Feld alleged that Kenneth Feld hired three security guards who viciously attacked her when she was forcibly ejected from Kenneth Feld's home during their aunt's shiva, or Jewish Funeral Service, held in Washington, D.C. *Id.* at 2. Karen Feld alleged that extreme violence was used during the ejection, including being beaten, punched, kicked and dragged. *Id.* at 2-3. She also alleged that she was sexually assaulted during the ejection. *Id.* at 3. As a result of these alleged attacks, she claimed to have suffered numerous, severe injuries including neck and back strains, contusions from fingers having been pressed forcibly into her right upper arm and ribs, pain in her upper arms, lateral neck and lumbar tenderness, cuts and scratches, torn right earlobe, fractured ribs, fractured elbow, injury to her knee, damage to her vision, a concussion, increased

incidences of uncontrollable speech, headaches, nausea, balance problems, and frequent seizure-like episodes. *Id.* Upon examination, her physicians allegedly advised that she had a golf ball-sized benign tumor on the left frontal lobe of her brain, and, as a result of her alleged assault, the tumor had shifted and required brain surgery. *Id.*

FFIC confirmed the novelty and complexity of the Shiva Litigation when it assigned it to Charles Kirk, its "high exposure" technical director. Trial Tr. Day 3, Morning Sess. (Kirtland Decl. Ex. 1) at 26:21-25. At the time, Charles Kirk had specialized in handling high-exposure, high-profile claims for twelve years, and had specialized in high-exposure claims at FFIC since 1999. Trial Tr. Day 3, Morning Sess. (Kirtland Decl. Ex. 1) at 24:6-19. The "high-exposure" group within FFIC handled claims that: involved a million dollars or more, involved complex legal issues, received media exposure, or in which the injured party had catastrophic injuries. Bryson Dep. (Kirtland Decl. Ex. 3) at 134:4–135:3 ("A: A technical director. . . handled larger, in terms of dollars and complex claims"); Trial Tr. Day 3 Morning Sess. (Kirtland Decl. Ex. 1) at 27:7–28:1.

When a case was transferred to the high exposure group, Charles Kirk, acting as the group director, would make an affirmative decision whether the case "fit the parameters of the high-exposure program[.]" Kirk Dep. (Kirtland Decl. Ex. 2) at 63:8-24; *see also* Bryson Dep. (Kirtland Decl. Ex. 3) at 134:4–135:3 ("[the assignment of the Shiva Litigation to a technical director such as Mr. Kirk] would have been an indication to me, as an auditor, that this was not a run-of-the-mill, third party liability case and that there was some degree of elevated importance associated with it, because [Mr. Kirk] was handling it and he had that title."). Charles Kirk would accept the case if it fit one or more of the criteria mentioned above. Trial Tr. Day 3 Morning Sess. (Kirtland Decl. Ex. 1) at 28:2–29:4. The Shiva Litigation objectively meets all four criteria.

The fact that the Shiva Litigation was high exposure litigation was confirmed during the case. The pretrial proceedings were factually and procedurally complex, as well as extremely contentious. Simpson Decl. [ECF 71] ¶¶ 9-10 & Ex. 1 at 14; Jeffress Report (Kirtland Decl. Ex. 4) at 6-7. Karen Feld was uncooperative and difficult; it took more than six instances over ten months to get her to sit for and complete her deposition. Simpson Decl. [ECF 71] ¶ 98. She also had prior relevant litigation history and disputes, requiring significant research and third-party discovery efforts. *Id.* She filed multiple motions for summary judgment, which required extensive briefing in opposition, and produced voluminous medical records that documented she was receiving treatment from multiple medical providers for her multiple alleged injuries. *Id.* ¶ 7, 9.

Between March 5, 2009, when a partial motion to dismiss was filed, and May 24, 2011, when the jury returned its verdict, the case was constantly active. Jeffress Report (Kirtland Decl. Ex. 4) at 7. To disprove the allegations in the complaint, the Firm issued approximately one hundred subpoenas for medical records and to depose multiple medical professionals who, it was alleged, had treated Karen Feld's injuries, deposed over thirty-five witnesses, both expert and lay, and litigated multiple lengthy discovery disputes and hearings, as well as several mediation sessions. *See* Simpson Decl. [ECF No. 71] ¶ 7, 10, 98 & Ex. 1 at 30-31; Jeffress Report (Kirtland Decl. Ex. 4) at 7.

At trial, the factual findings of the jury could not be predicted until the verdict was returned. Simpson Decl. [ECF No. 71] ¶ 96. The jury trial lasted twelve days, and the jury heard from over thirty fact and expert witnesses. Jeffress Report (Kirtland Decl. Ex. 4) at 7. Because Kenneth Feld and Karen Feld were both in the public eye,[8] the trial garnered national media

---

[8] Kenneth Feld is a well-known figure in the family entertainment industry, and his sister Karen Feld is a prominent social figure in Washington, D.C. Simpson Decl. [ECF No. 71] ¶¶ 96-97.

attention. The Associated Press covered it in television and print – before, during, and after the

trial. The Washington Post covered the trial on a daily basis,[9] and other local news outlets, both

print and television, also regularly reported on it.[10] As this Court has acknowledged, the Shiva

Litigation was a "highly contentious personal injury suit" and the trial was "lengthy and highly

publicized." Sept. 12, 2015 Mem. Op. [ECF No. 92] at 1-2. Thus, not only did the case create a

high amount of monetary exposure for Mr. Feld, it also put at risk his reputation and his

business. Jeffress Report (Kirtland Decl. Ex. 4) at 7.

FFIC considered the case to be of such importance that Charles Kirk attended all but the

final day of the two-week trial. Kirk Dep. (Kirtland Decl. Ex. 2) at 245:14-246:5. During the

trial, Mr. Kirk relayed to Joseph Small that he understood why attorneys of the Firm's caliber

would be necessary to handle the case after witnessing Karen Feld's erratic and unpredictable

behavior. Deposition of Joseph Small ("Small Dep.") at 107:16-110:5. Indeed, it was generally

understood that this matter would go to trial because Karen Feld was an "exceptionally difficult

plaintiff to litigate with" and there was not "a monetary amount at which she would have settled

this case." Kirk Dep. (Kirtland Decl. Ex. 2) at 173:4-6; 208:7-14; Trial Tr. Day 3, Morning Sess.

(Kirtland Decl. Ex. 1) at 74:20-25.

Ultimately, Kenneth Feld was able to successfully defeat Karen Feld's $110 million

claims, with the court entering a take-nothing judgment against Karen Feld. *Id. ¶* 10. After losing

---

[9] *See, e.g.,* The Reliable Source, *Karen Feld's Troubled Life Highlighted in Circus Family Feud Trial; Lawyer Says Seizures an Issue in Clash with Brother,* Wash. Post (May 23, 2011), https://www.washingtonpost.com/blogs/reliable-source/post/karen-felds-troubled-life-highlighted-in-circus-family-feud-trial-lawyer-says-seizures-an-issue-in-clash-with-brother/2011/05/23/AFxdC49G_blog.html?noredirect=on; Richard Leiby, *Circus-Family Siblings in Estranged Land,* Wash. Post, Mar. 27, 2009.

[10] *See, e.g.,* Nedra Pickler, *Ringling Siblings Battle Each Other in Court,* NBC News (May 3, 2011 1:02 PM), http://www.nbcnews.com/id/42881276/ns/us_news-life/t/ringling-siblings-battle-each-other-court/#.XV1pSihKhaQ.

at trial, Karen Feld appealed to the D.C. Circuit, seeking review of the district court' judgment

on the verdict against her and the pre-trial order denying judgment as a matter of law on Kenneth

Feld's defense of justification to use force in the common areas of his condominium. Kenneth

Feld filed a notice of cross-appeal. After another year of litigation, the appeal was dismissed. *Id.*

The caliber of opposing counsel also necessitated that Kenneth Feld retain experienced,

skilled counsel. Karen Feld's initial lead counsel – William McDaniel – graduated magna cum

laude from Harvard College in 1973, served as the editor-in-chief of the law review at the

University of Virginia (graduated 1977), and clerked for the U.S. Court of Appeals for the Third

Circuit and then the United States Supreme Court. Simpson Decl. [ECF No. 71] ¶ 17. Before he

started his own firm in 1984, he practiced law at the Washington, D.C., law firm of Williams &

Connolly.[11] *Id.* Steven Oster, who replaced Mr. McDaniel as Karen Feld's lead counsel in 2009,

has been a practicing trial lawyer since 1984, and, before starting his own firm, was a partner at

Willkie Farr & Gallagher LLP and Bingham McCutchen. *Id.*

Karen Feld also was represented by two experienced lawyers from the firm of Bonner

Kiernan Trebach & Crociata – Christopher Hassel (partner) and Nimi Amirthalingam (then-

associate) – who each provided substantial assistance during the litigation. *Id.* For expert

discovery and trial, Karen Feld also was represented by Steven Frankel, a lawyer and licensed

clinical physician. *Id.*

Accordingly, the complexity of the issues presented in the Shiva Litigation, the

difficulties presented throughout the litigation, the high exposure for Kenneth Feld, and the skill,

reputation and experience of Karen Feld's attorneys, required attorneys of the Firm's caliber to

represent Kenneth Feld. Jeffress Report (Kirtland Decl. Ex. 4) at 4.

---

[11] Mr. McDaniel also had co-counsel, Steven Gremminger and Basel Bakhos. Simpson Decl. [ECF No. 71] ¶ 17.

**B.      Counsel Would Likely Have Been Fully Engaged in Similarly Compensated Work**

The second factor under Maryland Lawyer's Rules of Professional Conduct 19-301.5(a), the "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer[,]" weighs in favor of the reasonableness of the Firm's fees in the Shiva Litigation because the attorneys who represented Kenneth Feld would have been fully engaged in similarly compensated work for other clients. Simpson Decl. [ECF No. 71] ¶ 102.

Mr. Feld was not charged the Firm's standard hourly rates in the Shiva Litigation. *Id.* ¶¶ 86-87. Given his long-term relationship with the firm, he received a significant discount by being charged the prior year's rates. *Id.* ¶ 86; Jeffress Report (Kirtland Decl. Ex. 4) at 8. Thus, for example, Matthew Kirtland's standard hourly rate for the calendar year 2011 was $625 per hour, but his rate in the Shiva Litigation in 2011 (his "matter rate") was $595 per hour, his standard hourly rate for calendar year 2010. Simpson Decl. [ECF No. 71] ¶ 86. Moreover, over the course of the matter, the Firm wrote-off further time and expense. These discounts were then passed on to FFIC.

The Firm recorded 9,397 hours for work performed during the period from October 1, 2007 through May 31, 2012. Simpson Decl. [ECF No. 71] ¶ 87. This time had an aggregate value of $4,860,557 at the Firm's standard rates and an aggregate value of $4,506,709 at the discounted matter rates. *Id.* After further courtesy discounts, the fees in the Shiva Litigation totaled $4,251,434. *Id.* This represents an aggregate discount of $609,123 (or 14%) off the Firm's standard rates and an aggregate discount of $255,275 (or 6%) off the matter rates. *Id.* ¶ 87; Jeffress Report (Kirtland Decl. Ex. 4) at 8. The result is a "realization rate" of around 85%,

- 12 -

which is seven to nine percent less than firms in its peer group expect to achieve. Jeffress Report (Kirtland Decl. Ex. 4) at 8.

Therefore, the time these attorneys dedicated to representing Kenneth Feld in the Shiva Litigation prevented them from providing legal services on other matters at comparable, or higher, rates. Simpson Decl. [ECF No. 71] ¶ 102.

### C.   The Firm's Rates are Customary of the Rates Charged in Washington, D.C. for Similar Legal Services

The third factor under Maryland Lawyer's Rules of Professional Conduct 19-301.5(a), "the fee customarily charged in the locality for similar legal services," weighs in favor of the reasonableness of the Firm's fees.

"'The community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, No. CIV.A. 10-3226, 2011 WL 6444980, at *4 (D. Md. Dec. 20, 2011) (citing *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999)); *see also Griaznov*, 2019 WL 2142529, at *4. Here, as the Shiva Litigation took place in this Court, that relevant community is Washington, D.C.

In Washington, D.C., "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Woodland v. Viacom Inc.*, 255 F.R.D. 278, 280–81 (D.D.C. 2008) (emphasis added) (citing *Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984))). Where the "prevailing" community rate is disputed, federal courts in Washington, D.C., "have operationalized [the determination of the prevailing market rate] with a burden-shifting framework: To begin, a fee applicant bears the burden of . . . justifying the

- 13 -

reasonableness of the rates. . . At that point, the claimed fee is presumed to be the reasonable fee . . . and the burden shifts to the defendant to present equally specific countervailing evidence if it seeks a different (presumably lower) rate." *DL v. D.C.*, 924 F.3d 585, 588–89 (D.C. Cir. 2019) (quotations omitted, citations omitted).

Here, the Firm's standard rates were substantially discounted in the Shiva Litigation and both the undiscounted and discounted rates are in line with those prevailing in the community for comparable litigation. Simpson Decl. [ECF No. 71] ¶¶ 86-87, 101 & Ex. 5; Jeffress Report (Kirtland Decl. Ex. 4) at 7-8. The discounted hourly rates for each of the attorneys are presumptively reasonable and, as the evidence shows, customary for firms of similar size in Washington, D.C., with attorneys of similar education and experience, for similar services. The below chart reflects the billed rate, after all discounts are applied, for each primary attorney:[12]

**Shiva Litigation Rates**

| Firm Attorney (JD Year) | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| Joseph Small (1975) | $600 | $567 | $673 | $723 | $792 | $521 |
| John Simpson (1978) | - | $546 | 660 | $715 | $715 | $715 |
| Matthew Kirtland (1997) | - | - | - | $565 | $595 | $595 |
| Caroline Mew (1999) | - | $419 | $472 | $404 | $550 | - |
| Rena Scheinkman (2003) | - | - | - | $400 | - | - |
| Gloria Salcedo (2006) | - | $268 | - | $274 | $350 | - |
| Kimberly Caine (2006) | - | - | - | $335 | $350 | $350 |

---

[12] The primary group of lawyers listed in the chart worked 93.88 percent of the total hours recorded as worked on the Shiva Litigation, which represents 96.82 percent of the recorded value of the total hours worked, during the period from October 1, 2007 through May 31, 2012. Simpson Decl. [ECF No. 71] ¶ 20 & Ex. 3 at 1.

A.      *William H. Jeffress Expert Opinion*

William Jeffress provided an independent expert opinion that the Firm's hourly rates

were reasonable in the Shiva Litigation. Mr. Jeffress started practicing as a trial lawyer in 1972,

first with the firm Miller, Cassidy, Larroca & Lewin, and then with Baker Botts LLP, with which

the Miller, Cassidy firm combined in January 2001. Jeffress Report (Kirtland Decl. Ex. 4) at 1.

As of submission of his expert opinion in 2015, he had served for six years as a member of the

ABA's Standing Committee on Ethics and Professionalism, and had been a Fellow of the

American College of Trial Lawyers since 1991. *Id.* He had been engaged as an expert witness on

legal ethics and trial practice more than half a dozen times and had testified once at trial and at

least twice in depositions. *Id.* at 1-2. Further, he had served on the Executive Committee of

Baker Botts which reviewed and considered peer group information regarding hourly rates at

least twice a year in managing the financial affairs of the firm and in reading court decisions

regarding fee applications in various types of civil litigation. *Id.* at 2.

Upon extensive review of the invoices and conducting research on the experience of the

lawyers principally involved, Mr. Jeffress opined:

> [The Firm's] rates are well within the range of rates charged during 2010 and
> 2011 by lawyers with comparable experience in firms that are among the peer
> group of Fulbright & Jaworski. They are also rates that a litigant would have
> expected to pay for comparably qualified lawyers in federal court litigation in
> Washington, D.C. having the stakes that this case had for Kenneth Feld. Jeffress
> Report (Kirtland Decl. Ex. 4) at 1.

After reviewing the adjusted *Laffey* Matrix and the Vienna Metro Matrix, Mr. Jeffress

further opined that, "[t]he rates also compare favorably to the rates approved by courts on fee

applications in cases that are often less challenging than the litigation brought by Karen Feld

against her brother." *Id.*

B.      *Affidavit of John Simpson*

John Simpson, counsel in the Shiva Litigation, also provided a sworn declaration in support of the reasonableness of the Firm's fees. Simpson Decl. [ECF No. 71] ¶¶ 91-93. He stated:

> These rates all fall within the range of rates prevailing in the District of Columbia during 2007 through 2012 for similar services by lawyers and other professionals of reasonably comparable skill, experience and reputation. In particular, the standard hourly rates, matter rates and billed rates set forth on Ex. 7 fall within, or in some instances are below, the prevailing District of Columbia market rates for experienced counsel handling complex civil litigation in federal court, as well as the prevailing market rates in the District of Columbia for associates, other non-partner attorneys, paralegals and other hourly billed professional personnel at large Washington litigation firms or national or international firms with D.C. offices with complex federal court litigation practices. *Id*. ¶ 91.

Mr. Simpson based his sworn testimony on his thirty-seven years of practice in complex federal court litigation in Washington, D.C., including submitting and defending claims for attorneys' fees in litigation. He referred specifically to the preparation of an attorneys' fee petition in connection with the litigation styled *Animal Welfare Institute, et al. v. Feld Entertainment, Inc.* No. 03-2006-EGS/JMF (D.D.C.) (*"AWI* v. *FEI"*)*, a case pending in this Court from 2000 through 2014 in which he served as lead counsel for the defendant. *Id.* at ¶ 92. During the litigation of the *AWI* v. *FEI* fee petition, Mr. Simpson engaged in a comprehensive study and comparison of the rates in that case to the rates charged by comparable firms in Washington, D.C. *Id.* at ¶ 93. His experience preparing this fee petition is particularly relevant as it was pending from December 2005 through May 2014, during the Shiva Litigation, and involved many of the same timekeepers. *Id.*

C.      *LSI Laffey Matrix*

The reasonableness of the Firm's matter rates in the Shiva Litigation is also supported by the LSI *Laffey* Matrix. *See* Kirtland Decl. Ex. 5 (LSI *Laffey* Matrix). In a recently issued opinion,

the D.C. Circuit confirmed, "a matrix showing the average hourly price tag of comparable lawyers may 'provide a useful starting point' in calculating market rates." *DL*, 924 F.3d at 589 (citations omitted). For complex federal litigation[13] in Washington, D.C., the applicable matrix is the LSI *Laffey* Matrix. *DL,* 924 F.3d at 592 (rejecting the USAO *Laffey* matrix because it incorporates rates "for the wrong types of practitioner" and because it draws from lawyers who practice in the entire "metro area" rather than just in Washington, D.C.). Courts have regularly held that the rates of large, Washington, D.C. firms are reasonable even when they were higher than *Laffey* matrix rates. *See, e.g., Woodland*, 255 F.R.D. at 281.

Set forth below is a chart that compares the Firm's rates in the Shiva Litigation with the comparable rates in the LSI *Laffey* Matrix for 2010. As demonstrated therein, the Firm's rates are oftentimes at or below the *Laffey* rates – highlighted in light blue – and substantially so, *e.g.*, the rates of Caroline Mew and Gloria Salcedo. See Kirtland Decl. Ex. 6 (chart comparing the Firm's rates in the Shiva Litigation with the comparable rates in the LSI *Laffey* Matrix for 2007-2011). In the instances where the Firm's rates are higher, the difference is not material and, in any event, is counterbalanced by the lower rates. As such, the Firm's rates in the Shiva Litigation are squarely within the LSI *Laffey* Matrix range.

### 2010 LSI *Laffey* Matrix Comparison

| Timekeeper (JD Year) | Years in Practice | LSI *Laffey* Years in Practice Categorization | LSI *Laffey* Range | Timekeeper Rate |
|---|---|---|---|---|
| Joseph Small (1975) | 35 | 20+ | $686-$709 | $723 |
| John Simpson (1978) | 32 | 20+ | $686-$709 | $715 |
| John Kelly (1995) | 15 | 11-19 | $569-$589 | $580 |
| Lisa Joiner (1996) | 14 | 11-19 | $569-$589 | $565 |
| Matthew Kirtland | 13 | 11-19 | $569-$589 | $565 |

---

[13] As discussed in Section I.B.1, there can be no credible argument that the Shiva Litigation was not a complex federal litigation.

| | | | | |
|---|---|---|---|---|
| (1997) | | | | |
| Caroline Mew (1999) | 11 | 11-19 | $569-$589 | $404 |
| Ashley Seuell (2003) | 7 | 4-7 | $349-$361 | $420 |
| Rena Scheinkman (2003) | 7 | 4-7 | $349-$361 | $400 |
| Gloria Salcedo (2006) | 4 | 4-7 | $349-$361 | $274 |
| Kimberly Caine (2006) | 4 | 4-7 | $349-$361 | $335 |
| Tracy DeMarco (2009) | 1 | 1-3 | $285-$294 | $230 |

D.     *Fee Awards*

The reasonableness of the Firm's rates in the Shiva Litigation also is supported by decisions in other complex federal litigation in Washington, D.C., where courts have regularly held that the rates charged by comparable, large firms are reasonable. The declarations in support of these petitions, and the awards, are attached as Exhibit 9 to the Declaration of Matthew Kirtland.

*Woodland v. Viacom*, 255 F.R.D. 278, 281 (D.D.C. 2008). In *Woodland*, the court awarded Morgan Lewis's 2006-2007 standard rates, with a self-imposed 15% discount, for litigation in which an employee filed action against parent company of wholly owned subsidiary where she worked, alleging discrimination on basis of her gender in violation of District of Columbia Human Rights Act). For work completed in 2006-2007, Morgan Lewis was awarded $690/Partner, $420/10[th]-11[th] year and $295/1[st]-2[nd] year. These rates are higher than the Firm's rates for attorneys at comparable levels one year later (2008), which were $567/Partner, $419/10[th] year and $268/2[nd] year.

*Wilcox v. Sisson*, No. CIV.A. 02-1455(RMC), 2006 WL 1443981, at *1 (D.D.C. May 25, 2006). In *Wilcox*, the court awarded Williams & Connolly's 2002-2004 standard hourly rates for a breach of contract case in which the defendant constructed and sold plaintiff a Washington, D.C. residence. Given that the Firm's rates are for later years, the Firm's rates are in line with those awarded to Williams & Connolly. For 2002, Williams & Connolly was awarded

- 18 -

$475/partner and $215/associate. For 2003, they were awarded $515/partner and $255/associate and for 2004, they were awarded $550/partner and $295/associate. For comparison, in 2008, four to six years later, the Firm's rates are $567/partner and $268/associate.

_Adolph Coors, Co. v. Truck Ins. Exch_., 383 F. Supp. 2d 93, 98 (D.D.C. 2005). In _Adolph Coors, Co._, the court awarded Dickstein Shapiro's standard 2004-2005 billing rates for a fee award pursuant to 28 U.S.C. § 1447(c) after plaintiff successfully remanded the case back to D.C. Superior Court. For 2004, the court awarded Dickenstein Shapiro $425/partner and $275/associate and for 2005 it awarded $450/partner and $285/associate. For comparison, three to four years later, the Firm's rates are $567/partner and $268/associate.

_Elec. Transaction Sys. Corp. v. Prodigy Partners Ltd., Inc_., No. CIV. A. 08-1610 (RWR), 2009 WL 3273920, at *2 (D.D.C. Oct. 9, 2009). In _Elec. Transaction Sys. Corp._, the court awarded Williams & Connolly's standard billing rates for its representation of a plaintiff in default judgment proceedings in which the plaintiff moved to enjoin defendant from using plaintiff's trade names. For 2008, the court awarded Williams & Connolly $740/partner, $525/partner and $375-410/associate. By comparison, for 2008, the Firm's rates are $567/partner and $268/associate.

### E.  National Law Journal Billing Surveys

The National Law Journal billing rate surveys for 2007-2012,[14] provide further confirmation that the Firm's hourly rates are aligned with the billing rates at comparable Washington, D.C. firms.[15] Below are charts depicting a sampling of the average partner rates and

---

[14] The National Law Journal billing rate surveys for 2007-2012 are attached in their entirety hereto. _See_ Kirtland Decl., Ex. 7.

[15] The Firm has approximately 4,000 attorneys in over 50 offices worldwide, with circa 100 attorneys practicing in its Washington, D.C. office. Firms considered comparable to the Firm were those with federal litigation practices in Washington, D.C. with offices of comparable size.

high partner rates, and the average associate rates and high associate rates, of comparable firms

according to the National Law Journal Surveys, along with the Firm's average and high partner

and associate rates in the Shiva Litigation in 2010-2011.[16]

### National Law Journal Surveys – Partners

| Firm | 2010 Rate High | 2010 Average Rate | 2011 Rate High | 2011 Average Rate |
|---|---|---|---|---|
| Holland & Knight | $850 | $499 | $895 | $530 |
| **Norton Rose Fulbright** | **$750** | **$650** | **$792** | **$615** |
| Patton Boggs | $990 | $645 | $990 | $659 |
| Perkins Coie | $825 | $534 | $875 | $550 |
| Saul Ewing | $800 | $491 | $750 | $502 |
| Winston & Strawn | $1,075 | $670 | $1,130 | $713 |

### National Law Journal Surveys – Associates

| Firm | 2010 Rate High | 2010 Average Rate | 2011 Rate High | 2011 Average Rate |
|---|---|---|---|---|
| Holland & Knight | $480 | $288 | $495 | $290 |
| **Norton Rose Fulbright** | **$420** | **$315** | **$350** | **$277** |
| Patton Boggs | $550 | $399 | $570 | $410 |
| Perkins Coie | $570 | $354 | $590 | $368 |
| Saul Ewing | $475 | $310 | $495 | $326 |
| Winston & Strawn | $610 | $393 | $600 | $434 |

> **D.   Karen Feld Sought $110 Million Dollars and Counsel for Kenneth Feld Obtained a Take-Nothing Defense Verdict**

The fourth factor under Maryland Lawyer's Rules of Professional Conduct 19-301.5(a),

"the amount involved and the results obtained," weighs in favor of the reasonableness of the

---

[16] A chart depicting a sampling of the average partner rates and high partner rates, and the average associate rates and high associate rates, of comparable firms according to the National Law Journal Surveys, along with the Firm's average and high partner and associate rates in the Shiva Litigation for 2007-2011 is attached as Exhibit 8 to the Declaration of Matthew Kirtland. The Firm rates in the charts are based on the data in Exhibit 7 to John Simpson's Declaration, which is a true and accurate copy of a spreadsheet that states, for each calendar year from 2007 through 2012, the rates for each of the lawyers and non-attorney professionals who worked on the Shiva Litigation. Simpson Decl. [ECF No. 71] ¶ 88.

Firm's fees. Karen Feld sought $110 million dollars in total damages from Kenneth Feld. In comparison, the total amount of attorneys' fees incurred by Kenneth Feld is less than <u>five percent</u> of that amount. *See* Jeffress Report (Kirtland Decl. Ex. 4) at 4. Courts interpreting Maryland law have affirmed awards of attorneys' fees where the amount of the award is greater than the damages award. *See, e.g.*, *Royal Inv. Grp.*, 961 A.2d at 696 (affirming fee award of $179,907.60 where damages award was for $45,600 in heated real property dispute that had been litigated for two years and had begun two years before the commencement of litigation); *Weichert Co. of Md., Inc. v. Faust*, 191 Md. App. 1, 4, 20–21 (Md. 2010) (affirming fee award of $946,014.50 where damages award was for $116,000 in a breach of fiduciary duties matter that lasted three years); *see also Ochse v. Henry,* 88 A.3d 773, 791-92 (Md. Ct. Spec. App. 2014) (approving as reasonable a fee award that was 31% of the principal amount in litigation).

In addition, the Firm obtained a victory for Kenneth Feld on all claims alleged against him, with a take-nothing defense judgment, entered pursuant to a unanimous jury verdict. Simpson Decl. [ECF No. 71] ¶ 10 & Ex. 1 at 31. This alone is a "critical factor" in evaluating the reasonableness of the fees and expenses. *See*, *e.g.*, *Bird Realty*, 2013 WL 4525266, at *10 ("Certainly, the degree of success obtained is the most critical factor in determining an award." (internal quotation marks omitted)).

### E.      Kenneth Feld is a Long-Term Firm Client

The sixth factor, "the nature and length of the professional relationship with the client[,]" weighs in favor of the reasonableness of the Firm's fees. The Firm was retained to represent Kenneth Feld in the Shiva Litigation in part because of the Firm's long prior history of representing Kenneth Feld in litigation, as well as the prior legal work that the Firm had performed for both the Feld family and its Company. Simpson Decl. [ECF No. 71] ¶ 15. Based on this long-standing relationship, the Firm performed work at a discounted rate in the Shiva

Litigation, the benefit of which is being passed on to FFIC. *See* Section I.B.2 (citing Simpson Decl. [ECF No. 71] ¶¶ 86-87, 101 & Ex. 5; Jeffress Report (Kirtland Decl. Ex. 4) at 7-8).

### F.    Counsel Ranged in Experience and Ability and were Staffed to Tasks Appropriately

The seventh factor, "the experience, reputation, and ability of the lawyer or lawyers performing the services," weighs in favor of the reasonableness of the Firm's fees. Although the individual lawyers changed at various points, the Firm handled the Shiva Litigation with a core team consisting of one to two partners and one to three associates or senior counsel. Simpson Decl. [ECF No. 71] ¶ 16. This core group was augmented at various points with individuals assigned to perform discrete tasks due to the demands of the case. *Id.* Tasks were assigned based on experience and skill. *See id.* ¶¶ 16, 22-71 (discussing responsibilities of relevant timekeepers in detail); Jeffress Report (Kirtland Decl. Ex. 4) at 5-6.

For example, during trial, Kenneth Feld's defense team consisted of five attorneys: partners Matthew Kirtland and John Simpson, senior counsel Caroline Mew, and associates Kimberly Caine and Gloria Salcedo. Simpson Decl. [ECF No. 71] ¶ 16. By comparison, Karen Feld had four lawyers present at counsel's table during trial: partners Steven Oster, Steven Frankel and Christopher Hassel, and associate Nimi Amirthalingam. *Id.* ¶ 17.

Accordingly, the relevant factors[17] articulated in Maryland Rule of Professional Conduct 19-301.5(a) all weigh heavily in favor of finding the attorneys' fees in the Shiva Litigation reasonable.

---

[17] The fifth favor, "the time limitations imposed by the client or by the circumstances," is not applicable as there were no such time constraints in the Shiva Litigation. The eighth factor, "whether the fee is fixed or contingent[,]" also is inapplicable because Kenneth Feld is not claiming attorneys' fees on the basis of a fixed or contingent arrangement.

## II.   Kenneth Feld is Entitled to Prejudgment Interest on the Unpaid Attorneys' Fees in the Shiva Litigation

Kenneth Feld also seeks prejudgment interest on the $2,224,121,61 in unpaid attorneys' fees at a rate of 6 per cent per annum, calculated from the date of FFIC's denial of payment until the date of judgment. Through today's date, this amount of interest equals $1,082,433.66. *See* Kirtland Decl. Ex. 14 (Excel spreadsheet).

### A.   Maryland Law Governs the Application of Prejudgment Interest

"A federal court sitting in diversity must look to local law to determine whether prejudgment interest is available." *Embassy of Fed. Rep. of Nigeria v. Ugquonye,* 945 F. Supp. 2d 81, 86 (D.D.C. 2016); *Romero v. ITW Food Equp. Gr. LLC,* 118 F. Supp. 3d 349, 351 (D.D.C. 2015). That court "must apply the choice-of-law rules of the jurisdiction in which it sits to determine the body of law that should govern substantive matters," *(Turkmani v. Rep. of Bolivia,* 273 F. Supp. 2d 45, 51 (D.D.C. 2002) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941))) and "substantive matters include both damages and pre-judgment interest, which is considered an aspect of damages." *Id.* (citing *Harris v. Mickel,* 15 F.3d 428, 429-30 (5th Cir. 1994)). Because Maryland law governs the Policy, it also governs the award of prejudgment interest. *See also Thornhill v. Donnkenny, Inc.,* 823 F.2d 782, 787 (4th Cir. 1987).

### B.   Kenneth Feld is Entitled to Prejudgment Interest as a Matter of Right

"The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.,* 515 U.S. 189, 195-96 (1995). Under Maryland law, prejudgment interest is "allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to

deprive the creditor of the use of a fixed amount as of a known date."[18] *Charter Oak Fire Co.,* 2017 WL 3315306, at *30 (quoting *Buxton v. Buxton,* 770 A.2d 152, 165 (Md. 2001) (quotations omitted)). For prejudgment interest as a matter of right, "interest may be recovered. . . even where the damages sustained while not liquidated in the strict sense of the term are otherwise readily ascertainable before the entry of judgment." *Merrick v. Mercantile-Safe Deposit & Trust Co.,* 855 F.2d 1095, 1106 (4th Cir. 1988) (interpreting Maryland law) (internal quotations omitted).

Here, Kenneth Feld is entitled to prejudgment interest as a matter of right because the amount that FFIC refused to pay "was certain, definite, and liquidated," and "reasonably ascertainable" at the time FFIC denied payment. By providing only a partial payment on the basis of the non-existent rate agreement, FFIC "not only deprived [its] insured[] of [his] defense costs but had the use of that amount and its income for themselves during the years of litigation that followed." *Charter Oak Fire Co.,* 2017 WL 3315306, at *31. For this reason, prejudgment interest is allowable as a matter of right.

In Maryland, the legal rate of prejudgment interest is six percent per annum. *Id.; see also* Md. Const. Art. III § 57. Here, the Court should award Kenneth Feld prejudgment interest at this rate from the date FFIC denied payment through the date that the Court renders its final judgment. *See Brethren Mut. Ins. Co. v. Filsinger,* 458 A.2d 880, 885 (Md. Ct. Spec. App. 1983) ("Regardless of an insurer's good faith denial of coverage, a plaintiff is entitled to recover

---

[18] Prejudgment interest is not allowed "'in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement,'" for which "'the award itself is presumed to be comprehensive.'" For those cases falling "'[b]etween these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact.'" *Charter Oak Fire Co.,* 2017 WL 3315306, at *30 (quoting *Buxton v. Buxton,* 770 A.2d 152, 165 (Md. 2001)).

interest from the date coverage was denied."); *see also George's Radio Television Co., Inc. v. Ins. Co. of North Am.*, 536 F. Supp. 681, 683-84 (D. Md. 1982).

**III.** **Kenneth Feld is Entitled to an Award of $2,482,895.59 in Attorneys' Fees and Expenses in this Rate Agreement Litigation**

Kenneth Feld has been forced to litigate against FFIC for seven years to enforce his rights under the Policy. Had FFIC not originally denied payment on the basis of the non-existent "rate agreement," it is unlikely that litigation would have been required. Instead, as occurred with the $194,694.78 in time and expenses that FFIC claimed were not reasonable and necessary, the parties could have resolved their dispute through commonsense negotiations. Even if such resolution was not achieved, the litigation that then would have been required would have been simple and straightforward: a fee petition filed by Kenneth Feld (like the present one) that would have taken the Court a period of months to resolve. However, because FFIC continued to rely on the non-existent rate agreement, it left Kenneth Feld with no choice other than to bring the present litigation to enforce his rights. Now that Kenneth Feld has prevailed on this issue, FFIC is obligated under Maryland law to pay the reasonable attorneys' fees and expenses in this litigation.

**A.** **Under Maryland Law, Kenneth Feld is Entitled to Reasonable Attorneys' Fees and Expenses in this Litigation**

Because Maryland law governs the Policy, it also governs the availability and reasonableness of attorneys' fees and expenses in this litigation. S*ee supra* Section I. Under "firmly established" Maryland law, an insurer is liable for reasonable attorneys' fees and expenses incurred when an insured "must resort to litigation" to enforce its rights under the insurer's policy. *Nolt v. U.S.F. & G.*, 617 A.2d 578, 584-85 (Md. 1993). At least one court sitting in diversity in Washington, D.C., interpreting Maryland law, has recognized this exception to the American Rule. *See Wash. Hosp. Ctr. Nat. Rehab. Hosp. v. Collier*, 947 F.2d 1498, 1503 (D.C.

Cir. 1991). The Maryland Court of Appeals has applied this exception in the specific context of a breach of contract suit against an insurer. *See, e.g., Cont. Cas. Co. v. Bd. of Educ.*, 489 A.2d 536 (Md. 1985); *Bankers & Shippers Ins. Co. v. Electro Enterprises, Inc.*, 415 A.2d 278 (1980); *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842 (Md. 1975); *Cohen v. Am. Home Assur. Co.*, 258 A.2d 225 (Md. 1969); *Collier v. MD-Individual Practice Ass'n, Inc.*, 607 A.2d 537 (Md. 1992).

Under Maryland law, when an insurer forces the litigation by failing to do that which it had agreed to do, then the insured is entitled to recover reasonable attorneys' fees and expenses in establishing the contested coverage. *See Gov. Emps. Ins. Co. v. Taylor*, 310 A.2d 49, 55 (Md. 1973). The entitlement of an insured to reasonable attorneys' fees and expenses depends exclusively on the resolution of the conflict. "It does not depend on whether the denial of coverage by the insurer was reasonable or unreasonable, justified or unjustified, a close question of fact or a matter not even subject to legitimate dispute. The focus is exclusively on the bottom line." *Comm. Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1219 (Md. Ct. Spec. App. 1997).

Maryland courts have recognized that the essence of an insurer's duty to defend is to "[relieve] [the] insured of the expense of defending an action." *See Brohawn*, 347 A.2d at 851. This includes when an insurer improperly limits the scope of its coverage. *See Canopius US Ins., Inc. v. RN'G Const., Inc.*, 2016 WL 4076091, at *8–9 (Md. Ct. Spec. App. Aug. 1, 2016) (finding that an insurer that agreed to defend the insured but refused to acknowledge its exclusive coverage obligation – paying only one-half of the defense costs – was liable for attorneys' fees and expenses incurred litigating its obligations because it failed to pay the full amount of disputed defense costs); *see also, Brohawn,* 347 A.2d at 846, 851-52, 854 (insurer

breached contractual duties by providing only a partial defense); *Hartford Mut. Ins. Co. v. Jacobson*, 536 A.2d 120, 121-22, 124 (Md. Ct. Spec. App. 1988) *rev'd on other grounds*, 610 A.2d 286 (Md. 1992) (finding breach of duty to defend where insurer failed to provide a complete defense).

"The Maryland Court of Appeals has made clear that the common law exception to the American rule for cases brought to enforce an insurer's obligations under a liability insurance policy applies to actions for recovery of litigation expenses from a liability insurer, even where the duty to defend is not in issue." *See Baker's Exp., LLC v. Arrowpoint Capital Corp*., 2012 WL 4370265, at *31 (D. Md. Sept. 20, 2012) (interpreting Maryland law). In *Baker's Exp*., the insurers argued that the attorneys' fees shifting rule did not apply to their dispute because the "matter at hand [was] not an insurance question *per se*, but a contract dispute over whether Arrowpoint could possibly be responsible for fees incurred prior to its notice and acceptance of the defense." *Id.* (internal citations omitted). The court found that "[t]his is not a meaningful distinction." *Id.* Citing to *Cont'l Cas. Co.*, the court held the fundamental question at issue is "which party, insurer or insured, pays for the defense of the action brought against the insured by a third party." *Id.* "[W]hether one speaks in terms of [the insurer's] having authorized the expenditure by its failure to defend or whether one speaks in terms of the attorney's fees for the declaratory judgment action being a part of the damages sustained by the insured by [the insurer's] wrongful breach of the contract, we hold [the insurer] bound to pay the fees incurred by [the insured] in bringing the declaratory judgment action to establish that [the insurer] had not done that which it had agreed with her to do." *Id.; see also Cohen v. Am. Home Assur. Co*., 258 A.2d 225, 239 (Md. 1969).

Here, FFIC denied payment to Kenneth Feld of $2,224,121.61 in attorneys' fees in the

Shiva Litigation on the basis of a non-existent "rate agreement." This forced Kenneth Feld to

bring this case to disprove the existence of this agreement so that he could have the opportunity

of recovering the full amount of his reasonable attorneys' fees. Having prevailed on this issue at

the July 2019 jury trial, FFIC is required to pay Kenneth Feld's reasonable attorneys' fees and

expenses in this Rate Agreement Litigation.

### B.      Kenneth Feld is Entitled to an Award of $2,367,112.03 in Attorneys' Fees

As set forth above, Maryland courts have directed that attorneys' fees be calculated

according to the factors enumerated in Maryland Lawyer's Rules of Professional Conduct 19-

301.5. Under these factors, $2,392,041.50 in attorneys' fees is reasonable for this Rate

Agreement Litigation. Kenneth Feld submits the following supporting evidence: (1) the

Declaration of Matthew H. Kirtland, (2) the LSI *Laffey* Matrix, (3) comparable Fee Awards, and

(4) National Law Journal Billing Surveys.

### 1.      The Rate Agreement Litigation was Complex and Required the Time and Labor Incurred, and the Skill and Experience of Retained Counsel

Pursuant to the first factor, the "time and labor required, the novelty and difficulty of the

questions involved, and the skill requisite to perform the legal service properly," weighs in favor

of the reasonableness of the claimed fees.

### A.      The Time and Labor Spent was Reasonable

The hours recorded in this Rate Agreement Litigation are reflected in the Firm's

contemporaneous, detailed billing records. Kirtland Decl. Ex. 18. As during the Shiva Litigation,

timekeepers, as defined above, were required to enter time on a daily basis but, in any event, no

later than the Monday following the conclusion of the week in which the work was performed

and, for a particular month, no later the than first business day of the following month.

Timekeepers recorded their time in fifteen minute increments and aggregated the time spent working on all activities for a particular client matter for a given day into a single total amount of time, together with a single narrative identifying each of the tasks performed.[19] Kirtland Decl. ¶ 25. While various timekeeping systems were used, they all had fields identifying the timekeeper, client, matter, number of hours or fractions thereof worked, and narrative description of the work performed.[20] The Firm's contemporaneous time entries are sufficiently detailed to allow the court to assess the reasonableness of the number of hours claimed. *See, e.g., Royal Inv. Group, LLC v Wang*, No. 271754, 2008 WL 3996244 (Md. Cir. Ct. Feb. 08, 2008).

A total of 4867.8 hours were recorded on this matter between 26 timekeepers. At the Firm's standard rates, the value of this time would have been $2,897,590.50.[21] However, as in the Shiva Litigation, the rates applied in this matter (the "matter rates") reflected a one-year courtesy discount given to its long-standing client, Kenneth Feld. This resulted in a substantial discount of $207,743.50 (7%).

In addition to this discount on hourly rates, the Firm, in the exercise of careful billing judgment, made three further discounts to the number of hours recorded on this matter. Kirtland Decl. ¶ 37. The first category of discount was to write-off entirely the time incurred by sixteen

---

[19] In *Bainbridge*, the court recognized that "it is not always efficient or reasonable to label each iota of time with the particular claim and fact it addresses." *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 2016 WL 1321205, at *12 (Md. Ct. Spec. App. Apr. 5, 2016), *aff'd*, 454 Md. 475, 164 A.3d 978 (Md. 2017) (citing *Weichert Co. of Md., Inc. v. Faust*, 191 Md. App. 1, 19 & n. 14 (Md. 2010)). The court thus granted attorneys' fees where the records included block-billing and "instances of multiple entries within single line items in the invoices." *Id.* Further, the court took into account the "the volume of litigation in this case" when assessing the detail provided in counsel's records. *Id.*

[20] The Firm's accounting systems and its billing practices are explained in detail in the Kirtland Decl. ¶¶ 23-28

[21] The full biographies of the major timekeepers and descriptions of the work they performed in the Rate Agreement Litigation can be found in the Kirtland Decl. ¶¶ 67-90. An Excel showing the fees of 26 all timekeepers that recorded time on the matter is attached at Kirtland Decl. Ex. 13.

timekeepers who performed discrete tasks from time to time on the matter.[22] *Id.* ¶ 38. These timekeepers are: Samuel August, Colin Biddle, Rachelle Plotkin Bishop, Leslie Clay, Katie Connolly, Jeffrey Dykes, Kate Hunter, Jeffrey Marks, Zach McHenry, Andrea Miller, Hung Nguyen, John Pilznienski, Vijay Rao, Peter Siegal, Kara Tappan, and Jimmy Xu. *Id.* These timekeepers recorded a total of 193.7 hours, which represents 4.3% of the total hours recorded in the case. *Id.* Writing off these hours resulted in a discount of $47,786 at the matter rates. *Id.*

The second category was to write-off all the time recorded by Caroline Mew, Joseph Small and John Simpson. Many of the tasks performed by these attorneys served legitimate needs on the matter. For example, Joseph Small provided strategic oversight in the beginning of this case, Caroline Mew consulted with the team regarding the communications that occurred between the Firm and FFIC during the Shiva Litigation, and John Simpson provided substantial assistance on the summary judgment motions. In an exercise of conservative billing, however, the decision was made to write-off their time entirely. They recorded a total of 169.7 hours, representing 3.9% of the total hours recorded in the case. Writing off these hours resulted in a discount of $136,743 at the matter rates. Kirtland Decl. ¶ 39.

Third, the Firm conducted a thorough review of the proforma to identify any time that, while legitimately incurred, could be written off as a courtesy. Kirtland Decl. ¶ 41 & Ex. 18. These hours consist of:

- 110.1 hours of Kara Petteway Wheatley's time, most of which was incurred: 1) conducting legal research; 2) drafting subpoenas; 3) drafting the motion to

---

[22] For example, Rachelle Plotkin Bishop and Katie Connolly were given discrete research assignments over the course of the litigation. *Id.* John Pilznienski and Jimmy Xu are members of the Firm's production team that handled the logistics regarding the production of documents and the review of documents produced by FFIC. *Id.*

compel; and 4) corresponding with opposing counsel and firm attorneys regarding

the matter.

- 67.2 hours recorded by Benjamin Hayes, most of which was spent on: 1)

  conducting legal research; 2) drafting the summary judgment motion; and 3)

  assisting with discovery.

- 21.4 hours recorded by Kimberly Caine; and

- 30.3 hours recorded by Matthew Kirtland.

These write-offs total 229 hours, which resulted in a discount of $110,276.50 at the matter rates.

Kirtland Decl. ¶ 41.

　　Thus, the present claim for attorneys' fees is comprised of 4,275.40 of the total 4,867.8

hours recorded. At the discounted matter rates, the value of this time is **$2,392,041.50**.[23] This

results in a discount of $505,549 (17.5%) off the Firm's standard rates and of $297,805.50

(11.1%) off the matter rates.

　　The amount of these claimed hours is reasonable given the long, complicated history of

this litigation, none of which would have occurred had FFIC not relied on the non-existent "rate

agreement" to deny payment to Kenneth Feld. There were effectively six phases to this seven-

year litigation: (1) Pleadings, (2) Discovery, (3) Summary Judgment, (4) Settlement/Mediation,

(5) Appeal, and (6) Pretrial/Trial. The total hours spent on each phase by the seven principal

timekeepers are reflected in the below chart. *See also*, Kirtland Decl. ¶¶ 44-65 and Ex. 19. As

demonstrated therein, this case was handled throughout by a core team consisting of one partner

and one to two non-partners (associates or counsel). Kirtland Decl. ¶ 42.

---

[23] This amount is reduced by the $24,929.47 that FFIC paid Kenneth Feld in sanctions. *See* Apr. 25, 2014 Cost Mem. [ECF No. 41].

|  | Pleadings | Discovery | Summary Judgment | Settlement | Appeal | Pretrial/ Trial |
|---|---|---|---|---|---|---|
| **Partners** | | | | | | |
| Matthew Kirtland | 102.9 | 602.3 | 238.6 | 49.0 | 18.9 | 236.3 |
| Jonathan Franklin | - | - | - | - | 169.6 | 0.5 |
| **Senior Counsel and Associates** | | | | | | |
| Kimberly Caine | 124.5 | 603.6 | 101.8 | 5.8 | - | 264.0 |
| Kara Petteway Wheatley | 6.7 | 402.3 | 103.4 | 26.5 | - | - |
| Benjamin Hayes | - | 55.7 | 343.7 | 1.4 | - | - |
| David Kearns | - | - | 59.9 | - | 170.4 | 24.5 |
| Esha Kamboj | - | - | - | 17.4 | - | 545.7 |
| **Total** | **234.1** | **1,663.9** | **847.4** | **100.1** | **358.9** | **1,071** |
| **Percentage of Total Hours** | **5.5%** | **39.0%** | **20.0%** | **2.3%** | **8.4%** | **25.0%** |

Tasks were assigned based on skill and were staffed to avoid any duplication. For example, senior associates Kara Petteway Wheatley and Kimberly Caine handled the majority of the document discovery and the discovery disputes, and assisted with preparation for the depositions. Kirtland Decl. ¶ 54. Matthew Kirtland – the lead partner on the matter – took and defended the majority of the depositions and was involved in navigating the many discovery disputes. *Id.* Benjamin Hayes – a second-year associate – handled the majority of the research and drafting for the motions for summary judgment. Kirtland Decl. ¶ 57. And when appellate specialists Jonathan Franklin and David Kearns were brought in to handle the D.C. Circuit proceedings, Matthew Kirtland recorded virtually no time to the matter (18.9 hours). Kirtland Decl. ¶ 59. Details of the tasks performed by each main timekeeper can be found at ¶¶ 67-90 in the Kirtland Declaration.

            **B.**      *The Rate Agreement Litigation was Complex Federal Litigation*

Pleadings. In his 30-page complaint, Kenneth Feld asserted three causes of action against FFIC (breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory judgment), seeking compensatory damages in an amount equal to the full amount of

the reasonable legal fees and expenses in the Shiva Litigation, pre- and post-judgment interest, punitive damages and attorneys' fees and costs. *See* Pl.'s Compl. [ECF No. 1]. FFIC filed an Answer on November 30, 2012, asserting as a defense the alleged rate agreement between the parties, among other defenses, such as late notice and failure to state a claim upon which relief could be granted. Def.'s Answer [ECF No. 6]. On February 14, 2014, FFIC filed an Amended Answer, asserting an additional twelve defenses. Def.'s First Amended Answer [ECF No. 35].

Discovery. FFIC's assertion of a non-existent rate agreement led to three years of lengthy and contentious discovery. FFIC identified nine people in its Rule 26(a) disclosures as having discoverable information: Kenneth Feld, Bonnie Feld, Karen Feld, Caroline Mew, Lisa Joiner, Matthew Kirtland, Charles Kirk, Bruce Bryson and Colleen Sauter. In turn, Kenneth Feld identified 15 people in its Rule 26(a) disclosures as having discoverable information: Kenneth Feld, Joseph Small, John Simpson, Matthew Kirtland, Caroline Mew, Lisa Joiner, Steven Oster, Christopher Hassell, Steven Frankel, Steve Gremminger, Charles Kirk, Colleen Sauter, Bruce Bryson, Erik Lindemann, and Alan Eagle.

FFIC issued twenty-five broad documents requests (e.g. "All communications involving attorneys at Fulbright & Jaworski, LLP which relate to matters alleged in the Complaint."), and fifteen interrogatories. *See* FFIC discovery requests, Kirtland Decl. Ex. 12. In response, Kenneth Feld made eleven document productions consisting of 4,526 pages many of which were – at FFIC's insistence – reproductions of documents that had already been produced to FFIC during the Shiva Litigation. Kirtland Decl. ¶ 49. FFIC made thirteen document productions consisting of 15,847 pages. *Id.*

The parties took/defended nine depositions of fact witnesses (Kenneth Feld, Caroline Mew, Charles Kirk, Bruce Bryson, Colleen Sauter, Erik Lindemann, Alan Eagle, Alan

Freudenheim, FFIC 30(b)(6)) in New York, Chicago, Washington, D.C. and California. *Id.* ¶ 50. Kenneth Feld retained an expert – William H. Jeffress – who was deposed. *Id.* FFIC retained an expert – Bernd G. Heinze – who was also deposed. *Id.* ¶ 51.

During discovery, FFIC filed two motions to compel, forcing Kenneth Feld into complicated and contentious discovery disputes. *See* Def.'s Mot. to Compel [ECF 14]; Def.'s Mot. to Compel [ECF No. 24]. The resulting meet-and-confers, briefing, court conferences, and document reviews and production required a significant amount of time. FFIC filed its first motion to compel discovery in May 2013 seeking an order compelling Kenneth Feld to produce materials that Kenneth Feld argued were either already produced to FFIC, irrelevant, or privileged. Pl.'s Opp. Def.'s Mot. to Compel [ECF No. 15] at 1-2. The Court found that Kenneth Feld partially waived the attorney-client and work-product privileges for the Shiva Litigation, but not for work product created in anticipation of litigation with FFIC over its coverage. July 3, 2013 Mem. Op. [ECF No. 19]. Kenneth Feld produced additional documents pursuant to this Order and produced a detailed privilege log consisting of 45 pages with 401 color-coded entries. *See* Def.'s Mot. to Compel [ECF No. 24], Ex. 1.

Four months later, in September 2013, FFIC filed a second motion to compel, which demanded that Kenneth Feld produce documents identified on his privilege log. The Court issued another Order restating the scope of the documents Kenneth Feld was required to produce. Def.'s Mot. to Compel [ECF No. 24]. The Court found that the attorney work-product privilege likely protected the documents on Kenneth Feld's privilege log, and that Kenneth Feld's privilege log entries were sufficiently detailed, perhaps even going "beyond Feld's obligations under the Federal Rules." Dec. 23, 2013 Mem. Op. [ECF No. 29] at 5-9. After two status conferences, three rounds of briefing, and two written opinions, FFIC was still not satisfied that Kenneth Feld

had produced all required documents and sought an *in camera* review by the Court of all withheld documents. *See* April 16, 2014 Mem. Op. [ECF No. 40] at 5-6. Following the *in camera* review, FFIC's motion was denied and Kenneth Feld was awarded sanctions against FFIC for its repeated and unfounded challenges to his privilege assertions, which the Court stated "brought this litigation to a halt for many months."[24] *Id.*

Summary Judgment. After discovery concluded, the parties each filed substantial motions for summary judgment, respectively arguing, *inter alia*, whether the parties had entered into the rate agreement alleged by FFIC. Def.'s Mot. Summ. J. [ECF No. 68]; Pl.'s Mot. Summ. J. [ECF No. 69]. These motions included arguments on complex issues of law and fact, including (1) choice of law, (2) existence of a breach of duty of good faith and fair dealing under both D.C. and Maryland laws, (3) the existence of an oral contract (i.e. the rate agreement) under both D.C. and Maryland laws, (4) reasonability of Kenneth Feld's attorneys' fees under both D.C. and Maryland laws, and (5) the availability of attorneys' fees and costs under both D.C. and Maryland laws. *Id.* Kenneth Feld's motion was 30 pages long and attached (1) a declaration by Kenneth Feld, (2) 24 pages of undisputed facts, (3) a declaration by Matthew Kirtland attaching 15 exhibits (totaling 138 pages), and (4) a declaration by John Simpson attaching 9 exhibits (totaling 1,341 pages). Pl.'s Mot. Summ. J. [ECF No. 69]. Kenneth Feld's counsel also had to respond to FFIC's motion for summary judgment which, including attachments, totaled 339 pages. Def.'s Mot. Summ. J. [ECF No. 68]. Kenneth Feld's Opposition to FFIC's Motion for Summary Judgment and its Reply in support of its Summary Judgment were circa 200 pages each (including attachments). Pl.'s Opp. Mot. Summ. J. [ECF No. 84]; Pl.'s Reply Mot. Summ. J. [ECF No. 89].

---

[24] The $24,929.47 that FFIC paid Kenneth Feld in sanctions, *see* Apr. 25, 2014 Cost Mem. [ECF No. 41], has been deducted from the final relief claimed.

FFIC's motion for summary judgment was granted. Sept. 12, 2016 Mem. Op. [ECF No. 92]. Kenneth Feld filed a 20-page motion for reconsideration and an 85-page reply (including attachments), arguing that at minimum there was a genuine issue of material fact as to whether the alleged FFIC "rate agreement" existed. Pl.'s Mot. Recon. [ECF No. 93]. That was denied by the Court. June 26, 2017 Mem. Op. [ECF No. 97]. Thereafter, Kenneth Feld was required to appeal to the D.C. Circuit to enforce his rights under the Policy.

Appeal. Kenneth Feld filed a 52-page opening brief and a 27-page reply in his appeal to the D.C. Circuit. Those briefs centered on (1) whether the record presented disputed issues of material fact, (2) whether any purported rate agreement could have been formed even under FFIC's interpretation of the facts, and (3) whether FFIC should have been compelled to provide further discovery. These arguments required careful scrutiny of the record—which resulted in the production of a two-volume appendix totaling 896 pages—as well as substantial legal research. Preparing the appendix raised its own difficulties, and the parties ended up filing papers regarding sealed portions of the record. After oral arguments in September 2018, the D.C. Circuit reversed, finding that a genuine issue of material fact existed as to whether a rate agreement was formed, and remanded for trial. *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1198 (D.C. Cir. 2018).

Pretrial/Trial. On remand, the parties engaged in several months of briefing on procedural issues, including multiple status conferences, briefing on whether the issues should be bifurcated, and briefing on the order of presentation at trial. *See, e.g.,* Joint Proposal Further Proceeding [ECF No. 112]; April 2, 2019 Mem. Op. [ECF No. 116]; May 9, 2019 Order Setting Presentation at Trial [ECF No. 122]. Prior to the trial, the parties engaged in extensive briefing in their Pre-Trial Statements on the witness testimony and evidence to be presented at trial, as well as the

jury voir dire, verdict forms, and jury instructions to be used at trial. *See, e.g.,* Def.'s Objections

to Witness and Ex. List [ECF No. 127]; Pl.'s Mot. in Limine [ECF No. 130]; June 21, 2019

Mem. Op. [ECF No. 140].

Beginning on July 15, 2019, a four day jury trial was conducted on the question of

whether FFIC had proven, by a preponderance of the evidence, that Feld and FFIC formed a

contract specifying reasonable hourly rates. During the trial, the jury heard testimony from five

fact witnesses, and the parties engaged in repeated disputes on various evidentiary disputes and

submitted further briefing to the Court on jury instructions. Kirtland Decl. ¶ 64. After the close

of the evidence and closing arguments, the jury unanimously found that no contract was ever

formed. *See* Clerk's J. [ECF No. 151]. Given the extended and complicated history of this

litigation, the total hours claimed are reasonable.

### 2.      Counsel Would Likely Have Been Fully Engaged in Similarly Compensated Work

Pursuant to factor 19-301.5(a)(1), "the likelihood, if apparent to the client, that the

acceptance of the particular employment will preclude other employment of the lawyer," weighs

in favor of the reasonableness of the Firm's discounted fees in this litigation.

The attorneys who represented Kenneth Feld in this litigation would have been fully

engaged in similarly compensated work for other clients if they had not been assigned here.

Kirtland Decl. ¶ 37. Further, the Firm's standard hourly rates are in fact higher than those sought

to be recovered here because*,* as in the Shiva Litigation, the Firm has applied a significant one-

year rate discount given Kenneth Feld's long-term relationship with the Firm. *Id.* ¶¶ 33-34. Thus,

the time these attorneys dedicated to representing Kenneth Feld in this Rate Agreement

Litigation prevented them from providing legal services on other matters at comparable, <u>or</u>

<u>higher</u>, rates.

### 3. The Firm's Rates are Customary of the Rates Charged in Washington, D.C. for Similar Legal Services

The third factor under Maryland Lawyer's Rules of Professional Conduct 19-301.5(a), the "the fee customarily charged in the locality for similar legal services," also weighs in favor of the reasonableness of the Firm's discounted fees in this Rate Agreement Litigation. As discussed above, because this Rate Agreement Litigation took place in this Court, Washington, D.C. is the relevant community. *See* Section I.C.

The one-year lag applied to the rates in this Rate Agreement Litigation results in a significant discount from the Firm's standard rates. [25] *See* Kirtland Decl. ¶ 33. Both the standard and matter rates are in line with those prevailing in the community. [26] *Id.* ¶ 36. The discounted hourly rates are presumptively reasonable, *see supra* Section I.C, and, as the evidence shows, customary for firms of similar size in Washington, D.C., with attorneys of similar education and experience, for similar services.

**Attorney Rates**

| Firm Attorney (JD Year) | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|
| Jonathan Franklin (1986) | - | - | - | - | - | $800 | $860 | $890 |
| Matthew Kirtland (1997) | $625 | $645 | $675 | $710 | $750 | $800 | $860 | $900 |
| Kimberly Caine (2006) | $400 | $450 | $480 | $580 | $655 | $715 | - | $800 |
| Kara Petteway Wheatley (2005) | - | - | $550 | $610 | $665 | $690 | $745 | - |
| Benjamin Hayes (2014) | - | - | $205 | $280 | $295 | - | - | - |
| David Kearns (2016) | - | - | - | - | $205 | $310 | $345 | $390 |
| Esha Kamboj (2017) | - | - | - | - | - | - | - | $365 |

---

[25] The full chart for all years of the litigation (2012-2019) is attached hereto as Exhibit to the Kirtland Decl. Ex. 11.

[26] The method by which the Firm calculated the rates for which Mr. Feld is claiming attorneys' fees in the Rate Agreement Litigation is described in detailed in the Kirtland Decl. ¶¶ 29-34.

### C.       Affidavit of Matthew Kirtland

Matthew Kirtland, counsel for Kenneth Feld in both the Shiva Litigation and this Rate Agreement Litigation, has provided a sworn declaration in support of the reasonableness of the Firm's fees in this Rate Agreement Litigation. Kirtland Decl. Mr. Kirtland's declaration contains a detailed description of (1) Kenneth Feld's historic relationship with the Firm as well as the Firm's engagement in this Rate Agreement Litigation, (2) the staffing of this Rate Agreement Litigation, (3) how and why the Firm has discounted its standard rates for this Rate Agreement Litigation, (4) the qualifications and general responsibilities of each of the major timekeepers, (5) the Firm's timekeeping systems and billing practices, and (6) the process by which time recorded in this Rate Agreement Litigation has been written-off and is not being claimed.

Basing his analysis on his twenty-two (22) years of practice in complex federal court litigation in Washington, D.C., Mr. Kirtland opined that the discounted rates are reasonable for the services provided:

> These rates all fall within the range of rates prevailing in the District of Columbia during 2012 through 2019 for similar services by lawyers and other professionals of reasonably comparable skill, experience and reputation. In particular, the matter rates also fall within, or in some instances are below, the prevailing District of Columbia market rates for experienced counsel handling complex civil litigation in federal court. Kirtland Decl. ¶ 35.

### D.       LSI Laffey Matrix

The reasonableness of the Firm's discounted rates is further confirmed by the fact that they fall within the LSI *Laffey* Matrix. For example, the discounted rates for the principal timekeepers in 2015 and 2019, during which approximately 54% of all the fees and expenses were incurred, are wholly within LSI *Laffey* Matrix range.[27]

---

[27] The Firm's rates are oftentimes at or below the *Laffey* rates – highlighted in light blue – and substantially so, *e.g.*, the rates of Benjamin Hayes. *See* Kirtland Decl. Ex. 6 (chart comparing the Firm's rates in the Rate Agreement Litigation with the comparable rates in the LSI *Laffey* Matrix for 2012-2019).

**2015 LSI *Laffey* Comparison**

| Timekeeper (JD Year) | Years in Practice | LSI *Laffey* Years in Practice Categorization | LSI *Laffey* Range | Timekeeper Rate |
|---|---|---|---|---|
| Matthew Kirtland (1997) | 18 | 11-19 | $655 – $661 | $710 |
| Kimberly Caine (2006) | 9 | 8-10 | $581 – $586 | $580 |
| Kara Petteway Wheatley (2005) | 10 | 8-10 | $581 – $586 | $610 |
| Benjamin Hayes (2014) | 1 | 1-3 | $328 – $331 | $280 |

**2019 LSI *Laffey* Comparison**

| Timekeeper (JD Year) | Years in Practice | LSI *Laffey* Years in Practice Categorization | LSI *Laffey* Range | Timekeeper Rate |
|---|---|---|---|---|
| Matthew Kirtland (1997) | 22 | 20+ | $894 – $899 | $900 |
| Jonathan Franklin (1986) | 33 | 20+ | $894 – $899 | $900 |
| Kimberly Caine (2006) | 13 | 11-19 | $742 – $747 | $800 |
| David Kearns (2016) | 3 | 1-3 | $371 – $372 | $390 |
| Esha Kamboj (2017) | 2 | 1-3 | $371 – $372 | $365 |

### E.  Fee Awards

As detailed above in Section I.C.B., the reasonableness of the Firm's rates is confirmed by the holdings of more recent complex federal civil cases in this district, in which the rates of large, Washington, D.C. firms comparable to the Firm have been held reasonable.

*Spanski Enters., Inc. v. Telewizja Polska S.A.*, 278 F. Supp. 3d 210 (D.D.C. 2017). In *Spanski*, the court awarded Loeb & Loeb discounted rates for 2012-2017 attorneys' fees incurred in litigation brought by a television content distributor against a Polish public television network, alleging that the network displayed television show episodes in the United States over which distributor held exclusive rights, in violation of the Copyright Act. The court found that Loeb & Loeb's rates were, with few exceptions, at or below the average hourly rate indicated by the LSI *Laffey* matrix. (See Zavin Decl. at 5–9). In particular, counsel for SEI billed for the time of Mr. Zavin— an attorney with well over 20 years of experience handling intellectual property

matters—at a rate consistently below that set by the LSI *Laffey* matrix for attorneys with commensurate experience." *Id.* at 219. The court rejected defendant's argument that the litigation wasn't "complex," finding that "this case involved a high degree of complexity, requiring an understanding of the operation of highly specialized distribution and geo-blocking technologies, international discovery—including deposing witnesses who did not speak English—and multiple filings, all over a period of years."[28] *Id.*

| Year | Firm Partner Matter Rate | Discounted Loeb & Loeb Partner | Firm Senior Counsel Matter Rate | Discounted Loeb & Loeb Senior Counsel | Firm 2-4 Year Associate Matter Rate | Discounted Loeb & Loeb 2-4 year Associate |
|------|------|------|------|------|------|------|
| 2012 | $625 | $696/720 | $400 | $522/540 | - | $326/337 |
| 2013 | $645 | $722 | $450 | $547 | - | $393.75 |
| 2014 | $675 | $701/744 | $480/$550 | $532/547 | $205 | $382/489 |
| 2015 | $710 | $701 | $580/$610 | $532 | $280 | - |

### F.  National Law Journal Billing Surveys

The National Law Journal billing rate surveys for 2012-2018,[29] provide further confirmation that the Firm's hourly rates are aligned with the billing rates at comparable Washington, D.C. firms.[30] Below are charts depicting the average partner rates and the average

---

[28] Unlike the attorneys in Spanski, the Firm has written off the time of non-attorneys, so the appropriate paralegal rate is not at issue.

[29] The National Law Journal billing rate surveys for 2012-2018 are attached in their entirety hereto. See Kirtland Decl., Ex. 7. The survey for 2019 is not yet available.

[30] The Firm has approximately 4,000 attorneys in over 50 offices worldwide, with over 80 attorneys practicing in its Washington, D.C. office. Firms considered comparable to the Firm were those with federal litigation practices, with more than 1,000 attorneys worldwide and more than 50 attorneys in their respective Washington, D.C. offices.

associate rates of comparable firms according to the National Law Journal Surveys (including the Firm) alongside the average rates in this Rate Agreement Litigation from 2012-2014.[31]

### National Law Journal Surveys – Partners

| Firm Name | 2012 Rate High | 2012 Avg Rate | 2013 Rate High | 2013 Avg Rate | 2014 Rate High | 2014 Avg Rate |
|---|---|---|---|---|---|---|
| Holland & Knight | $985 | $560 | $1,035 | $595 | $1,085 | $625 |
| **Norton Rose Fulbright** | **$625** | - | **$645** | - | **$675** | - |
| Patton Boggs | $990 | $665 | $780 | $665 | - | - |
| Perkins Coie | $910 | $560 | $940 | $600 | $1,000 | $615 |
| Saul Ewing | $100 | $500 | $850 | $530 | $875 | $546 |
| Winston & Strawn | - | - | $800 | $590 | $995 | $800 |

### National Law Journal Surveys – Associates

| Firm Name | 2012 Rate High | 2012 Avg Rate | 2013 Rate High | 2013 Avg Rate | 2014 Rate High | 2014 Avg Rate |
|---|---|---|---|---|---|---|
| Holland & Knight | $575 | $310 | $575 | $325 | $595 | $340 |
| **Norton Rose Fulbright** | **$400** | **$320** | **$450** | **$350** | **$550** | **$412** |
| Patton Boggs | $570 | $435 | $475 | $405 | - | - |
| Perkins Coie | $605 | $365 | $595 | $405 | $610 | $425 |
| Saul Ewing | $510 | $310 | $575 | $340 | $590 | $344 |
| Winston & Strawn | - | - | $590 | $520 | $590 | $520 |

### 4.    Kenneth Feld Sought Substantial Damages and Obtained a Jury Verdict in his Favor

Pursuant to Maryland Rule 1.5(a)(4), the relief at issue and the results obtained in this Rate Agreement Litigation support the conclusion that the attorneys' fees and expenses were reasonable and necessary. At issue in this Rate Agreement Litigation was Kenneth Feld's ability to claim his reasonable, unpaid fees incurred in this Rate Agreement Litigation – fees in the amount of $2,224,121.61. With interest, the amount owed is in excess of $3.2 million.

---

[31] The National Law Journal billing rate surveys for 2012-2018 are attached in their entirety hereto. *See* Kirtland Decl., Ex. 7.

As discussed above, courts interpreting Maryland law have affirmed awards of attorneys'

fees where the amount of the fees are greater than the damages award. *See, e.g.*, *Royal Inv. Grp.*,

961 A.2d at 695-96 (affirming fee award of $179,907.60 where damages award was for $45,600

in heated real property dispute that had been litigated for two years and had begun two years

before the commencement of litigation). Further, courts have found that the value of declaratory

judgments should be considered in such situations. *See Bainbridge,* 2016 WL 1321205, at *10

(referencing *Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 102 A.3d 387, 395–96,

410, 417 (Conn. App. Ct. 2014) (affirming award of $1.5 million in a case where the appellees

claimed more than 4,000 hours were expended on the declaratory judgment action)).

Further, the jury verdict in Kenneth Feld's favor on the key issue in this litigation – the

existence of the alleged "rate agreement" – is itself a "critical factor" in determining the

reasonableness of his attorneys' fees. *See*, *e.g.*, *Bird Realty*, 2013 WL 4525266, at *10

("Certainly, the degree of success obtained is the most critical factor in determining the award."

(internal quotation marks omitted)).

### 5.       Kenneth Feld is a Long-Term Firm Client

The sixth factor, "the nature and length of the professional relationship with the client[,]"

weighs in favor of the reasonableness of attorneys' fees in this Rate Agreement Litigation. As

discussed above, Section I.E., Kenneth Feld is a long-term client of the Firm. Additionally, as the

Firm was counsel in the Shiva Litigation, it was best placed to bring this Rate Agreement

Litigation.

### 6.       Counsel Ranged in Experience and Ability and Were Staffed to Tasks Appropriately

Finally, the seventh factor, "the experience, reputation, and ability of the lawyer or

lawyers performing the services," weighs in favor of the reasonableness of the Firm's discounted

fees in this Rate Agreement Litigation. Although the individual lawyers changed at various

points, the Firm handled this Rate Agreement Litigation throughout the engagement with a core

team consisting of one partner and one to two non-partners.[32] Kirtland Decl. ¶ 42. As an

example, during trial, Kenneth Feld's team consisted of three attorneys: partner Matthew

Kirtland, senior counsel Kimberly Caine, and associate Esha Kamboj. Kirtland Decl. *Id.* ¶ 65. By

comparison, FFIC also had three lawyers present at counsel's table: partner Thomas S.

Schaufelberger and associates Matthew Antonelli and Kyra A. Smerkanich, in addition to a

member of its support staff. *Id.*

Accordingly, the relevant factors articulated in Maryland Rule of Professional Conduct

19-301.5(a) all weigh heavily in favor of finding this Rate Agreement Litigation attorneys' fees

reasonable.[33]

### C.   Kenneth Feld is Entitled to $115,783.56 in Litigation Expenses

In addition to reasonable attorneys' fees, Kenneth Feld is entitled to recover his

reasonable expenses in this litigation. *See Nolt v. U.S.F. & G.*, 617 A.2d 578, 584-585 (Md.

1993) (the "insured is entitled to a recovery of the attorneys' fees <u>and expenses</u>" (emphasis

added)); *Comm. Un. Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1219 (Md. 1997) (insured is

entitled to recover "all fair and reasonable attorneys' fees <u>and expenses</u> incurred in the course of

this litigation") (emphasis added); *Canopius US Ins., Inc.,* 2016 WL 4076091, at *8–9 (quoting

*Nolt,* 617 A.2d at 584-85); *Baker's Exp., LLC,* 2012 WL 4370265, at *31 (same); *see also, e.g.*,

---

[32] The staffing of the Rate Agreement Litigation is described in detail in the Kirtland Decl. ¶ 42-65.

[33] The fifth and eighth factors under Maryland Lawyer's Rules of Professional Conduct 19-301.5(a) are not relevant. The fifth favor, "the time limitations imposed by the client or by the circumstances," is not applicable as there were no such time constraints in this case. The eighth factor, "whether the fee is fixed or contingent[,]" is also irrelevant because, while the Firm has a contingency fee arrangement with Kenneth Feld in this case, the fees and expenses claimed herein are not calculated on the basis of a fixed or contingent arrangement.

*Beck v. Sullivan*, 2013 WL 5531389, at *11 (D. Md. Oct. 4, 2013) (awarding plaintiff's "supplemental secretarial costs, copying, telephone costs and necessary travel" as well as expert fees in a non-insurance case because "plaintiffs who are entitled to receive reasonable attorneys' fees are also entitled to the expenses they reasonably incurred in preparation of their case.") (internal citations omitted); *US Foods, Inc. v. Crittenden*, 2019 WL 2476669, at *7 (D. Md. June 13, 2019) (awarding costs for filing fees, subpoena fees, and postage fees); *Bird Realty Ltd. P'ship*, 2013 WL 4525266, at *11 (awarding costs for filing fees, postage/delivery fees, and research vendor expenses because Fed. R. Civ. P. 54(d)(1) "creates the presumption that costs are to be awarded to the prevailing party.") (internal citations omitted); *Tenax Corp. v. Tensar Corp.*, 1992 WL 516089, at *4 (D. Md. Oct. 22, 1992) (awarding costs for expert witness fees, computer research, copying and delivery costs).

There are twelve categories of claimed expenses: copying and printing charges ($6,859.65), data storage ($60.00), delivery and messenger costs ($156.41), court fees ($855.00), subpoena fees ($563.00), witness fees ($85.00), arbitrators/mediators ($6,000.00), legal research charges ($7,946.31), court reporter and transcript fees ($24,671.47), travel costs ($7,892.65), litigation support vendors ($5,148.58), and expert witness fees ($55,536.49). These litigation expenses total $115,774.56. *See* Kirtland Decl. Ex. 17. These costs are reasonable and proportionate to the attorneys' fees claimed for the seven years it has taken to litigate this case. *Beckman Instruments Inc. v. LKB Produkter AB*, No. R-85-3133, 1990 WL 10072480, at *12 (D. Md. Aug. 9, 1990), *aff'd*, 930 F.2d 37 (Fed. Cir. 1991) (awarding $554,738.64 in attorneys' fees, $269,584.72 in expenses, and $306,257.49 in prejudgment interest).

## <u>CONCLUSION</u>

Accordingly, Kenneth Feld respectfully requests that the Court award him the full relief to which he is entitled: (1) his remaining, unpaid attorneys' fees in the Shiva Litigation

($2,224,121.61); (2) pre-judgment interest on that amount calculated through the date of entry of judgment ($1,082,433.66 through today's date); (3) his reasonable attorneys' fees in this Rate Agreement Litigation ($2,367,112.03); (4) his reasonable expenses in this litigation ($115,783.56); and (5) post-judgment interest pursuant to 28 U.S.C. § 1961. A proposed order is attached.

Respectfully submitted,


_____/s/ Matthew H. Kirtland_____
Matthew H. Kirtland (D.C. Bar No. 456006)
matthew.kirtland@nortonrosefulbright.com
Kim Caine (D.C. Bar No. 974926)
kim.caine@nortonrosefulbright.com
Esha Kamboj (*pro hac vice*)
esha.kamboj@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W., Suite 1000
Washington, D.C. 20001-4501
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Attorneys for Plaintiff Kenneth Feld*

Dated: August 30, 2019