UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH FELD,**<br><br>    **Plaintiff,**<br><br>        v.<br><br>**FIREMAN'S FUND INSURANCE COMPANY,**<br><br>    **Defendant.** | **Civil No. 12-1789 (JDB)** |

## MEMORANDUM OPINION

In this long-running dispute against his insurer, defendant Fireman's Fund Insurance Company ("FFIC"), plaintiff Kenneth Feld has filed a final motion for attorney's fees. He seeks $437,423.00 in fees and $4,363.90 in expenses for work performed from July 19, 2019—the end of trial in this case—to the present. For the reasons stated below, the Court will grant the motion in part and deny it in part and award Feld $262,453.80 in fees and $4,363.90 in expenses.

## Background

The Court will assume familiarity with the basic facts and procedural history of this case, which have been summarized at length in multiple prior opinions. See, e.g., May 15, 2020 Mem. Op. ("May 15 Op.") [ECF No. 194] at 1–3; Feld v. Fireman's Fund Ins. Co. ("Mar. 9 Op."), 2020 WL 1140673, at *1–3 (D.D.C. Mar. 9, 2020); Feld v. Fireman's Fund Ins. Co., 292 F.R.D. 129, 132–34 (D.D.C. 2013); see also Feld v. Fireman's Fund Ins. Co., 909 F.3d 1186, 1190–93 (D.C. Cir. 2018). As relevant here, in March 2020, the Court awarded Feld attorney's fees for work performed by his law firm, Fulbright & Jaworski, LLP,[1] in a separate personal injury dispute with

---

[1] The firm has since been renamed Norton Rose Fulbright. See Post-Tr. Br. in Supp. of Pl. Kenneth Feld's Reasonable Att'y's Fees & Expenses ("Feld Br.") [ECF No. 157] at 2 n.2. The Court will refer to the firm as "Fulbright" throughout this opinion.

his sister, as well as fees incurred through July 19, 2019, litigating the present action against FFIC (the "Fee Litigation"). See Mar. 9 Op., 2020 WL 1140673, at *16. The total fees and expenses awarded were $3,822,652.91. Id. And in May 2020, the Court granted Feld's motion for reconsideration of a portion of the March 9 Opinion, awarding him an additional $215,675.50 in appellate fees. See May 15 Op. at 1. The parties were directed to meet and confer in an attempt to "arrive at a mutually agreeable fee award" for any additional fees that Feld intended to seek. See Mar. 9, 2020 Order [ECF No. 186] at 1 n.1. Feld was also instructed that any additional motion for attorney's fees must be his last. See June 11, 2020 Order [ECF No. 197] at 1 n.1. The efforts to reach a mutually agreeable award failed. Feld has now filed this motion seeking $437,423.00 in attorney's fees and $4,363.90 in expenses, all incurred since the end of trial on July 19, 2019.

**Analysis**

As explained in the Court's March 9 Opinion, FFIC breached its duty to defend Feld by failing to fully reimburse him for legal costs incurred in the litigation with his sister. See Mar. 9 Op., 2020 WL 1140673, at *12. Feld was forced to bring this suit to recover the rest of his costs, and is entitled generally to attorney's fees for the Fee Litigation under the Maryland exception to the American Rule, which allows an insured "to recover attorney fees incurred in seeking coverage from an insurer that has breached its contractual duty to defend."[2] Charter Oak Fire Co. v. Am. Capital, Ltd., 2017 WL 3315306, at *22 n.21 (D. Md. Aug. 3, 2017); see Mar. 9 Op., 2020 WL 1140673, at *11–12. However, as the Court also explained in its March 9 Opinion, the Maryland exception places two limitations on Feld's entitlement to fees. First, the fees must have been "incurred," meaning "any legal obligation [that a client has] to pay his attorney[,] . . . either by

---

[2] Maryland law governs this case. See Mar. 9 Op., 2020 WL 1140673, at *3.

operation of the fee arrangement between them or otherwise." Id. at *12 (quotation omitted). Second, the fees must be reasonable. See id.

The Court is thus presently faced with two questions: has Feld "incurred" the fees and expenses sought here? And if so, are those fees and expenses reasonable?

**I.      Whether the fees and expenses were "incurred"**

Predictably, the parties disagree as to whether the fees and expenses here were "incurred." FFIC argues that the "only reasonable interpretation" of the contingency fee agreement in place between Feld and Fulbright is that it "covered all work Fulbright was to perform on Feld's behalf in connection with his pursuit of his breach of contract action against Fireman's Fund except in the appellate arena." Def. Fireman's Fund Ins. Co.'s Br. Regarding Pl.'s Request for Add'l Fees ("FFIC Opening Br.") [ECF No. 199] at 6. Thus, in FFIC's view, the contingency fee agreement governs the fees and expenses here, and because the Court's March 9 Opinion already awarded all the fees that Feld is obligated to pay Fulbright under the contingency fee agreement, Feld has no obligation to pay Fulbright the additional fees sought here; hence, they have not been "incurred." See id. at 1, 9. Feld, for his part, maintains that the "plain terms of the contingency fee agreement" make clear that the agreement governed the relationship between him and Fulbright only "through trial," and that any legal costs occurring after trial are governed not by the contingency fee agreement, but by "Feld's longstanding unwritten fee agreement with Fulbright." Pl.'s Mot. for Post-Trial Att'ys' Fees & Expenses ("Feld Opening Br.") [ECF No. 198] at 6. The Court agrees with Feld.

Maryland courts employ an "objective approach to contract interpretation, according to which, unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation." Ocean Pet., Co.

3

v. Yanek, 5 A.3d 683, 690 (Md. 2010).  "This undertaking requires [courts] to restrict [their] inquiry to the four corners of the agreement and ascribe to the contract's language its customary, ordinary, and accepted meaning."  Id. (internal quotation marks omitted).

Here, the contingency fee agreement states that it "memorializes the terms and conditions" by which Fulbright will "provide legal representation" to Feld in the Fee Litigation.  Contingency Fee Agreement ("Agreement") [ECF No. 170-1] at 1.  It further states that "the 'Representation' will include pursuing the Client Claims on a contingent fee basis through trial," and that "[t]he Representation does not include the prosecution or defense of any appeals."  Id. (emphasis added).  The plain language of the agreement, then, appears to say in no uncertain terms precisely what Feld says it does—that it does not apply to any legal work after trial.  Trial ended in this case on July 19, 2019.  Feld requests fees and expenses only for work done after July 19, 2019.  So why isn't that the end of the matter?

Because, FFIC contends, "[i]t is axiomatic that in agreeing to represent Feld on a contingency fee basis, Fulbright was agreeing to perform all work necessary in the trial court to recover from Fireman's Fund."  Def. Fireman's Fund Ins. Co.'s Opp'n to Pl.'s Mot. for Add'l Fees ("FFIC Response") [ECF No. 201] at 3.  The Court is unfamiliar with this axiom, and FFIC has provided no case law to back it up.  In general, contracting parties are entitled to a wide degree of discretion in how they structure their contracts; the Court sees no reason why Feld and Fulbright could not have decided to split Fulbright's representation into two parts: pre- and post-trial.  As apparent support for its argument, FFIC repeatedly asserts that, in the contingency fee context, courts "require that any agreements for 'additional fees' beyond the contingency amount be clearly defined."  FFIC Opening Br. at 8.  While the Court takes no issue with that statement as a general proposition, here the agreement does clearly define where it stops: at trial.  Indeed, while Maryland

4

law forbids the Court from "acquiescing to the parties' subjective intent," Ocean Pet., 5 A.3d at 690, it is at least notable that both Feld and Fulbright have submitted sworn declarations that they agreed that "the contingency fee provisions are limited to fees expended 'through trial.'" Decl. of Kenneth Feld [ECF No. 192-1] ¶ 5; see Decl. of Matthew Kirtland [ECF No. 192-2] ¶ 5. But the Court need not rely on those declarations where, as here, the plain language of the agreement is clear.

FFIC also argues that the post-trial work at issue here is not actually "'after trial' at all," FFIC Response at 3 n.2, because this Court previously bifurcated the proceedings by (1) holding "a jury trial on the existence of a rate agreement between FFIC and Feld's attorneys," and (2) conducting a separate "determination of reasonable attorney's fees," April 2, 2019 Mem. Op. & Order ("April 2, 2019 Op.") [ECF No. 116] at 6. In FFIC's view, both parts of the proceedings should be considered part of the "trial" for purposes of the contingency fee agreement. See FFIC Response at 3 n.2. But this view, aside from being directly contrary to the common-sense meaning of the word "trial," contradicts the Court's previous conclusion that the determination of reasonable attorney's fees is not a "legal issue[] triable to a jury" under Maryland law. April 2, 2019 Op. at 5. The Court therefore declines to adopt FFIC's convoluted interpretation of "trial."

It follows, then, that the post-trial work for which Feld now seeks reimbursement is governed by his longstanding agreement with Fulbright. As to that agreement, "Feld has introduced evidence that he and Fulbright have a longstanding agreement, dating back decades, that Fulbright will charge, and Feld will pay, by the hour for all work performed on Feld's behalf at [Fulbright's] standard rates, with a one-year lag discount because of Feld's long history as a client." May 15 Op. at 6 (internal quotation marks omitted). The Court has already concluded that "an unwritten fee agreement like the one at issue here imposes a legal obligation on a client

5

to pay for an attorney's services, just as a written fee agreement does." Id.  As a result, these fees and expenses have been "incurred."

## II.     Whether the fees and expenses were reasonable

Having concluded that the fees and expenses that Feld seeks here were "incurred," the Court must now determine whether they are reasonable.

### A. Fees

As explained, unlike the fees sought in Feld's previous fee petition, the post-trial fees that Feld now seeks are not governed by the contingency-fee arrangement.  Instead, the Court must evaluate "the reasonableness of attorney's fees," which is a "factual determination within the sound discretion of the [trial] court." Myers v. Kayhoe, 892 A.2d 520, 532 (Md. 2006).  That determination should be guided by the reasonableness factors set forth in Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[3]  The Court has already determined that the rates at which Feld seeks fees are reasonable, taking into consideration the Rule 1.5 factors.  See Mar. 9 Op., 2020 WL 1140673, at *14–15; Feld Opening Br. at 8 (noting that "[t]he rates used to generate the claimed fees are the same as those that have already been determined by the Court to be reasonable in this case"); FFIC Response at 5 n.3 ("Fireman's Fund recognizes that the Court

---

[3] Those factors are:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 (8) whether the fee is fixed or contingent.
Bd. of Trs. v. Patient First Corp., 120 A.3d 124, 143 (Md. 2015) (quoting MLRPC 1.5(a)).

already addressed Fulbright's rates in its prior rulings."). Hence, the only remaining question is whether the hours for which Feld seeks fees are reasonable.

Feld seeks fees for 973.2 hours of post-trial work, totaling $437,324.00. As a way to begin analyzing these hours, the Court will—as Feld suggests—divide the hours into five "phases" of post-trial litigation: (1) the initial motion for attorney's fees, encompassing 565.5 hours of work; (2) the December 17, 2019 hearing, encompassing 68.8 hours of work; (3) the Court-ordered post-hearing briefing, encompassing 198.8 hours of work; (4) the motion for reconsideration, encompassing 109.4 hours of work; and (5) the present motion for attorney's fees, encompassing 30.7 hours of work. See Feld Opening Br. at 9–10; Ex. 4, Second Kirtland Decl. [ECF No. 198-5] at 2.

FFIC primarily argues that the fault for the way the contingency fee issue developed over the course of this litigation, generating additional work for both parties, lies directly at the feet of Feld and that the Court should thus reduce Feld's award accordingly. See FFIC Response at 6–7. To recap: Feld initially argued that the fees for the work done in the Fee Litigation should be calculated based on the reasonableness of Fulbright's hours and rates. See Post-Trial Br. in Supp. of Pl. Kenneth Feld's Reasonable Att'y's Fees & Expenses ("Feld Initial Fees Br.") [ECF No. 157] at 28–44. Only in a footnote at the end of his opening brief on his initial fees petition did Feld mention that a contingency fee agreement existed between Fulbright and Feld. Id. at 44 n.33. After FFIC argued in opposition that such an agreement should affect the Court's calculation of fees, see Def. FFIC's Opp'n to Pl.'s Br. Regarding Att'ys' Fees & Expenses [ECF No. 164] at 52, Feld maintained that the "contingency fee agreement is irrelevant" and declined to disclose its contents, Reply in Supp. of Pl. Kenneth Feld's Post-Trial Br. for Reasonable Att'y's Fees & Expenses [ECF No. 167] at 18. Before the December 17, 2019 hearing, the Court ordered Feld to

file the agreement with the Court, see Dec. 16, 2019 Minute Order, and after the hearing, the Court ordered the parties to file briefs "addressing plaintiff's contingency fee arrangement, its appropriateness, and what effect if any the arrangement should have on the Court's calculation of attorney's fees." Dec. 17, 2019 Minute Entry. The Court ultimately determined that the contingency fee agreement was not only relevant but that its existence actually required the Court to put a hard cap on the amount of fees to which Feld was entitled. See Mar. 9 Op., 2020 WL 1140673, at *13. Issues relating to how the contingency fee agreement interacted with certain appellate fees then prompted Feld to move for reconsideration of the Court's March 9 Opinion; the Court granted that motion and awarded Feld appellate fees. See May 15 Op. at 3–7.

      FFIC contends that "[m]uch of this work," including the post-trial briefing and the motion for reconsideration, "could have been avoided altogether had Feld been straightforward from the outset regarding the nature of Fulbright's representation." FFIC Response at 6. The Court agrees. Feld and his counsel took a significant risk by, in the initial fee petition, failing to disclose the substance of the contingency fee agreement, and chose to continue to take that risk even after FFIC strenuously argued that the agreement was relevant and would dictate how the Court should award fees. Feld's strategy did not pan out—the Court deemed the contingency fee agreement highly relevant and ordered the parties to file lengthy additional briefing on the issue that would have been entirely unnecessary had Feld been more forthcoming about his arrangement with Fulbright in his initial fee petition. Upon review of Fulbright's timesheets, the Court determines that about 60% of the 198.8 hours spent on post-trial phase 3 work was related to the contingency fee agreement. See Fulbright Timesheets [ECF No. 198-4] at 13–18. Moreover, most of the 109.4 hours of work on Feld's motion for reconsideration would likely have also been unnecessary if Feld had disclosed the contingency fee agreement earlier, as the appellate fees issues could have

been raised in the initial briefing and discussed in full at the December 17 hearing. And, although it is difficult to quantify, much of the work that was done on Feld's briefs on his initial motion would have been different or entirely replaced.

For these reasons, and based upon the Court's familiarity with this case, the Court deems appropriate a reduction in Feld's requested fees to account for his failure to reveal the substance of his contingency fee agreement with Feld until ordered to do so by the Court. The Court concludes that an across-the-board cut of 30% sufficiently accounts for the additional unnecessary work generated by Feld's failure timely to disclose the contingency fee agreement.

The Court next analyzes the Maryland reasonableness factors, keeping in mind that it has already found Fulbright's rates to be reasonable and therefore that the fourth factor, relating to the amount involved and results obtained, is most relevant at this juncture. See Bird Realty Ltd. P'ship v. Jiffy Lube Int'l, Inc., 2013 WL 4525266, at *10 (D. Md. Aug. 23, 2013) ("Certainly, the degree of success obtained is the most critical factor in determining an award." (internal quotation marks omitted)). With respect to that factor, there is no question that the stakes of the post-trial litigation were high. The amount involved was substantial, with Feld initially requesting about $5.8 million in fees and expenses. See Feld Initial Fees Br. 45–46.

But the results obtained were only solid, not spectacular. See Ochse v. Henry, 88 A.3d 773, 787 (Md. Ct. Spec. App. 2014) (noting that "in cases where the plaintiff achieves less than full success on all claims, the trial court has wide discretion to reduce a fee award accordingly" (citing Hensley v. Eckerhart, 461 U.S. 424, 436–37 (1983)). In total, taking into account the amount awarded in appellate fees upon reconsideration, the Court awarded Feld about $4 million in fees and expenses—$1.8 million less than requested. That difference was driven almost entirely by the Court's ruling against Feld on two discrete issues. First, the Court rejected Feld's argument

9

that he was entitled to about $1 million in prejudgment interest. See Mar. 9 Op., 2020 WL 1140673, at *10–11. Second, the Court rejected Feld's argument that the contingency fee agreement was irrelevant, thereby reducing his award by about $800,000. See id. at *15 (noting that the Court's calculation of fees based on the contingency fee agreement had reduced the award by "approximately $1 million"); May 15 Op. at 7 (adding back about $215,000 in appellate fees). The Court has already accounted for the contingency fee loss in its across-the-board 30% cut. But it will impose another 10% cut to take into account the loss on the prejudgment interest issue, which occupied a significant amount of attorney time, see, e.g., Fulbright Timesheets at 2, 4, 9–12. Cf. Garcia v. Foulger Pratt Development Inc., 845 A.2d 16, 40 (Md. Ct. Spec. App. 2003) (affirming trial court's reduction of fee award for unsuccessful claims); New York v. Microsoft Corp., 297 F. Supp. 2d 15, 34–35 (D.D.C. 2003) (reducing fee award by ten percent for lack of success on two claims).

       FFIC contends that the fee award should be reduced still further for excessive billing. The Court disagrees and will impose no further reductions beyond the 40% cut it has already imposed. To start, FFIC has identified only a few instances wherein Fulbright allegedly billed excessive hours. But even there, FFIC offers nothing more than its own say-so as to why those hours were excessive. For instance, FFIC argues that Fulbright billed excessive hours for revising Feld's initial fee petition. See FFIC Response at 8–9. Yet FFIC does not explain why it was unreasonable for three attorneys to collectively bill around 200 hours across three weeks to revise a fee petition. Given that there was over $5.8 million at stake, the Court cannot conclude, without more, that this length of time was unreasonable. And, in general, the Court continues to conclude—as it has throughout this litigation—that Feld's timesheets satisfy Maryland's requirement that such documents be "as detailed as reasonably possible, so that the client, and any other person who

might be called upon to pay the bill, will know with some precision what services have been performed." Patient First Corp., 120 A.3d at 143 (quoting Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, 929 A.2d 932, 957 (Md. 2007)).  Accordingly, the Court will reduce Feld's requested fees by 40%, to account for the contingency fee and prejudgment interest issues, but will make no further reductions.

### B. Expenses

Feld also seeks $4,363.90 in expenses.  He has provided "invoices and spreadsheets detailing the . . . expenses incurred," Mar. 9 Op., 2020 WL 1140673, at *16 (quotation omitted), which fall into three categories: court fees, legal research charges, and court reporter and transcript fees, see Feld Opening Br. at 15.  See Ex. 5, Second Kirtland Decl. [ECF No. 198-6].  His documentation, like the documentation in his initial fee petition, contains adequate descriptions of the expenses and the dates incurred, see id.  And none of the expenses are tied directly to the contingency fee or prejudgment interest issues for which the Court deemed it appropriate to reduce the fee award.  Hence, the Court concludes that the expenses are reasonable and proportionate to the fees claimed and will award them in full.

### Conclusion

For the foregoing reasons, the Court will award Feld $262,453.80 in fees and $4,363.90 in expenses.  A separate order will be issued on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: August 5, 2020